HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
TERESA LANDUCCI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LANDUCCI, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FREEMAN EXPOSITIONS, LLC and DOES 1-25, inclusive,<br><br>Defendant. | Case No. 19-07573-JCS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR CALIFORNIA LABOR CODE VIOLATIONS, UNFAIR BUSINESS PRACTICES, AND VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TERESA LANDUCCI ("Landucci" or "Plaintiff"), on behalf of herself and all others similarly situated, files this Amended Complaint against FREEMAN EXPOSITIONS, LLC ("Defendant" or "Freeman") and DOES 1-25 (collectively "Defendants"), seeking to recover for Defendants' violations of the California Labor Code, the Business & Professions Code, and the Fair Employment and Housing Act ("FEHA"). Plaintiff reserves the right to amend this complaint to add additional class representatives if and when their identities are ascertained. Plaintiff alleges as follows:

**INTRODUCTION**

1.   This is a class action complaint against Freeman Expositions, LLC to challenge its policy and practice of charging employees who did not enroll in direct deposit an $8.00 fee

FIRST AMENDED CLASS ACTION COMPLAINT

1

each time they cashed a paycheck, as is prohibited by the California Labor Code. Plaintiff and the proposed class are current and former employees who worked for Freeman at any time during the applicable period and were charged a fee to cash their paychecks. Plaintiff seeks to represent these employees in this class action. Plaintiff alleges that Defendants have engaged in unlawful patterns and practices by violating the California Labor Code.

2.  Plaintiff Teresa Landucci worked for Freeman, formerly known as Champion Expositions Services, for 13 years.

3.  Throughout Plaintiff's employment, Defendants charged her an $8.00 fee to cash her paychecks.

4.  Plaintiff was also sexually harassed, discriminated against because of her sex, and retaliated against for reporting that unlawful activity, until she had no reasonable alternative but to resign. Ms. Landucci worked as a Decorator but rather than be asked to do work in line with her skill and experience, she was asked to complete menial tasks such as cleaning, while men with far less experience were given priority for certain Decorator jobs. Ms. Landucci's male co-workers yelled obscenities at her, defamed her, and bullied her in the workplace, all of which Freeman failed to prevent, fully investigate, or remediate. In retaliation for her reports of misconduct, Freeman reduced Ms. Landucci's work hours, preventing her from making the same amount of money as her male co-workers by not providing her with as much overtime and double time as her male counterparts

5.  Plaintiff, on behalf of herself and all others similarly situated, seeks full compensation for all unpaid wages, including withheld wages in the form of the prohibited check cashing fees. Through her individual claims, Plaintiff seeks damages to compensate her for lost wages and benefits, together with interest at the legal rate, and emotional distress damages resulting from Defendants' unlawful actions. Plaintiff also seeks declaratory and injunctive relief, reasonable attorneys' fees, and costs incurred by Plaintiff in this action.

## PARTIES

6. Plaintiff was, at all relevant times herein, a resident of the State of California and employed by Defendant Freeman to work as a Decorator at various exhibitions in San Francisco, California.

7. Defendant Freeman is an American marketing company that specializes in face-to-face marketing events such as expositions, conventions, exhibits, and corporate events. Freeman operates throughout the United States. Defendant is a Texas headquartered limited liability company. All member-owners listed on Defendant's Statement of Information are Texas citizens.

8. Plaintiff does not know the true names and capacities of Defendants sued herein as DOES 1-25 and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true identities and capacities when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named Defendants is responsible in some manner for the occurrences alleged herein and thereby proximately caused Plaintiff's injuries alleged herein.

9. Plaintiff is informed and believed, and on that basis alleges, that, at all relevant times, each of the Defendants was the agent or employee of each of the remaining Defendants, and, in doing the things herein alleged was acting within the course and scope of such employment, and that Defendants authorized, ratified, and approved, expressly or implicitly, all of the conduct alleged herein.

