HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
TERESA LANDUCCI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LANDUCCI, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>FREEMAN EXPOSITIONS, LLC and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. 3:19−cv−07573−JCS<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date:      February 4, 2022<br>Time:     9:30 a.m.<br>Courtroom: Courtroom F – 15th Floor<br>Judge:    Chief Magistrate Judge<br>             Joseph C. Spero<br><br>Second Amended Complaint Filed: November 2, 2020 |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Friday, February 4, 2022, at 9:30 a.m. in Courtroom F before Chief Magistrate Judge Joseph C. Spero of the United States District Court, Northern District of California, Plaintiff TERESA LANDUCCI moves the Court for preliminary approval of the Joint Stipulation of Class and Representative Action Settlement (the "Settlement Agreement" or the "Settlement," attached as Exhibit 1 to the Declaration of Ryan L. Hicks ("Hicks Dec."), filed concurrently herewith). In particular, Plaintiff moves for orders:

(1) granting preliminary approval of the Settlement Agreement as to the proposed settlement Class;

(2) conditionally certifying the Class for settlement purposes;

(3)    approving the proposed schedule and procedure for completing the final approval process of the settlement as to the Class, including scheduling the final fairness hearing date;

(4)    approving the Notices of Proposed Class Action Settlement ("Class Notice") (attached as Exhibits A1 and A2 to the Settlement Agreement), and the PAGA Settlement Cover Letter (attached as Exhibit C to the Settlement Agreement);

(5)     preliminarily appointing and approving Hoyer & Hicks as Counsel for the Class;

(6)    preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7)    preliminarily appointing and approving the named Plaintiff as Class Representative;

(8)    preliminarily appointing and approving Simpluris, Inc. as the Settlement Administrator for the Class; and

(9)    authorizing the Settlement Administrator to mail the approved Class Notice to the Class.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declaration of Ryan L. Hicks, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Accompanying this Motion is also Plaintiff's Proposed Order Granting Preliminary Approval of Settlement.

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................. 1

II. FACTUAL BACKGROUND .................................................................. 1

III. PROCEDURAL HISTORY ................................................................... 2
    A.   Plaintiff's Claims ......................................................................... 2
    B.   Discovery ................................................................................... 3
    C.   Damages Analysis ...................................................................... 3
    D.   Mediation ................................................................................... 4

IV. TERMS OF THE SETTLEMENT ......................................................... 5
    A.   Basic Terms ............................................................................... 5
    B.   Class Definition .......................................................................... 5
    C.   Allocation and Awards ................................................................ 5
    D.   Scope of Release and Final Judgment ....................................... 6
    E.   Settlement Administration ........................................................... 6

V. ARGUMENT ....................................................................................... 7
    A.   The Court Should Grant Preliminary Approval of the Settlement as to the Class under Rule 23(b)(3). ................................................ 7
    B.   The Court Should Conditionally Certify the Class. ...................... 8
        1.   The Class is Numerous and has Been Ascertained. ............... 9
        2.   Plaintiff's Claims Raise Common Issues of Fact or Law. ......... 9
        3.   Plaintiff's Claims are Typical of the Claims of the Class. ....... 10
        4.   Plaintiff and Class Counsel will Adequately Represent the Class. ........................ 10
        5.   The Rule 23(b)(3) Requirements for Class Certification are Met. ......................... 11
    C.   The Settlement Should Be Preliminarily Approved as to the Class Because It Is Fair, Reasonable, and Adequate. .............................................................. 12
        1.   Procedural Fairness. ............................................................ 13
        2.   Substantive Fairness. .......................................................... 14
        3.   The Distribution of Settlement Proceeds is Tailored to the Class and Their Respective Claims. ................................ 15
        4.   The Informal Discovery Exchange Enabled the Parties to Make Informed Settlement Decisions. ..................................... 16
        5.   Litigating the Action Not Only Would Delay Recovery, But Would Be Expensive, Time Consuming, and Involve Substantial Risk. ..................................... 17
        6.   The Class Representative Award is Reasonable. .................. 17
        7.   The Requested Attorneys' Fees and Costs are Reasonable. .............................. 18
        8.   Release of Claims ............................................................... 20
    D.   The Proposed Notice Process is Reasonable. .......................... 21

VI. CONCLUSION ................................................................................. 23

**TABLE OF AUTHORITIES**

**Federal Cases**

*Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012) .................................. 13

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) .............................................. 12

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) ................................................ 16

*Chem. Bank v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................... 8

*Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929 (E.D. Cal. Nov. 3, 2015)........................................................................................................ 18

*Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ...................................................................... 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .......................................................... 21

*Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002)............. 19

*Entin v. Barg*, 412 F.Supp. 508 (E.D. Pa. 1976) ............................................................. 14

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980) ............................................ 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................ 7, 18