## JURISDICTION AND VENUE

10. The amount of damages exceeds $75,000.

11. This Court has jurisdiction under 28 U.S.C. §1332 because Plaintiff and Defendant are citizens of different States.

12. Venue is this district is proper pursuant to 28 U.S.C. § 1391(b) because, at all material times, Defendant has been actively conducting business in the State of California and within the geographic area encompassing the Northern District of California.

FIRST AMENDED CLASS ACTION COMPLAINT

3

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13.     Plaintiff filed a timely charge of discrimination, harassment, and retaliation against Defendant with the California Department of Fair Employment and Housing ("DFEH"). Plaintiff received a right-to-sue notice from DFEH dated March 4, 2019, and has commenced this action in a timely manner.

**FACTUAL ALLEGATIONS**

14.     Ms. Landucci began working for Champion Expositions Services in 2006 as a Decorator. Her job responsibilities included assembling meeting rooms, monitoring booth counters, and setting up show and booth graphics. She reported to Dave Bowes. ("Bowes"). Freeman acquired Champion Expositions Services in 2011.

15.     Ms. Landucci is a member of Local Union No. 510 ("Union"), a union for tradeshow and convention installers and builders. The Union provides labor for over sixty contractors in the Bay Area. The Union sends members a schedule listing the company name and convention date and time. Union members call to request to work for specific companies or events. Unless all the positions have already been filled, the Union will assign the requesting member to work the event. Once at the event space, the contracting company, here Defendant, is responsible for assigning work to Union members.

16.     Sometime in 2008, Ms. Landucci overheard Bowes state that he had to sleep in his car the night before. Ms. Landucci had a spare bed and bathroom and kindly offered her generosity if he found himself with no place to go. That same month, Bowes contacted Ms. Landucci asking if he could take her up on her offer. Ms. Landucci agreed and gave him her address. Bowes arrived with a bottle of tequila and various drugs and asked if Ms. Landucci "wanted to party." Ms. Landucci refused but showed Bowes to the spare bedroom. The next morning, Bowes's wife called Ms. Landucci asking if Bowes was with her. Ms. Landucci, confused as to why Bowes had given his wife her phone number, checked the extra room and noted that the bed in the spare room was not slept in and told Bowes' wife that he was not there. A week later, Bowes called Ms. Landucci to tell her not to come into work the next day. Shocked at the news because they were preparing for a large show, she asked Bowes

why. Bowes responded that his wife was extremely jealous of Ms. Landucci and so she should not come in to work. Ms. Landucci called a friend and co-worker to ask what he would do, and he advised her to go into work anyway. Ms. Landucci did and Bowes angrily said to her, "I thought I told you not to come in." Ms. Landucci left work in tears and knowing that Bowes's brother and General Foreman at Champion, Pete Bowes, was marking the floor at the Moscone Center, she went there to discuss what had just occurred with him. Pete Bowes told Ms. Landucci that he would look into it and that Bowes's wife could not be dictating who comes into the shop for work. This however did not end the harassment.

17. Over the next week, Ms. Landucci's hours on the show floor were drastically reduced. While a shop person's hours on the show floor were generally 7:30 a.m. to 7:30 p.m., Ms. Landucci's hours were reduced to 8:00 a.m. or 10:00 a.m. to 5:00 p.m. most days, reducing her overtime compensation. Ms. Landucci was relegated to performing menial tasks such as putting together furniture and cleaning up after co-workers. Ms. Landucci was no longer given the opportunity to build booths as her male workers were, but instead had to clean the booths the male employees assembled and clean the counters that were delivered to the booths.

18. When Champion Expositions Services was purchased by Freeman in 2011, all of Ms. Landucci's co-workers were given new job opportunities with Freeman. However, Bowes and his brother Pete excluded Ms. Landucci from their list of regular exposition workers working Freeman events. Those on this list would automatically be scheduled to work Freeman events without having to request the work through the Union. Of the thirty-six individuals on the list, only three were women. Whenever Ms. Landucci asked why she was singled out, she was given offensive explanations that ultimately did not make sense. For example, Ms. Landucci was told "the workers at Freeman clean up after themselves" or she had "nothing to bring to the table."