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir.1983) ....................................... 16

*In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989)........................................ 18

*In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357 (N.D. Ga.1979).............................. 14

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935 (N.D.Ill.2011) ............................................................................................................ 16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ................... 7

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) ............................. 14

*In re Itel Secs. Litig.*, 89 F.R.D. 104 (N.D. Cal. 1981)........................................................ 9

*In re Mego Fin. Corp. Sec. Litig.,*213 F.3d 454, 459 (9th Cir.2000)................................... 14

*In Re Sunrise Secs. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990) ............................................. 14

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)........................................ 13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................. 8, 12, 14

*Jordan v. L.A. County*, 669 F.2d 1311 (9th Cir.)............................................................... 9

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009) ................................ 18

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ........................................................................................................... 16

*Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675 (N.D. Cal. Feb. 10, 2014) ................................................................................................................ 8

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ........................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................... 21

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ..................................... 9

*Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261 (9th Cir. 2010) ..................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 13

*Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) ...................................................................................................................... 19

*Palacios v. Penny Newman Grain, Inc.,* 2015 WL 4078135 (E.D.Cal. July 6, 2015) ..... 11, 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ....................................................... 21

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) .............................................................. 18

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ................................................................... 19

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) ............................ 18

*Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001 (E.D.Cal. June 11, 2012) . 12

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) ..... 12

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .................................................................. 21

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................... 17, 18

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .............................. 17

*Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) .................................. 18

*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043 (9th Cir. 2002) ............................................ 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................ 9

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) ................................. 10, 11

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ................................................................................................. 13, 19

**State Cases**

*Barela v. Ralph's Grocery Co.,* No. BC070061 (Los Angeles Super. Ct., June 5, 1998) .... 19

*Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) ........................................................................................................................ 19

*Davis v. The Money Store, Inc.*, No. 99AS01716, (Sac. Super. Ct., Dec. 26, 2000) ........... 19

*Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) ............................... 17

*Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) ........................................................................................................................ 19

**Statutes**

Business and Professions Code §§ 17200 ........................................................................... 3

Cal. Lab. Code §2699(l)(2) ................................................................................................... 5

Fed R. Civ. P. 23(a) ......................................................................................................... 8, 9

Fed. R. Civ. P. 23(a) ....................................................................................................... 7, 10

Fed. R. Civ. P. 23(b) ....................................................................................................... 9, 11

Fed. R. Civ. P. 23(e) ........................................................................................................... 12

Fed. R. Civ. P. 23(e)(2) .................................................................................................... 7, 8

Fed. R. Civ. P. 23(h) ........................................................................................................... 22

**Other Authorities**

Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992) ............................................ 21, 22

Manual for Complex Litigation, *Settlement Notice*, § 21.312 (4th ed. 2004) ............. 7, 21, 22

Newberg On Class Actions § 13:13 (5th ed. 2011) ............................................................. 8

Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ....................................... 19

## I. INTRODUCTION

This is a class action on behalf of all current and former non-exempt employees of Defendant FREEMAN EXPOSITIONS, LLC, ("Defendant" or "Freeman") who received paper paychecks and against whom third-party Bank of America assessed check cashing fees when those employees cashed those paychecks in California during the Class Period. Plaintiff also asserts a collective claim for PAGA Penalties on behalf of the Labor Workforce and Development Agencies related to violations suffered by the Aggrieved Employees, all non-exempt employees of Defendant who received paper paychecks during the PAGA Period. Following informal discovery, including lengthy negotiations with third-party Bank of America, which assessed the fees, an unsuccessful mediation, and extensive arm's-length negotiations between counsel thereafter, the Parties have reached a settlement of this dispute. Plaintiff seeks preliminary approval of the proposed Class Settlement. The Parties are resolving class claims and a PAGA claim unlikely to have been prosecuted as individual actions or by the State, and in doing so provide substantial benefit to the Class. Specifically, the Parties have resolved the claims of approximately 1,015 class members and a PAGA claim involving approximately 5,547 aggrieved employees, for a total settlement of $500,000.[1] This favorable Settlement is fair, reasonable, and adequate in all respects.

## II. FACTUAL BACKGROUND

Defendant is a nationwide trade show, exhibit, and event company based in Dallas, TX. Plaintiff and the Class Members (collectively, "CMs") are former and current non-exempt employees who worked in California during the applicable limitations period, and against whom check cashing fees of $5 or $8 were assessed when the CM attempted to cash a paper paycheck. Plaintiff alleges that the check cashing fees violate the Labor Code and also give rise to Waiting Time Penalties. On behalf of the State, Plaintiff also asserts a claim for PAGA Penalties on behalf of all employees who were issued physical paychecks as check cashing

---

[1] The Settlement Agreement ("Settlement") is attached as Exhibit 1 to the Declaration of Ryan L. Hicks ISO Preliminary Approval ("Hicks Dec.").

fees could have been assessed when the PAGA Member cashed the check. Defendant has at all times denied these allegations.