19. Ms. Landucci made phone calls to Freeman's manager, Barry Owens ("Owens"), who said he would try to work her into upcoming shows if she could manage to get dispatched to Freeman events. Despite that representation, he did not actually assist her.

5

FIRST AMENDED CLASS ACTION COMPLAINT

20.     Ms. Landucci's male coworkers would call her "Rally Stupid Moron" rather than "Really Stupid Moron," or "Rally" for short. On June 12, 2016, Ms. Landucci was working in San Jose, California, walking with her electric scooter to the booth she was assigned to. Another employee, Jeff Cooper ("Cooper"), began yelling "RALLY," and asking to ride her scooter. Ms. Landucci replied she did not let anyone ride her scooter but Cooper continued to pester her. Ms. Landucci told him that the scooter had a weight limit. Cooper then turned to his co-workers and said, "she's calling us fat fucks." Cooper and the other male co-workers then yelled profanities at Ms. Landucci, telling her to "get fucked" and calling her a "fucking whore." Wanting the harassment to stop, Ms. Landucci relented and allowed Cooper to ride the scooter a short distance. While riding the scooter, Cooper appeared to be pressing all his weight onto it to break it. Ms. Landucci told him to get off and as he did so, he pressed his weight into it a final time, causing the scooter to crack and break. Ms. Landucci left but later texted Cooper asking to be compensated for breaking her property. Cooper refused, but as Ms. Landucci was leaving for the day, he yelled out to her, "where are you taking my scooter?" Since it was no longer functional and because she was worn down from the harassment, Ms. Landucci laid the scooter down on the ground and left. Later, Ms. Landucci received a barrage of texts from Cooper saying she was "trying to extort money from [him]" and "no wonder [she] didn't get hired at the Freeman shop because [she's] a fucking bitch." Ms. Landucci emailed Owens explaining her distress over the scooter incident and the constant degradation she faced every day at work. Owens however neither spoke to Cooper nor investigated the harassment. Cooper never apologized for the incident but shortly after, he was given the opportunity to work at the Freeman warehouse while Ms. Landucci was still denied job opportunities.

21.     On February 10, 2017, Ms. Landucci was working and walked to the main show floor to get a roll of shrink wrap. She got a new roll but as she was walking to her station, she saw a smaller roll. She picked it up and left the larger one. Right afterwards, a co-worker, Dave Miskelley ("Miskelley") started yelling that it was his roll and screamed profanities at Ms.

FIRST AMENDED CLASS ACTION COMPLAINT

6

Landucci. She explained they were all working for Freeman and that their main goal was to get things packed so they could leave for the day. Ms. Landucci spent three minutes using the shrink wrap then set it down next to Miskelley. Miskelley picked up the roll and threw it at Ms. Landucci. Ms. Landucci was able to jump out of the way to avoid being hit, but her glasses fell and broke. Miskelley never apologized.

22.     On March 25, 2018, Ms. Landucci emailed Owens again asking for more job opportunities and hours. She reiterated how she had been subject to harassment over the years and how she felt that the hostile work environment and retaliation were affecting her ability to support herself and her family. She asked for the same opportunities that anyone else with her experience and ability should be granted, but those opportunities never materialized, and the harassment continued.

23.     On April 14, 2018, another male employee was making rude remarks as to why Ms. Landucci was not hired full-time when Freeman purchased Champion Expositions Services. Tired of the remarks, she told him the reason was due to the discrimination and retaliation from Bowes. Upset from the interaction, Ms. Landucci went to find foreman Joe D'Aquino ("D'Aquino") to be assigned to another area. D'Aquino ended a call he was on with Bowes and began shouting at Ms. Landucci "YOU WILL NEVER BE ON MY CREW AGAIN. GET THE FUCK OUT OF HERE. YOU ARE A STUPID FUCKING MORON. HURRY UP, MORON." Distressed and in tears, Ms. Landucci left initially to go to her newly assigned position at the sign-in desk but eventually left for the day because her distress had caused her a severe headache. The next day at work, Ms. Landucci saw shop steward Dennis Lebaron ("Lebaron") and decided to tell him of what happened the day before with D'Aquino. She specifically asked that Lebaron not mention it to D'Aquino for fear of retaliation from him.