### III. PROCEDURAL HISTORY

#### A.    Plaintiff's Claims

On November 18, 2019, Plaintiff filed a complaint alleging class wage and hour violations[2] in the United States District Court for the Northern District of California (Dkt. # 1). That same day, Plaintiff submitted a PAGA notice to the Labor and Workforce Development Agency ("LWDA"). (Hicks Dec. at ¶ 3). On January 16, 2020, Plaintiff filed her First Amended Complaint. (Dkt. # 16). With the Court's permission, Plaintiff filed the operative Second Amended Complaint on November 2, 2020 (Dkt. # 46). The parties exchanged their initial disclosures, and Plaintiff propounded a full set of discovery requests, and Defendant took Plaintiff's deposition. (Hicks Dec. at ¶ 3). Ultimately, the Parties agreed to mediate the case. *Id.* at ¶¶ 3-4. In addition to the informal discovery, Plaintiff issued a PMK subpoena to third-party Bank of America ("BOFA"), the bank through which the paychecks to CMs and PAGA Members were issued, and which charged the check cashing fees at issue in the case, to identify and ascertain the check cashing fees assessed against CMs during the class period. *Id.* at ¶ 5. The Parties worked for many months thereafter with BOFA to determine the extent of the check cashing fees. *Id.* The Parties agreed to stay all formal proceedings pending the mediation. *Id.*

In addition to the extensive pre-certification, voluntary exchange of information, the Parties each conducted independent investigations and fact-finding. *Id* at ¶ 6. Plaintiff's counsel interviewed some CMs, none of whom were willing to provide written statements or declarations. *Id.* at ¶ 6.

On June 22, 2021, the Parties participated in an exhaustive full-day mediation session via Zoom before Deborah Crandall Saxe, Esq., a highly respected neutral mediator out of the Los Angeles area, who specializes in wage and hour mediations. *Id.* at ¶ 7. Plaintiff submitted

---

[2] Plaintiff also asserted individual claims of sex discrimination, sexual harassment, and retaliation in violation of the Fair Employment and Housing Act and Labor Code § 1102.5. The individual claims were the subject of a separate settlement agreement.

a mediation brief summarizing the evidence that counsel had marshalled and synthesized, the state of the applicable law, and potential individual and class-wide exposure. *Id*. Defendant submitted its own brief arguing that no class could be certified and that they would also prevail on the merits against the individual Plaintiff and any other PCMs. *Id*. Although resolution was not achieved at the June 22 session, with Mediator Saxe's assistance thereafter, the Parties agreed, subject to approval by this Court, to a Settlement of the Actions.[3] *Id*. The Parties executed the Settlement Agreement on December 16, 2021. *Id.;* Ex. 1.

The November 2, 2020 operative Complaint asserts three causes of action on behalf of the class for (1) unlawfully withheld wages resulting from the check cashing fees in violation of California Labor Code § 212; (2) resulting Waiting Time Penalties; and (3) unfair business practices in violation of the Unfair Competition Law, Bus. and Profs. Code §§ 17200, *et seq.* ("UCL"). Plaintiff also asserts a claim for PAGA Penalties on behalf of the LWDA for violations of Labor Code § 212. The remaining causes of action were asserted on an individual basis by Plaintiff and have been resolved. (Dtk. # 46).

**B.  Discovery**

As a condition of the mediation, Plaintiff required Defendant to provide some informal discovery regarding the number of total paper paychecks issued during the PAGA Period. The parties also determined that the most vital piece of information was the check cashing fees provided by BOFA from its own information systems. Hicks Dec. at ¶¶ 4, 10, 30. Plaintiff's counsel then calculated the damages for the class based on the data provided by Defendant and BOFA. *Id.* at ¶¶ 10, 11. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant. *Id.*

**C.  Damages Analysis**

Class Counsel based their damages analysis and settlement negotiations on the informal discovery and data provided and the information obtained from BOFA and

---

[3] As discussed above, the individual claims were resolved in a separate agreement after the class and representative claims were resolved in principle. Hicks Dec. at ¶ 8.

Defendant prior to the mediation. *Id.* at ¶ 10. Because of the data production, and the simple nature of the claim (either a fee was assessed by BOFA to a CM, or it was not), Plaintiff's Counsel was required to make only a few assumptions regarding the exposure. *Id.*

Using these assumptions and further assuming that Plaintiff and the CMs would certify all of their claims and prevail at trial on all claims for the absolute maximum "perfect world" exposure, Plaintiff's Counsel calculated total damages, including all penalties, through the mediation[4] to be $9,626,919 for the class claims (the actual fees charged to CMs were approximately $31,000, and the rest of the damages were for Waiting Time Penalties), and approximately $3,484,652 for the PAGA claim. *Id.* at ¶ 11.