24.     On April 15, 2018, Ms. Landucci returned to work and was assigned to Aldo Ferray's ("Ferray") department. Ferray assigned Ms. Landucci to Eddie Pember's team and while Ms. Landucci was waiting for him to arrive, a customer asked if Ms. Landucci could check on a booth to see if furniture had been delivered. Ms. Landucci returned from helping the customer

with her request to tell her that the furniture had been delivered, but before she could finish her sentence Ferray yelled at her, "HEY, EDDIE IS YOUR FOREMAN YOU NEED TO LISTEN TO HIM." Ferray then told her, "If there is a cut list at noon, your name is going to be on it." Ferray then oddly and inappropriately noted that Ms. Landucci's hair "looked nice" and asked "what are you doing differently?" Ms. Landucci was cut from the job later that day. As she was leaving, she walked past D'Aquino who began screaming and yelling profanities at her in front of many people in the lobby of the Moscone Convention Center.

25. On May 22, 2018, Ms. Landucci wrote a formal complaint to Owens. She reiterated how she had suffered harassment, discrimination, and retaliation and did not feel that she was "truly equal" in the workplace at Freeman. Freeman refused to take any corrective action. D'Aquino admitted he had lost his temper and "regretted it." But nothing in the workplace changed and Ms. Landucci continued to suffer the same harassment and retaliation while Freeman took no responsibility to prevent it, intervene, or take any concrete corrective action.

26. On June, 21, 2018, Ms. Landucci took a job at the Hilton Hotel. Upon leaving for the day, Ms. Landucci was told she would be reporting to work on Saturday at 8 a.m. while every other employee would be reporting on Friday at 8 a.m. and continue working through the weekend. Ms. Landucci was given less work than her male counterparts for no discernable reason.

27. On August 13, 2018, Ms. Landucci complained again to Freeman's HR Department, noting that no corrective action had been taken in her case. She questioned why all her complaints were being ignored. HR simply reiterated that her complaints were "being taken care of." Ms. Landucci wrote back stating that if Freeman believed the matter had been resolved, then it was sorely mistaken and that she continued to suffer harassment and retaliation every day at work. HR responded that it "could not substantiate findings of harassment or bullying" and that she needed to work on "assum[ing] positive intent of those around [her]."

28. As Freeman refused to take any of her complaints seriously, or do anything to investigate or put a stop to the continuing discrimination, harassment, and retaliation, Ms. Landucci suffered from severe emotional distress and eventually had no reasonable alternative but to resign. Her last day of employment was in August 2018. Freeman's male dominated culture has caused Ms. Landucci to suffer economic damages. In 2016, Ms. Landucci made $65,000 with Freeman. However, in 2017 she made only $27,000 and in 2018 she made only $15,000, despite seeking full time work for which she was certainly qualified. The sharp decrease in her compensation is directly related to Freeman's retaliation and failure to give her the same opportunities afforded to her male co-workers, despite her experience and qualifications.

29. Freeman also charged Ms. Landucci $8.00 to cash her paychecks throughout her employment and, on information and belief, all other Freeman employees who do not use direct deposit have been required to pay the $8.00 charge as well.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings the First through Third Causes of Action pursuant to as an "opt-out" Federal Rule of Civil Procedure 23. The class is initially defined as:

> All persons who worked for Defendants as temporary, non-exempt employees at events or expositions produced by Defendants at any time during the four years prior to the filing of this lawsuit and until final judgment is entered and who were assessed fees as a result of cashing a paycheck issued by Defendant Freeman.