The net amount being disbursed to CMs, assuming the Court approves all deductions, is $221,500, which is approximately 2% of the total non-PAGA damages and penalties estimated by Plaintiff (all but $30,759 is attributable to waiting time penalties claims), but is notably over *720% of the $30,759.00 in check cashing fees that were actually assessed against the class members*. *Id.* at ¶ 12; Ex. 2 (BOFA Declaration re: Fees Assessed). The settlement amount is fair, reasonable, and adequate. *Id.* at ¶ 21. The settlement amount takes into account the substantial risks inherent in any wage-and-hour class action, the status of the litigation, the evidence that Defendant discussed at the mediation, and the specific defenses as to certification and on the merits asserted by Defendant. *Id.* at ¶¶ 27, 28.

**D.** **Mediation**

The Parties mediated this dispute on June 22, 2021 before Deborah Crandall Saxe, Esq., a respected and experienced wage and hour mediator, engaging in arm's-length negotiations, and the Parties only reached a settlement after negotiations continued for months after the unsuccessful mediation. *Id.* at ¶¶ 7, 14. Thereafter, counsel for the Parties worked to finalize the settlement for the CMs and the proposed class notice, subject to the Court's approval. *Id.* The Settlement Agreement was fully executed on December 16, 2021. *Id.*; Ex. 1.

---

[4] The information regarding the total amount of check cashing fees assessed was updated following the mediation prior to the execution of the Settlement Agreement *Id.* at ¶ 9.

## IV. TERMS OF THE SETTLEMENT

### A. Basic Terms

Defendants have agreed to pay a total of $500,000 to settle all aspects of the class and collective claims. Settlement at ¶ 16 (Gross Settlement Amount). The "Total Net Settlement Amount," which is the amount available to pay settlement awards to the CMs, is defined as the Settlement Fund less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Maximum Settlement Amount, $166,666.67, plus actual reasonable costs incurred (currently estimated as $10,000 and will be updated at Final Approval), any enhancement payment awarded to the Class Representative (up to $10,000), the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($56,250)[5], the amount to be disbursed to the PAGA Members ($18,750)[6], and the Settlement Administrator's fees and costs (which have been quoted at $18,000[7]). *Id.*

### B. Class Definition

An individual is a member of the proposed settlement Class if they received a physical paycheck in California and were assessed a check cashing fee by BOFA when attempting to cash the paycheck from Defendant at any time during the period from November 18, 2015 through the end of the Class Period, which is the date of preliminary approval of the Settlement. Settlement at ¶¶ 5 (Class Members), 6 (Class Period).

### C. Allocation and Awards

The Total Net Settlement Fund to be paid to CMs is estimated to be $221,500. Hicks Dec. at ¶ 18. All CMs who do not opt-out of the Settlement will receive a payment. Each CM's settlement share will be determined by dividing the Total Net Settlement Fund Equally among Class Members, as the lion's share of the damages are based on the alleged Waiting Time Penalties claims, which are far larger per class member than any number of individual check

---

[5] Plaintiff will submit a copy of the Settlement Agreement and these papers to the LWDA, per Cal. Lab. Code §2699(l)(2). Hicks Dec. at ¶ 16, fn. 3. $75,000 of this Settlement is allocated to settle the PAGA claims. *Id.* The Settlement Administrator shall pay $56,250 of this amount to the LWDA, and allocate the remaining 25% to the payments to PAGA Members. Settlement ¶ 19 (LWDA Payment), 7 (PAGA Members).
[6] Settlement Agreement at ¶ 42.
[7] The Simpluris' quote is attached to the Hicks Dec. at ¶ 20; Ex. 3.

cashing fees assessed. Settlement at ¶ 44(a).[8] All eligibility and Class Settlement Award determinations shall be based on employee information that the Settlement Administrator determines based on Defendant's data provided to the Settlement Administrator and check cashing fee data provided by BOFA. *Id.* at ¶¶ 4, 34-35. For any CM that does not timely opt out of the Settlement and receives a payment, but does not timely cash his or her settlement check within 90 days, the Settlement Administrator will immediately stop payment on the check and such funds, plus any accrued interest, will be tendered to a *cy pres* beneficiary to be approved by the Court.[9]

### D.    Scope of Release and Final Judgment

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit, all violations asserted in any notice sent to the LWDA, as well as all predicate claims based on the factual and legal theories alleged based on the facts alleged in the complaint (i.e. based on violations of 212 and associated check cashing fees and resulting waiting time penalties), from the beginning of any applicable statute of limitations period through the end of the Class Period. Settlement at ¶¶ 25; 42. Only CMs who do not opt out will release their Class Claims, however, all claims under PAGA regarding alleged violations allegedly suffered by PAGA Members will be released by the LWDA, and the PAGA Members will receive a payment regardless of whether they opt out.[10] *Id.* at ¶ 53.