31. **Numerosity:** Defendants have employed one-hundred to two-hundred non-exempt persons to setup, decorate, staff, and take down expositions and events. The number of Putative Class Members are therefore far too numerous to be individually joined in this lawsuit.

32. Common questions of law and fact exist with regard to Putative Class Members ("PCMs"), including, without limitation, whether Defendant charged PCMs a fee to cash their paychecks.

33. **Commonality:** Common methods of proof exist, including, without limitation, the

FIRST AMENDED CLASS ACTION COMPLAINT

following:

    a.    Deposition testimony of the Defendant Persons Most Knowledgeable and the payroll managers responsible for payroll of all Class Members during the applicable class period;

    b.    Company-wide written policies;

    c.    Representative declaration testimony of Class Members.

    d.    Records of fees charged to employees for cashing a paycheck issued by Defendant Freeman.

34. **Typicality:** Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like other Class Members, was subject to Defendants' common policy, plan, or practice of charging employees not enrolled in direct a deposit a fee to cash paychecks in violation of California law.

35. Plaintiff will fairly and adequately represent and protect the interests of the Class Members.

36. Plaintiff has retained counsel competent and experienced in complex wage-and-hour class action litigation. Plaintiff's counsel have litigated numerous class actions on behalf of employees asserting wage-and-hour claims under California and federal law. Plaintiff's counsel intend to commit the necessary resources to prosecute this action vigorously for the benefit of all Class Members.

37. Class certification is appropriate because common questions of law and fact predominate over questions relating only to individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of Class Members' claims. The damages suffered by individual Putative Class Members will be small compared to the expense and burden of the prosecution of individual actions. Furthermore, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendants' employment practices.

38. Class treatment will allow those similarly situated persons to litigate their claims in the

manner most efficient and economical for the Parties and the judicial system.

39. Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

40. Plaintiff intends to send notice to all Putative Class Members to the extent required under applicable class action procedures. Plaintiff contemplates providing a notice or notices to the Class, as approved by the Court, to be delivered through the United States mail. The notice or notices shall, among other things, advise the Class that they shall be entitled to "opt out" of the class certified if they so request by a date specified within the notice, and that any judgment, whether favorable or not, entered in this case will bind all Putative Class Members except those who affirmatively exclude themselves by opting out.

**FIRST CAUSE OF ACTION**
**(UNLAWFULLY WITHHELD WAGES IN VIOLATION OF CAL. LABOR CODE § 212)**
**(CLASS CLAIM)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

41. Cal. Labor Code § 212 states:

> (a) No person, or agent or officer thereof, shall issue in payment of wages due, or to become due, or as an advance on wages to be earned:
>
> > (1) Any order, check, draft, note, memorandum, or other acknowledgment of indebtedness, unless it is negotiable and payable in cash, on demand, without discount, at some established place of business in the state, the name and address of which must appear on the instrument, and at the time of its issuance and for a reasonable time thereafter, which must be at least 30 days, the maker or drawer has sufficient funds in, or credit, arrangement, or understanding with the drawee for its payment.
>
> > (2) Any scrip, coupon, cards, or other thing redeemable, in merchandise or purporting to be payable or redeemable otherwise than in money.
>
> (b) Where an instrument mentioned in subdivision (a) is protested or dishonored, the notice or memorandum of protest or dishonor is admissible as proof of presentation, nonpayment and protest and is presumptive evidence of knowledge of insufficiency of funds or credit with the drawee.
>
> (c) Notwithstanding paragraph (1) of subdivision (a), if the drawee is a bank, the bank's address need not appear on the instrument and, in that case, the instrument shall be negotiable and payable in cash, on demand, without

FIRST AMENDED CLASS ACTION COMPLAINT

11

discount, at any place of business of the drawee chosen by the person entitled to enforce the instrument.

42. By issuing Plaintiff and the PCMs paychecks which required that a fee be assessed in order for the paycheck to be cashed, Defendants have violated the provisions of Section 212.