### E.    Settlement Administration

The Parties have agreed to use Simpluris Group, Inc. ("Simpluris") to administer the Settlement, which has provided a capped quote of $18,000 to administer this settlement. Hicks Dec. at ¶ 20. Simpluris will distribute the Notice Package, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, prepare and issue all disbursements to be paid to CMs, the PAGA Members, the Class Representative, Class Counsel, the LWDA, any applicable local, state, and federal tax

---

[8] Assuming no opt outs.
[9] Settlement at ¶ 58.
[10] An Aggrieved Employee cannot "opt out" of a PAGA settlement. *See Arias v. Superior Court*, 46 Cal.4th 969, 985 (2009) ("[T]he judgment in a [PAGA] action is binding not only on the named employee plaintiff but also on . . . any aggrieved employee not a party to the proceeding.").

authorities, and handle inquiries and/or disputes from CMs. Settlement Agreement at ¶¶ 57-61. Simpluris is also responsible for the timely preparation and filing of all tax returns, and payment of any and all necessary taxes and withholdings. *Id.* The Notice Package and relevant documents will be available on a website established by the Settlement Administrator for CMs to download as noted in the Notice.

## V. ARGUMENT

### A. The Court Should Grant Preliminary Approval of the Settlement as to the Class under Rule 23(b)(3).

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Bluetooth*, 654 F.3d at 946.

Review of a proposed class action settlement ordinarily involves two hearings. *See* Manual for Complex Litig. (4th) § 21.632. First, the court conducts a preliminary fairness evaluation. If the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of proposed settlement to the class members. *Id.* (noting that the certification hearing and preliminary fairness evaluation can usually be combined). Second, the court holds a final fairness hearing to approve or reject the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010). The decision to approve a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a),(b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).

Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class]."). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Hicks Dec. at ¶ 21. Accordingly, the Court should preliminarily approve the settlement.

**B.**     <u>**The Court Should Conditionally Certify the Class.**</u>

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class can fairly and adequately protect the interests of the class. Fed R. Civ. P. 23(a). Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets all of these requirements.

### 1. **The Class is Numerous and has Been Ascertained.**

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises of as few as twenty members, or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *Rannis v. Recchia* (N.D. Cal. 2010) 380 Fed. Appx. 646, 650-651. (Class size of 20 satisfies numerosity requirement). The 1,015 members of the Class satisfies the numerosity requirement. Hicks Dec. at ¶ 22.

### 2. **Plaintiff's Claims Raise Common Issues of Fact or Law.**

To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).[11] The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). Rule 23(a)(2) has been construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Plaintiff

---

[11] *See also Lowe v. Popcornopolis LLC*, No. CV196984PSGRAOX, 2020 WL 5991509, at *3 (C.D. Cal. July 8, 2020); *Freeze v. PVH Corp.*, No. CV 19-1694 PSG (EX), 2020 WL 5769085, at *2 (C.D. Cal. July 1, 2020); *de Cabrera v. Swift Beef Co.*, No. EDCV182551PSGEX, 2020 WL 5356704, at *3 (C.D. Cal. June 25, 2020).

"need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution . . . a single common question" satisfies commonality. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013).

Here, there is only one relevant question: whether an employee had to pay BOFA a check cashing fee on a paycheck from Defendant during the Class Period. Hicks Dec. at ¶ 22. Based on the information provided by BOFA, that information has been obtained and the class has been ascertained. The other question is whether a CM's employment with Defendant terminated such that the Labor Code's Waiting Time Penalties provisions were applicable (notably by any layoffs resulting from the COVID-19 pandemic). *Id*. Plaintiff contends that these questions can be resolved at the same juncture, and thus the commonality requirement is satisfied for the Class. *Id*.

### 3. Plaintiff's Claims are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 468 (E.D. Pa. 2000). "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's claims are typical of those of all other CMs, as she did not sign up for direct deposit and received physical paychecks, and when she tried to cash those checks at BOFA, it assessed her check cashing fees for doing so, and she no longer works for Defendant. Hicks Dec. at ¶ 23. Thus, this requirement is also satisfied. *Id*.