43. Plaintiff and PCMs have been damaged by Defendants' failure to pay its employees in accordance with Cal. Labor Code section 212 because each PCM who incurred a fee to obtain their wages earned was then paid less than the full amount of what was earned.

44. Pursuant to Cal. Labor Code section 218.5, Plaintiffs are entitled to an award of reasonable attorneys' fees and costs incurred by Plaintiffs in this action.

**SECOND CAUSE OF ACTION**
**(WAITING TIME PENALTIES)**
**(CLASS CLAIM)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

45. Cal. Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

46. Cal. Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

47. Cal. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

48. A substantial portion of the Putative Class Members have left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from not being paid their full wages earned as a result of having to pay a fee to cash their paychecks.

FIRST AMENDED CLASS ACTION COMPLAINT

12

49. Defendants willfully refused, and continue to refuse, to provide Plaintiff and the Class with their full wages earned by requiring Plaintiff and the Class pay a fee to cash their paychecks at a bank.

50. Accordingly, Defendants willfully refused and continue to refuse to pay those members of the Class that left their employment with Defendants all the wages that were due and owing them upon the end of their employment. As a result of Defendants' actions, Plaintiff and the Putative Class Members have suffered and continue to suffer substantial losses, including lost earnings and interest.

51. Defendants' willful failure to pay the former employees the wages due and owing them constitutes a violation of Cal. Labor Code §§ 201-202. As a result, Defendants are liable to them for all penalties owing pursuant to Cal. Labor Code §§ 201-203.

52. In addition, Cal. Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, the former employees are entitled to penalties pursuant to Cal. Labor Code § 203, plus interest.

**THIRD CAUSE OF ACTION**
**(UNFAIR BUSINESS PRACTICES)**
**(CLASS CLAIM)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

53. Cal. Bus. and Profs. Code §§ 17200, et seq. prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

54. California Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

55. California Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers

FIRST AMENDED CLASS ACTION COMPLAINT

by failing to comply with minimum labor standards.

56. Beginning at an exact date unknown to Plaintiffs and PCMs, but at least since the date four years prior to the filing of this suit, Defendant has committed acts of unfair competition as defined by the Unfair Business Practices Act by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to requiring Plaintiff and PCMs to pay a fee in order to cash their paychecks in violation of Cal. Labor Code § 212, and as a result violating Cal. Labor Code §§ 201-203.

57. The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq*.

58. The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, *et seq*. Among other things, the acts and practices have taken from Plaintiff's and PCMs' wages rightfully earned by them, while enabling the Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

59. Business and Professions Code § 17203 provides that the Court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

60. As a direct and proximate result of the aforementioned acts and practices, Plaintiff and PCMs have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

61. Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Class are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint.

62. Plaintiff's success in this action will enforce important rights affecting the public interest

and, in that regard, Plaintiff sues on behalf of himself and others similarly situated. Plaintiff and PCMs seek and are entitled to unpaid wages, declaratory relief, and all other equitable remedies owing to them.

63. Plaintiff herein takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure § 1021.5 and otherwise.

**FOURTH CAUSE OF ACTION**
**(SEX DISCRIMINATION)**
**(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

64. Defendant is an employer within the meaning of FEHA.

65. Plaintiff was an employee of Defendants.

66. Defendants discriminated against Plaintiff by preventing Plaintiff from doing the kinds of tasks she was qualified to do and instead relegating her to menial tasks below her qualification level. Plaintiff's male colleagues, however, were not subjected to the same kind of treatment. Defendants also reduced Plaintiff's hours and gave her less work as compared to her male colleagues, reducing her compensation.