### 4. Plaintiff and Class Counsel will Adequately Represent the Class.

To meet the adequacy of representation requirement in Fed R. Civ. P. 23(a)(4), Plaintiffs must show "(1) that the putative named Plaintiffs have the ability and the incentive to represent the claims of the class vigorously; (2) that they have obtained adequate counsel, and (3) that there is no conflict between the individuals' claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are not antagonistic to the claims of CMs, but are in line with them. Hicks Dec. at ¶ 24. Plaintiff has prosecuted this case with the

interests of the CMs in mind (and resolved her individual claims in a separate settlement).[12] *Id.* Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the class. *Id.*

### 5. The Rule 23(b)(3) Requirements for Class Certification are Met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545 (9th Cir. 2013). Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at \*5–6 (E.D. Cal. July 6, 2015); *see also Lowe, supra,* 2020 WL 5991509, at \*4; *Freeze, supra,* 2020 WL 5769085, at \*3; *de Cabrera, supra,* 2020 WL 5356704, at \*4-5.

Here, Plaintiff contends the common questions raised in this action are ideally suited for class treatment: whether the check cashing fees violate Labor Code § 212, whether those fees constitute unpaid wages triggering the waiting time penalties provisions of the Labor Code, and whether employees can be (as defendant alleges) considered "employed" indefinitely absent an affirmative termination. Hicks Dec. at ¶ 25. There are no individualized questions. As a result, resolution of these claims could be resolved through the common forms of proof used to value the case for mediation, including the BOFA check cashing fee data, and Defendant's records of to whom it issued a physical paycheck during the Class Period. *Id.*

Further, Plaintiff contends that the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. Hicks Dec. at ¶ 26. In resolving the

---

[12] Plaintiff's individual claims were negotiated separately from and after the Class/PAGA claims, and the payment for the individual release was not condition on the Court's approval of this settlement, and has already been made. *Id.*

Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).[13] Here, the CMs do not have a strong interest in controlling their individual claims for check cashing fees of $5 or $8 per occurrence, nor is it likely any individual CM would be able to obtain representation for an individual action. Hicks Dec. at ¶ 26. If the CMs proceeded on these claims as individuals, their many individual suits would require duplicative discovery and litigation in potentially dozens of individual lawsuits. *Id.* In contrast, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions. *Id.* Manageability is not a concern in the settlement context, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). Accordingly, class treatment is superior.

## C. The Settlement Should Be Preliminarily Approved as to the Class Because It Is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies,

---

[13] *See also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). CMs could face difficulty finding legal representation and could lose the incentive to bring their claims in isolation. *See In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287011, at *8 (N.D. Cal. June 1, 2005) (finding superiority in part because many class members would individually lack the time, resources, and legal sophistication to enforce their rights).

does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.,* No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011).

### 1. **Procedural Fairness.**

A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

As noted above, in June 2021, the Parties attended mediation with Deborah Crandall Saxe, who specializes in resolving wage and hour class action matters. Hicks Dec. at ¶ 27. During the mediation, the Parties engaged in good-faith, non-collusive negotiations. *Id*. The Parties exchanged information regarding Defendant's realistic exposure to damages, the relative strengths and weaknesses of Plaintiff's claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiff's claims, and the difficulty Plaintiff may have in obtaining and maintaining class certification on each of her claims. *Id*. Moreover, Plaintiff's counsel conducted a thorough investigation into the merits of the claims, and the parties examined the check cashing fee data provided by BOFA. Plaintiff also conducted detailed phone interviews with CMs. *Id.* at ¶¶ 6-8, 27. The Parties' negotiation constituted genuine, informed, arm's length bargaining.

## 2. **Substantive Fairness.**

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[14] "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459; *see also Rigo v. Kason Indus., Inc.*, No. CV 11-0064 MMA (DHBx), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation."). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Hicks Dec. at ¶ 28. The Total Net Settlement Fund to be paid to CMs of $221,500, derived from a Gross Settlement Amount of $500,000.00, will result in fair and just relief to CMs. *Id.* Payments to the Class members are roughly 2% of the total non-PAGA damages and penalties attainable in this case (but well over 7 times the amount of check cashing fees ($30,759.00) that CMs were actually assessed, and the PAGA disbursement amount of $75,000 is roughly 2% of the PAGA damages, which are based on alleged violations suffered by employees who were issued a physical paycheck *even if they were not (but could have been) assessed any fee by BofA for cashing the check*.[15] *Id.* The result is

---

[14] *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

[15] The allocation for PAGA penalties falls within the range of reasonableness previously approved by courts in this Circuit. *See, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1

well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the specific defenses asserted by Defendant, including that its Collective Bargaining Agreement with CMs means that they are permanently employed absent an affirmative termination, since they remain able to accept a job from Freeman at any time (indeed, Defendant argued that Plaintiff could take a job with Defendant at any time even though she had not actually performed any work for them in roughly two years). *Id. See Officers for Justice*, 688 F.2d at 623. Despite the modest settlement amount, the Settlement confers a substantial benefit on CMs who faced the significant risk of no recovery and ongoing litigation expenses if they filed their own lawsuit, if they could retain their own counsel to do so. Given that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (*citing In re Mego*, 213 F.3d at 458), this reality also supports preliminary approval.