67. Plaintiff's sex was a substantial motivating reason for Defendants' adverse employment actions.

68. Plaintiff was harmed.

69. Defendants' conduct was a substantial motivating factor in causing Plaintiff's harm.

**FIFTH CAUSE OF ACTION**
**(SEXUAL HARASSMENT)**
**(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

FIRST AMENDED CLASS ACTION COMPLAINT

70. Plaintiff was an employee of Defendants.

71. Plaintiff was subjected to harassing conduct because she was a woman.

72. The harassing conduct was severe and pervasive.

73. Plaintiff's supervisors engaged in the harassing conduct and knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

74. Plaintiff was harmed.

75. The conduct was a substantial factor in causing Plaintiff's harm.

**SIXTH CAUSE OF ACTION
(FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION)
(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

76. Plaintiff was an employee of Defendants.

77. Plaintiff was subjected to harassment and discrimination in the course of employment.

78. Defendants failed to take all reasonable steps to prevent the harassment and discrimination.

79. Plaintiff was harmed.

80. Defendants' failure to take all reasonable steps to prevent the harassment and discrimination was a substantial factor in causing Plaintiff's harm.

**SEVENTH CAUSE OF ACTION
(RETALIATION IN VIOLATION OF FEHA)
(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

81. Plaintiff made multiple complaints to Defendants about discrimination, harassment, and retaliation that she suffered.

82. Defendant retaliated against Plaintiff by preventing her from completing tasks within her qualification level and cutting her work hours and compensation.

83. Plaintiff's complaining about discrimination, harassment, and retaliation was a

substantial motivating reason for Defendants' above-mentioned conduct.

84. Plaintiff was harmed.

85. Defendants' retaliatory conduct was a substantial factor in causing Plaintiff's harm.

**EIGHTH CAUSE OF ACTION**
**(RETALIATION IN VIOLATION OF CAL. LABOR CODE § 1102.5)**
**(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

86. Plaintiff was an employee of Defendants.

87. Plaintiff complained to Defendants about discrimination, harassment, and retaliation, which she had reasonable cause to believe was a violation of the law.

88. Plaintiff's supervisors had authority to investigate, discover, or correct the legal violation or noncompliance.

89. Defendant took adverse actions against Plaintiff and assigned her to tasks below her qualification level and cut her work hours and compensation.

90. Plaintiff's complaints were a motivating reason for the adverse actions.

91. Plaintiff was harmed.

92. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

**NINTH CAUSE OF ACTION**
**(CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY)**
**(BROUGHT BY PLAINTIFF LANDUCCI INDIVIDUALLY)**

Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein below.

93. Plaintiff was an employee of Defendants.

94. Plaintiff was subjected to working conditions that violated public policy in that she was continually discriminated against, harassed, and retaliated against at work.

95. Defendant intentionally or knowingly created these working conditions that were so intolerable that Plaintiff had no reasonable alternative but to resign.

96. Plaintiff resigned because of these working conditions.

97. Plaintiff was harmed.

98. The working conditions were a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for as follows:

1. Certification of this action as a class action on behalf of the Class Members;
2. Designation of Plaintiff as representatives of the Class;
3. Designation of Plaintiff's counsel of record as class counsel for the Class;
4. Damages and restitution for paid wages, together with interest at the legal rate;
5. For a declaratory judgment that Defendants have violated the California Labor Code and public policy as alleged herein;
6. For an equitable accounting to identify, locate, and restore to all PCMs the wages they are due, with interest thereon;
7. All applicable statutory penalties, arising from Defendants' unlawful conduct, as alleged herein;
8. Attorney's fees and costs pursuant to the California Labor Code, Cal. Code of Civil Procedure § 1021.5 and any other applicable attorney fee provisions;
9. For interest on any damages and/or penalties awarded, as provided by applicable law;
10. Damages to compensate Plaintiff individually for her lost wages and benefits, together with interest at the legal rate, and emotional distress damages resulting from Defendants' unlawful actions as described above in her individual claims;
11. For the costs of the suit; and
12. For any such other and further relief as this Court deems just and proper.

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

18

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims to which Plaintiff and/or the Class are entitled to a jury trial.

Respectfully submitted,

Date: January 16, 2020

HOYER & HICKS

_____
Richard A. Hoyer
Ryan L. Hicks
*Attorneys for Plaintiff*
*TERESA LANDUCCI*

FIRST AMENDED CLASS ACTION COMPLAINT

19