### 3. The Distribution of Settlement Proceeds is Tailored to the Class and Their Respective Claims.

In an effort to further ensure fairness for the employees, the Parties have agreed to allocate the settlement proceeds amongst CMs equally, as the alleged waiting time penalties alleged vastly exceed the $30,759 in total check cashing fees assessed against the CMs. Hicks Dec. at ¶ 29. Similarly, the PAGA allocation will be done equally because if it is not, then some of the awards will be less than the postage required to send them, and because the PAGA Members were by and large not actually assessed any check cashing fees (which are dealt with in the Class Settlement). The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. *Id.*

---

(S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.,* No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *see also Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 ($3.9 million settlement allocating $10,000 to PAGA penalties)).

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT&T,* 789 F.Supp.2d at 979–80. Here, the only consideration is whether a CM was actually assessed a check cashing fee during the Class Period.

### 4. The Informal Discovery Exchange Enabled the Parties to Make Informed Settlement Decisions.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). Informal discovery is a strong factor in favor of settlement approval so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in an exchange of informal discovery to enable both sides to assess the claims and potential defenses. Hicks Dec. at ¶¶ 6-8, 27, 30. The Parties accurately assessed the legal and factual issues that would arise if the case proceeded to trial. *Id.* at ¶ 28. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id.* Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of actual check cashing fee data made available by BOFA. *Id.* Ultimately, facilitated by Mediator Saxe, the Parties used this information and discovery to fairly resolve the litigation. *Id.*

**5.**   **Litigating the Action Not Only Would Delay Recovery, But Would**
**Be Expensive, Time Consuming, and Involve Substantial Risk.**

The total monetary value of the proposed Settlement represents a fair compromise given risks and uncertainties posed by continued litigation. Hicks Dec. at ¶ 31. If this case were to go to trial as a class action, Class Counsel estimates that fees and costs would exceed $1,000,000.00. *Id.* Litigating the class and collective claims would require substantial additional discovery, including depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary and expert evidence. *Id.* Recovery of the full exposure previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of Defendant's arguments regarding the Waiting Time Penalties claims, including that the fees are not unpaid wages, and that its CBA requires the conclusion that absent an affirmative termination, CMs remain employed by it. *Id.* Furthermore, were this matter not to settle, Defendant would likely be able to engage in a *Pick-Up Stix* PCM release campaign for minimal consideration given the $5 or $8 check cashing fees actually assessed against the CMs. In contrast, resolving this case by means of a global settlement will yield a prompt, certain, and substantial recovery for the CMs (an average payment of at least $218 for check cashing fees of $5 or $8—the equivalent of over 43 $5 check cashing fees and 27 $8 fees—and totaling under $31,000 for the entire class). *Id.* Such a result will benefit the Parties and the court system. *Id.*

**6.**   **The Class Representative Award is Reasonable.**

Named Plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[16] The enhancement payment of $10,000 for Plaintiff is intended "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

---

[16] "Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named Plaintiff received $50,000 for work in class action); *Castellanos v. Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Here, Plaintiff has requested an incentive payment of $10,000. This would represent approximately 2% of the overall settlement. The average payment a member of the Class will receive is approximately $218.23. Settlement at ¶ 26; Hicks Dec. at ¶ 31.

This proposed award is "not outside the realm of what has been approved as reasonable by other courts" in this Circuit. *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500); *see also Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400). Further, courts typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975. Moreover, in this case Plaintiff estimates that she has spent well over a hundred hours performing work related to this case, and will submit a declaration at the Final Approval stage testifying to her time spent on the case. Hicks Dec. at ¶ 49. Finally, Plaintiff executed a general release of *all* claims against Defendant.

### 7. <u>The Requested Attorneys' Fees and Costs are Reasonable.</u>

In their fee motion to be submitted at final approval, Class Counsel will request up to thirty-three percent (33%) of the Gross Settlement Amount, $166,666.67 plus reimbursement of costs, which are currently estimated to be just over $10,000. Hicks Dec. at ¶ 50. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.33% of the total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) ("nearly all

common fund awards range around 30%")). In California, courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions. *See Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (approving award of attorneys' fees of 33% of the recovery).[17]

In this case, given the results achieved, the effort expended litigating these claims, and the difficulties attendant to litigating the case in the face of changing law, such an upward adjustment is warranted. Hicks Dec. at ¶ 50. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiff and Class Counsel committed themselves to developing and pressing Plaintiff's claims to enforce the employees' rights and maximize the class recovery. *Id.* During the litigation, Counsel turned away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in

---

[17] *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund). *Wren v. RGIS Inventory Specialists,* 2011 WL 1230826, (N.D.Cal.,2011) (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Co.,* No. BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No. 99AS01716, (Sacramento Super. Ct., Dec. 26, 2000) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

hard-fought cases where, like in the case at bar, the result is uncertain. This does not result in any windfall. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

The requested attorneys' fees and expense award is also reasonable when compared to Class Counsel's lodestar. Hicks Dec. at ¶ 51. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"). Here, Class Counsel's current lodestar is well over $175,000,000, more than the fees requested resulting in a negative multiplier. Hicks Dec. at ¶ 51. This amount will increase for preparation of the final approval papers and any remaining hearings, correspondence and communications with CMs, and settlement administration and oversight. *Id.* Class Counsel's costs will remain low and necessary to the prosecution of the case and approval of this Settlement Agreement. *Id.* Class Counsel also requests reimbursement for these expenses. *Id.* Class Counsel respectfully submits that a one-third recovery for fees is appropriate and should be preliminarily approved. *Id.*

### 8. <u>Release of Claims</u>

Finally, the release appropriately tracks the claims at issue in this case. Settlement at ¶ 25. The Settlement provides that all participating CMs shall be deemed to have forever released and dismissed with prejudice all released claims as defined in the Agreement that could have been alleged based on the facts alleged in the Action, and that accrued during the Class Period.

### D. The Proposed Notice Process is Reasonable.

The Court must ensure that CMs receive the best notice practicable under the circumstances of the case.[18] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

The Class Notices (Exs. A1 and A2 to the Settlement, intended for CMs who are/are not also PAGA Members, respectively) and manner of distribution is "the best notice practicable." Settlement at ¶¶ 48-50; Fed. R. Civ. P. 23(c)(2)(B). All CMs have been identified and the Notice Package will be mailed directly to each CM. *Id.* at ¶ 48. In addition, the proposed Notice is clear and straightforward, and provides information on the meaning and nature of the Class definition, the class action, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide CMs. Hicks Dec. at ¶¶ 52-58.

The proposed Notice also fulfills the requirement of neutrality in class notices. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). It summarizes the proceedings necessary to provide context for the Settlement Agreement and the terms and conditions of the settlement, including an explanation of how the settlement amount will be allocated between the named Plaintiff, Class Counsel, the Settlement Administrator, and the CMs, all in compliance with the Manual for Complex Litigation's recommendation that "the notice contain a clear, accurate description of the terms of the settlement." Manual for Complex Litigation, *Settlement Notice*, § 21.312 (4th ed. 2004).

---

[18] There is no requirement for the PAGA Members, but the parties have agreed nevertheless to provide a cover letter accompanying the PAGA Payments to PAGA Members.

The Notice clearly explains the procedures and deadlines for requesting exclusion, objecting to the estimated award, the consequences of taking or foregoing the various options available to CMs, and the date, time and place of the final approval hearing. Pursuant to Rule 23(h), the proposed Notice also sets forth the amount of attorneys' fees sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will apply for them. *See* Ex. 1 to Settlement. In addition, the Notice explains that CMs have the opportunity to object to Class Counsel's motion for attorneys' fees and costs. *Id.* It makes clear that the final settlement approval decision has yet to be made. *Id.* Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, *Certification Notice,* § 21.311; *Settlement Notice,* § 21.312 (4th ed. 2004).

Furthermore, reasonable steps will be taken to ensure that all CMs (and the PAGA Members) receive the Notices. Before mailing, Defendant shall provide to Simpluris the last-known name, Social Security number, and their last-known address. Settlement at ¶¶ 4, 9, 49. The Settlement Administrator shall use one or more commercially reasonable skip tracing methods to update the contact information in the Database. *Id.* at ¶ 49. Simpluris will then mail the Notice to each CM. *Id.* With respect to Notices returned as undeliverable, Simpluris will promptly attempt to obtain a valid mailing address by use of one or more skip trace databases such as the Equifax, National Change of Address ("NCOA") database search, and skip trace. *Id.* at ¶ 49. If another address is identified, Simpluris will send the Notice to the new address. *Id.* Any CM who fails to submit a timely request to exclude themselves from the Settlement will be deemed a Class member whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. *Id.* at ¶ 54.

The proposed Notice clearly and concisely describes the terms of the Settlement and the obligations of CMs who participate, will be disseminated in a way calculated to provide notice to as many CMs as possible, and thus should be preliminarily approved.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement in accordance with the schedule set forth herein, and set a Final Approval Hearing approximately 120 days from the date of Preliminary Approval in order to complete the notice process. *See* Hicks Dec. at ¶ 58.


Respectfully submitted,

Date:  December 27, 2021

HOYER & HICKS

/s/ Ryan L. Hicks
Richard A. Hoyer
Ryan L. Hicks
*Attorneys for Plaintiff*
TERESA LANDUCCI