HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
TERESA LANDUCCI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LANDUCCI, on behalf of herself and others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>FREEMAN EXPOSITIONS, LLC and DOES 1 to 100, inclusive,<br><br>              Defendants. | Case No. 3:19−cv−07573−JCS<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**SUPPLEMENTAL DECLARATION OF RYAN L. HICKS SUPPORTING NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date:       February 4, 2022<br>Time:      9:30 a.m.<br>Courtroom: Courtroom F – 15th Floor<br>Judge:    Chief Magistrate Judge<br>              Joseph C. Spero |

I, Ryan L. Hicks, declare:

1.     I have personal knowledge of the facts set forth in this Declaration and, if called upon as a witness, I could and would testify competently as to these facts.

2.     This Declaration is submitted in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement in response to the issues the Court raised at the February 4, 2022 hearing on the instant motion (*see* ECF No. 73). The parties obtained a transcript of that hearing and have addressed all of the Court's concerns, and have agreed to an Amended Settlement Agreement, attached hereto as Exhibit 1 (with the amended Notice Package attached as Exhibits thereto). A redlined version of the amended settlement agreement and

1   its exhibits is attached hereto as Exhibit 2. This declaration will address each of the Court's

2   concerns in turn in the order they were discussed at the hearing.

3   **DETAILED TIMING OF THE INDIVIDUAL AND THE CLASS/PAGA SETTLEMENTS AND**

4   **THE APPROPRIATENESS OF PLAINTIFF AS CLASS REPRESENTATIVE**

5   3.      At the February hearing, the Court expressed concern about Plaintiff's adequacy as

6   class representative due to her separately resolving her individual non-wage and hour claims.

7   4.      Fed. R. Civ P. 23(a)(4)'s adequacy requirement ensures that absent class members

8   are afforded competent representation before entry of a judgment which binds them. *Hanlon*

9   *v. Chrysler Corp.,* 150 F.3d 1011 at 1020 (9th Cir. 1998). "Resolution of two questions

10  determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts

11  of interest with other class members and (2) will the named plaintiffs and their counsel

12  prosecute the action vigorously on behalf of the class?" *Id.* The "adequacy inquiry serves to

13  uncover conflicts of interest between named parties and the class they seek to represent."

14  Beck, 457 F.3d at 296.

15  5.      However, not every potential conflict between the named representative and the

16  proposed class will prevent class certification. Rather, the conflict must be "fundamental" to

17  violate Rule 23(a)(4). *In re: Literary Works in ElectronicDatabases Copyright Litigation*, 654

18  F.3d 242, 249 (2nd Cir. 2011). This is because a class representative has a "duty to use wise

19  judgment in negotiating and approving a fair and proper settlement". *Norman, D.D.S., P.C.*

20  *v. ARCS Equities Corp*., 72 F.R.D. 502, 506 (S.D.N.Y. 1976).

21  6.      One Court in the Ninth Circuit has noted that the core issue when a proposed class

22  representative is involved in separate pending litigation [analogous to have separate pending

23  individual claims] against the same defendant is whether, "absent class members [are] at risk

24  of being sold out to achieve a greater recovery in the named plaintiffs' separate action".

25  *Levias v. Pacific Maritime Association*, 2010 WL 358499 at *5 (W.D.Wash. Jan. 25, 2010).

26  Plaintiff is aware of no authority that finds that *any* Plaintiff asserting individual claims at the

27  same time as class claims necessarily creates a "fundamental" conflict rendering the named

28  plaintiff an inadequate representative of a proposed class. If that were true, then no Class

and PAGA claims could be resolved in the same settlement, as arguably the Plaintiff could have competing interests in the value of the resolution of the Class and PAGA claims asserted on behalf of the state and a separate (but nearly always overlapping) collective of Aggrieved Employees. Here, Plaintiff and counsel took specific steps to ensure that there was no chance that the class claims could be "sold out" to achieve a greater individual recovery.

7.     Both the individual and Class/PAGA claims were discussed at the mediation with Deborah Saxe. However, Plaintiff was clear in each offer and counteroffer that the Class/PAGA settlement must be reached prior to any offers on the individual claims being considered. We made it clear to the mediator that the order of operations on any offer was that if and only if a resolution was reached as to the Class/PAGA claims would Plaintiff consider any settlement offer on the separate individual claims. Indeed, only after the parties finally reached agreement in principle on the Class/PAGA claims on August 3, 2021 did Plaintiff review a counteroffer regarding and agree to resolve her individual claims. Defense counsel has confirmed that the mediator conveyed our position to them (*i.e.*, that the individual claims could not be settled without first agreeing to a resolution in principle of the Class/PAGA claims).

8.     Plaintiff's individual settlement agreement carved out her claims asserted on a class and collective basis and did not release them, nor was payment of the individual settlement conditioned on the Court granting Final Approval in this case. Indeed, Plaintiff received payment for the individual claims on September 10, 2021.

9.     Thereafter, as the parties continued to prepare the longform Class/PAGA Settlement Agreement, an issue arose during confirmatory discovery in October 2021 that nearly derailed the Class/PAGA settlement; a potential change in the number of proposed class members. Defendant was concerned, based on its cursory review of the check cashing data provided by BofA, that there may have been 2,200 PCMs instead of the approximately 1150 that were used for damages estimates used for the mediation. Plaintiff made clear that they would pull out of the Class/PAGA settlement and return to litigation and certification if the

number of PCMs was essentially double the previous estimate, (although the change in number of PCMs would have no effect on the approximately $32,000 in check cashing fees actually assessed against PCMs). Fortunately, the parties were ultimately able to extract from third party Bank of America ("BofA") the actual check cashing data and scanned checks provided to PCMs and a thorough and detailed review over the next few weeks of those checks determined that there were not 2,200 PCMs, but instead actually only 1,024 PCMs.

10.    That Plaintiff resolved the Class/PAGA claims separately and before her individual claims, which were paid out over six months ago, yet she still continues to prosecute the Class/PAGA claims thereafter shows that she did not "sell out" the class claims in exchange for a higher individual settlement. Plaintiff is an adequate class representative.

## REVISION TO THE LANGUAGE OF THE RELEASE

11.    The Court suggested adding a phrase to the release so that it reads "claims which were or could have been alleged based on the facts alleged in the Complaint regarding the imposition of check cashing fees." The parties made this change at ¶25 of the Amended Agreement, and made corresponding changes to the draft amended notices.

## THE TOTAL SETTLEMENT AMOUNT AS A PERCENTAGE OF THE EXPOSURE

12.    The Court expressed concern that the amount of the settlement was a "miniscule percentage of the exposure," in particular compared to the estimated maximum Waiting Time Penalties exposure.

13.    Defendant's position is that it would face little to no exposure on Plaintiff's waiting time penalties claim, and that an equal allocation of the settlement proceeds among class members is appropriate. Defendant has argued that none of the class members' employment with Freeman terminated such that the Labor Code's waiting time penalties provisions would have applied. Defendant argued during the parties' all-day mediation on June 22, 2021 and in correspondence between and among counsel in advance thereof, that each of the class members' employment with Freeman was governed by a collective bargaining agreement ("CBA") entered into between Local Union No. 510 (the union to which Plaintiff belonged) and Freeman.

14.     Defendant has argued that per section 201.9 of the Labor Code, notwithstanding subdivision (a) of section 201, if employees are employed at a venue that hosts live theatrical or concert events and are enrolled in and routinely dispatched to employment through a hiring hall or other system or regular short-term employment established in accordance with a bona fide CBA (as is the case here), these employees and their employers may establish by express terms in their CBA the time limits for payment of wages to an employee who is discharged or laid off. Freeman contends the class members in this case fall under section 201.9; therefore, the CBA's wage provisions, not section 201(a), govern the payment of wages to those class members who were discharged or laid off.

15.     Freeman further maintains that even if section 201.9 does not apply, the duration of the employment relationship can be derived from what is implicit in numerous provisions of the CBA. For example, the specification of holidays in the CBA (i.e., language that employees must have worked at least 75 days within the preceding 6 months to be eligible for holiday pay) suggests that employment is considered to continue beyond the conclusion of each event, as does the fact that under the CBA, Freeman has the right to discharge an employee only for cause (and must notify the union of any termination for cause in writing). Plus, per the terms of the CBA, employees receive paid vacation based on how many years of cumulative time they've worked. For these reasons, Freeman believes its argument that an employee cannot be simultaneously discharged under statute while continuing to remain continuously and gainfully employed by contractual agreement would prevail, in the event litigation were to continue.

16.     Finally, the Central District's recent decision in *Karen Hartstein v. Hyatt Corporation, et al.*, 2:20-cv-04874-DSF-JPR (C.D. Cal, Feb. 14, 2022) seriously undermines the viability of the waiting time penalties claim. Plaintiff's position is that because all class members were laid off for many months as a result of the COVID-19 pandemic (which Freeman contests), *all* class members were "terminated" and therefore entitled to waiting time penalties pursuant to Labor Code section 203. However, the Central District rejected a similar argument in *Hartstein* just last month. In that case, defendant Hyatt Corp. ("Hyatt") moved for summary

judgment on Plaintiffs' claim for waiting time penalties under section 203, which was based, in part, on Hyatt's alleged failure to timely pay wages based on vacation pay. The class had argued that Hyatt's indefinite layoff of employees at the start of the pandemic constituted a termination for purposes of Section 227.3, which provides, "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy . . . ." The Court disagreed, siding with Hyatt.

17.    "Because there is no binding authority interpreting 'termination' as used in Section 227.3," the Court turned to traditional methods of statutory interpretation in ruling that Hyatt's furlough did not constitute a termination. *Id.* at 7. Namely, the Court looked to Black's Law Dictionary, which defines "termination" as "[t]he complete severance of an employer-employee relationship." *Id.* at 7 (citing Black's Law Dictionary (11th ed. 2019). In so doing, the Court found that "termination" required a complete severance of an employer-employee relationship, which was not present under the facts before it, in large part because Hyatt continued to pay the employer and employee health insurance premiums and plaintiffs continued to accrue vacation time. As discussed *supra*, class members continue to accrue vacation time based on how many years of *cumulative* time they have worked. Here, there is nothing in the CBA that suggests Freeman does not continue to pay health insurance premiums after a particular show or event to which the employee is dispatched concludes; to the contrary, the CBA specifies the amount of the employer's contribution toward health benefits *per hour* worked by class members, depending on their classification.

18.    Although the Court in *Hartstein* defined "termination" for purposes of Section 227.3, as opposed to "discharge" as used in Section 201, Defendant maintains that the Court's reasoning nonetheless applies to Plaintiff's waiting time penalties claim in this case. While "discharge" under Labor Code section 201 includes a release of an employee upon completion of a specified job assignment or time duration for which the employee was hired, not just an involuntary termination (*see Smith v. Sup. Ct. (L'Oreal),* 39 Cal. 4th 77, 90 (2006)),

the class members were not "released" by Freeman, after the completion of an assignment – they remained eligible to be dispatched for work by the union. The fact that Freeman can discharge an employee only for cause (and is responsible for informing the union when doing so) makes it abundantly clear that class members were not released from their employment with Freeman simply by virtue of an assignment ending. *See id.* at 84 ("discharge" means the employer has "formally release[d] the employee and *end[ed]* the employment relationship at the point the job or service term is deemed complete" (emphasis added)); *see also DLSE Opinion 1997-07-15* ("It is, of course possible for a worker to remain an employee of an employer after completion of a particular project if there is no termination either express or implied").

19.    For the foregoing reasons, Plaintiff's agreement to a substantial discount on the waiting time penalties claim was reasonable (particularly in light of the recent order in *Hartstein* following the mediation); as is the equal allocation of the settlement proceeds among Class Members, as well as the equal allocation of the PAGA amount among PAGA Members, and the parties believe said allocations are equitable.

### CHANGES TO THE NOTICE PACKET FOLLOWING COURT APPROVAL

20.    The Court indicated a concern with the Notice Packet in ¶21 of the agreement regarding notice being mailed "substantially in the form of" that approved by the Court. We have added language to ¶¶21-22 of the Amended Agreement to address any concerns that the parties would make substantive changes to the Notice Packet following approval by the Court.

### PAYMENT OF ADMINSTRATORS' FEES IF FINAL APPROVAL IS DENIED

21.    The Amended Agreement indicates at ¶66 that if the Court does not grant Final Approval, Defendant is responsible for paying the Administrator's fees.

### OBJECTIONS TO BE SENT TO THE COURT, NOT THE ADMINSTRATOR

22.    Per the Court's instruction, the Amended Agreement (¶¶28 and 54) and the notices have been edited to reflect that any objections should be sent to the Court and not the Administrator.

## OBJECTORS MAY BE HEARD AT THE HEARING WITHOUT SUBMITTING AN OBJECTION

23.    The Notices have been edited to state that even if a class member does not submit a written objection, they may be heard at the hearing if they choose to appear.

## NOTICE INDICATES THAT THE FINAL APPROVAL HEARING WILL BE HELD VIA ZOOM

24.    The Notices have been edited to clearly state that the final approval hearing will be held via zoom and provides the instructions for appearing provided on the Court's website.

## THE ADMINISTRATOR WILL POST THE SETTLEMENT DOCUMENTS ONLINE

25.    Counsel inquired with proposed Administrator Simpluris, Inc. regarding (inter alia) hosting a website on which the settlement agreement and other relevant documents will be posted. Simpluris has indicated that this is included in the new capped quote of $18,500, a copy of which is attached hereto as Exhibit 3. The parties have also edited the last paragraph of the notices to inform the class members as to how they can view the agreement or otherwise inquire about the settlement.

## THE AGREEMENT CONTAINS A DEADLINE TO FILE THE FINAL APPROVAL MOTION

26.    The Court indicated that the motion for attorneys' fees must be filed 35 days before the objection/opt out deadline, and after receiving the Administrator's report regarding same. In order to facilitate that requirement, the parties agreed to extend the opt out deadline to 60 days (see ¶50), and amended the agreement to include the deadlines discussed above (¶68).

## THE ADMINISTRATOR WILL PAY ITSELF 30 DAYS AFTER FUNDING, NOT EFFECTIVE DATE

27.    Paragraph 57(a) has been updated to reflect that the Administrator will pay itself 30 days after the date of funding, as opposed to 30 days after the Effective Date.

## REQUESTED CHANGES TO THE PROPOSED ORDER

28.    At the Court's suggestion, the parties reviewed the proposed order in *Craig v. Corvoda* (Dkt. 65), and revised the proposed order to track the format and level of detail in that Order.

1

**CY PRES BENEFICIARY**

2   29.   The parties propose The Impact Fund as the cy pres beneficiary of any uncashed

3   checks from this settlement. This is reflected in Paragraph 58 of the Amended Agreement.

4   Plaintiffs have proposed The Impact Fund as the cy pres of numerous wage and hour

5   settlements and they have never been rejected as a cy pres beneficiary.

6   30.   No attorney at my firm has any ties to The Impact Fund, we have never litigated a

7   case together, and no member of Hoyer & Hicks has ever been on The Impact Fund's Board

8   of Directors or had any other connection with the organization other than naming it as a *cy*

9   *pres* beneficiary in this and other class action settlements.

10   **THE ADMINISTRATOR WILL ALSO PERFORM A SKIP TRACE ON RETURNED**

11   **CHECKS**

12   31.   The Court suggested to the parties that the Administrator perform a skip trace on

13   returned checks, and not just returned notices. The skip tracing is now required by the

14   Amended Agreement (¶58) and is included in the updated capped quote (Exhibit 3).

15   **THE ADMINISTRATOR WILL PROVIDE A POST-DISTRIBUTION ACCOUNTING**

16   32.   Paragraph 59 of the Amended Agreement has been edited to require the Administrator

17   to provide a post-distribution accounting per the Northern District's guidelines regarding class

18   action settlements.

19

20   I declare under the penalty of perjury under the laws of the State of California that the

21   foregoing is true and correct.

22   Executed on March 31, 2022, at San Francisco, CA.

23

24   /s/ Ryan L. Hicks
Ryan L. Hicks

25

26

27

28

# EXHIBIT 1

CHERYL D. ORR (SBN 143196)
Cheryl.Orr@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California  94111
Telephone:   415-591-7500
Facsimile:   415-591-7510

Attorneys for Defendant
FREEMAN EXPOSITIONS, LLC

RICHARD A. HOYER (SBN 151931)
rhoyer@hoyerlaw.com
RYAN L. HICKS (SBN 260284)
rhicks@hoyerlaw.com
HOYER & HICKS
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:  415-766-3539
Facsimile:    310-593-2520

Attorneys for Plaintiff TERESA
LANDUCCI, individually and on behalf
of all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LANDUCCI, on behalf of herself and others similarly situated,<br><br>Plaintiff ,<br><br>v.<br><br>FREEMAN EXPOSITIONS, LLC and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.  3:19−cv−07573−JCS<br><br>**CLASS ACTION**<br>**AMENDED JOINT STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Second Amended Complaint Filed: November 2, 2020 |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

CASE NO. 3:19−cv−07573−JCS

1

2    This Joint Stipulation of Class and Representative Action Settlement

3    ("Settlement" or "Settlement Agreement") is made and entered into by and between

4    Plaintiff Teresa Landucci ("Plaintiff"), individually, and on behalf of all others

5    similarly situated and the Labor & Workforce Development Agency ("LWDA"),

6    and Defendant Freeman Expositions, LLC ("Defendant" or "Freeman")

7    (collectively, Plaintiff and Freeman are referred to herein as the "Parties").

## DEFINITIONS

8

9    The following definitions are applicable to this Settlement Agreement;

10    definitions contained elsewhere in this Settlement Agreement will also be effective:

11    1.    "Action" means the action entitled *Landucci v. Freeman Expositions,*

12    *LLC*, Case No. 3:19-cv-07573-JCS, currently pending in the U.S. District Court for

13    the Northern District of California.

14    2.    "Attorneys' Fees and Costs" means attorneys' fees agreed upon by the

15    Parties and approved by the Court for Plaintiff's Counsel's litigation and resolution

16    of the Action, as well as all costs incurred and to be incurred by Plaintiff's Counsel

17    in the Action and approved by the Court, including but not limited to, costs

18    associated with documenting the Settlement, providing any notices required as part

19    of the Settlement or Court order, securing the Court's approval of the Settlement,

20    administering the Settlement, and obtaining entry of the Dismissal terminating the

21    Action.  In connection with the settlement of the Action, Plaintiff's Counsel will

22    request attorneys' fees not in excess of thirty-three (33%) of the Gross Settlement

23    Amount, or One Hundred Sixty-Six Thousand Six Hundred Sixty-Six Dollars and

24    Sixty-Seven Cents ($166,666.67) plus actual reasonable costs incurred.  Freeman

25    has agreed not to oppose Plaintiff's Counsel's request for fees and reimbursement

26    of costs as set forth above.  However, a ruling by the Court to award Plaintiff's

27    Counsel amounts less than the amounts stated above shall not be a basis for

28    Plaintiff or Plaintiff's Counsel to rescind or withdraw from this Settlement, and any

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 2 -

CASE NO. 3:19–CV–07573–JCS

1  such difference will remain in the Gross Settlement Amount and will be available to

2  the Class Members.

3       3.    "Class Counsel" and/or "Plaintiff's Counsel" means Richard A. Hoyer

4  and Ryan L. Hicks of Hoyer & Hicks.

5       4.    "Class List" means a complete list of all Class Members that Freeman

6  will diligently and in good faith compile from its records, based on data produced

7  in this Action by Third-Party Bank of America, and provide to the Settlement

8  Administrator within fifteen (15) business days after Preliminary Approval of this

9  Settlement Agreement by the Court. The Class List will be formatted in Microsoft

10  Office Excel, encrypted, and password protected, and will include:  (i) each Class

11  Member's full name; (ii) last known mailing address and telephone number; and

12  (iii) Social Security number.  At no time during the Settlement process will any

13  Class Member's address, Social Security number, or telephone number be filed

14  with the Court, except under seal as may be ordered.

15       5.    "Class Member(s)" or "Class" means all individuals who were

16  employed by Freeman in California as non-exempt/hourly employees and who

17  received paper paychecks from Freeman and against whom Bank of America

18  assessed a non-customer check cashing fee when cashing at least one such paper

19  paycheck at any time between November 18, 2015 and the date of Preliminary

20  Approval of this Settlement Agreement by the Court.

21       6.    "Class Period" means the period between November 18, 2015 through

22  the date of Preliminary Approval of this Settlement Agreement by the Court,

23  inclusive.

24       7.    "PAGA Member(s)" or "PAGA Class" means all individuals who

25  were employed by Freeman in California as non-exempt/hourly employees and who

26  received paper paychecks from Freeman at any time between November 18, 2018

27  and the date of Preliminary Approval of this Settlement by the Court.

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 3 -

CASE NO. 3:19–CV–07573–JCS

8.    "PAGA Period" means the period between November 18, 2018 and the date of Preliminary Approval of this Settlement by the Court, inclusive.

9.    "PAGA List" means a complete list of all PAGA Members that Freeman will diligently and in good faith compile from its records and provide to the Settlement Administrator within fifteen (15) business days after Preliminary Approval of this Settlement Agreement by the Court. The PAGA List will be formatted in Microsoft Office Excel, encrypted, and password protected, and will include:  (i) each PAGA Member's full name; (ii) last known mailing address and telephone number; and (iii) Social Security number.  At no time during the Settlement process will any PAGA Member's address, Social Security number, or telephone number be filed with the Court, except under seal as may be ordered.

10.    "Complaint" means Plaintiff's Second Amended Complaint, filed on or about November 2, 2020.

11.    "Court" means Judge Joseph C. Spero and/or the U.S. District Court for the Northern District of California or any other court exercising jurisdiction over the Settlement.

12.    "Effective Date" means the date on which the Judgment becomes a Final Judgment.

13.    "Final Approval/Settlement Fairness Hearing" means the hearing at which the Court considers whether to approve the Settlement and to enter Judgment.

14.    "Final Judgment" means the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.   The Parties intend that the final approval order will encompass and constitute an order entering judgment.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 4 -

CASE NO. 3:19−CV−07573−JCS

15.    "Gross Settlement Amount" means Five Hundred Thousand Dollars ($500,000.00), to be paid by Freeman in full satisfaction of all claims arising from the Action which includes Individual Settlement Payments to Participating Class Members and PAGA Members; the Incentive Award to Plaintiff; Attorneys' Fees and Costs to Class Counsel as described above at Paragraph 2; the LWDA Payment; interest; and Settlement Administration Costs to the Settlement Administrator.  This Gross Settlement Amount has been agreed to by Plaintiff and Freeman based on the aggregation of the agreed-upon settlement value of individual claims.  In no event will Freeman be liable for more than the Gross Settlement Amount; however, Freeman shall pay all employer-side payroll taxes with funds outside of the Gross Settlement Amount.  There will be no reversion of the Gross Settlement Amount to Freeman.

16.    "Incentive Award to Plaintiff" means the amount to be paid from the Gross Settlement Amount to Plaintiff in exchange for executing a general release, agreeing not to seek reemployment, and in recognition of her efforts in prosecuting this Action on behalf of the Class and the State of California as a private attorney general, pursuant to the California Labor Code Private Attorneys General Act ("PAGA").  Plaintiff will request, and Freeman will not oppose, an award of up to Ten Thousand Dollars ($10,000.00) as an Incentive Award.  A ruling by the Court to award Plaintiff an amount less than the requested amount stated above shall not be a basis for Plaintiff or Plaintiff's Counsel to rescind or withdraw from this Settlement and any such difference will remain in the Gross Settlement Fund and available to the Class.

17.    "Individual Settlement Payment" means each Participating Class Member and PAGA Member's respective share of the Total Net Settlement Amount.

18.    "Judgment" means the judgment to be rendered by the Court pursuant to this Settlement Agreement.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 5 -

CASE NO. 3:19−cv−07573−JCS

19.    "LWDA Payment" means the Fifty-Six Thousand Two Hundred Fifty Dollar ($56,250.00) payment from the Gross Settlement Amount allocated to the LWDA's seventy-five percent (75%) share of the portion of the Gross Settlement Amount allocated by the Parties to Plaintiff's claim pursuant to the PAGA.

20.    "Notice of Objection" means a Class Member's valid and timely written objection to the Settlement (and/or the terms embodied therein).  A written Notice of Objection must include: (i) the objector's full name, date of birth, address, and telephone number, the last four digits of the objector's Social Security number, and the objector's signature; (ii) the case name and case number; and (iii) a written statement of all grounds for the objection accompanied by any legal support for such objection (if any); and (iv) copies of any papers, briefs, or other documents upon which the objection is based (if any).

21.    "Notice Packet" means the Notice of Class Action Settlement, substantially in the forms attached as **Exhibit A1** (for individuals who are Class Members only) or **Exhibit A2** (for individuals who are both Class Members and PAGA Members), and Mailing Envelope, substantially in the form attached as **Exhibit B** hereto.  The Notice Packet will be prepared per the instruction of and approval by the Court.

22.    "PAGA Settlement Cover Letter" means the settlement cover letter to PAGA Members, substantially in the form attached as **Exhibit C** hereto, subject to the Court's approval.

23.    "Participating Class Members" means all Class Members who do not submit timely and valid Requests for Exclusion.

24.    "Preliminary Approval" means the Court order granting preliminary approval of the Settlement.

25.    "Released Claims" means all claims, rights, demands, liabilities, and causes of action of Class Members which accrued during the Class Period, which were or could have been alleged based on the facts alleged in the Complaint

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 6 -

CASE NO. 3:19−cv−07573−JCS

regarding the imposition of check cashing fees, whether known or unknown, contingent or accrued, including but not limited to: (i) claims for failure to timely pay wages upon termination of employment (Cal. Lab. Code §§ 201-203); (ii) claims for unpaid wages as a result of check cashing fees derived from Lab. Code § 212; (iii) claims for violations of California Business & Professions Code, Section 17200, *et seq*. based on the facts alleged in the Complaint regarding the imposition of check cashing fees; and (iv) claims of the LWDA pursuant to the PAGA (Cal. Lab. Code §§ 2698 *et seq*.) for PAGA penalties against the Released Parties for Labor Code or Wage Order violations suffered by PAGA Members which accrued during the PAGA Period and are based on the facts alleged in the Complaint regarding the imposition of check cashing fees.

26.     "Released Parties" means Freeman and its successors and predecessors in interest, subsidiaries, affiliates, trusts, brother-sister or otherwise related companies, and parents, as well as all of their past or present officers, managing members, directors, owners, members, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, partners, joint venturers, trustees, insurers, reinsurers, and all of their successors and predecessors in interest; and any attorney or law firms representing Freeman and/or the other aforementioned Released Parties with regard to Plaintiff's asserted claims against Freeman.

27.     "Request for Exclusion" means a timely letter submitted by a Class Member to the Settlement Administrator pursuant to the terms set forth herein indicating a request to be excluded from the Settlement. To be valid, a Request for Exclusion must: (i) set forth the full name, address, telephone number, and last four digits of the Social Security number of the Class Member requesting exclusion; (ii) be signed by the Class Member; (iii) contain the case name and case number; (iv) be returned to the Settlement Administrator; (v) contain a clear statement that you are either electing to be excluded from this Settlement or wish to

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 7 -

CASE NO. 3:19–cv–07573–JCS

opt-out from this Settlement; and (vi) be postmarked on or before the Response Deadline.

28.    "Response Deadline" means the deadline by which Class Members must postmark to the Settlement Administrator Requests for Exclusion, as set forth in Paragraph 51 below, or postmark to the Court Notices of Objection to the Settlement, as set forth in Paragraph 54 below.

29.    "Settlement Administration Costs" means all costs incurred by the Settlement Administrator in administering the Settlement, including, but not limited to, all costs, expenses and fees associated with preparing, issuing and mailing any and all notices, computing, processing, reviewing and mailing Individual Settlement Payments, generating Individual Settlement Payment checks and related tax reporting forms, preparing any tax returns and other filings required by any governmental authority or agency, preparing any other checks, notices, reports or filings, administering the process set forth in this Agreement regarding unclaimed checks, administering disbursements from the Net Settlement Amount, generating checks to Class Counsel for attorneys' fees and costs, to Plaintiff for her Incentive Awards, and to the LWDA for the LWDA Payment.  The Settlement Administration Costs shall be paid from the Gross Settlement Amount.  The Settlement Administrator shall agree to a not-to-exceed cost of Twenty-Five Thousand Dollars ($25,000.00).

30.    "Settlement Administrator" means Simpluris, the third-party class action settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering this Settlement.  The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

31.    "Total Net Settlement Amount" means the portion of the Gross Settlement Amount remaining after deducting the Attorneys' Fees and Costs, the

Drinker Biddle & Reath LLP
Attorneys at Law
San Francisco

Amended Joint Stipulation of Class and
Representative Action Settlement
ACTIVE.134253109.01

- 8 -

Case No. 3:19−cv−07573−JCS

LWDA Payment, Settlement Administration Costs, and the Incentive Award to
Plaintiff. The Total Net Settlement Amount will be distributed to Participating
Class Members and PAGA Members by the Settlement Administrator; there will be
no reversion of the Net Settlement Amount to Freeman.

## **LITIGATION BACKGROUND**

32.    On November 2, 2020, Plaintiff filed her Complaint against Freeman,
pleading claims for unlawfully withheld wages in violation of California Labor
Code Section 212, in the form of check cashing fees; waiting time penalties
pursuant to California Labor Code Sections 201-203 stemming from the unlawfully
withheld wages in the form of check cashing fees; unfair business practices
(California Bus. and Profs. Code Section 17200, *et seq.*); and violation of the
PAGA. Plaintiff sought relief for herself and all current and/or former non-exempt
drivers that worked for Freeman in California within four years prior to the filing of
her original complaint in this action, dated November 18, 2019. Plaintiff's original
complaint, subsequent First Amended Complaint, and Complaint also alleged
individual claims under the Fair Employment and Housing Act and California
Labor Code, as well as a claim for constructive discharge in violation of public
policy. The Parties have entered into a separate settlement agreement to resolve
Plaintiff's individual claims.

33.    Freeman timely answered Plaintiff's Complaint. At all times, Freeman
disputed that it had violated California wage and hour law and, further, maintained
that Plaintiff's claims were not appropriate for class or representative adjudication
for numerous reasons.

34.    Since the filing of the Action and through execution of this Settlement
Agreement, Class Counsel has conducted a thorough investigation into the facts
underlying the claims asserted in the Complaint. Class Counsel has also engaged in
extensive informal and formal discovery, including, obtaining Freeman's relevant
written wage and hour policies and procedures in effect during the Class Period and

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 9 -

CASE NO. 3:19–CV–07573–JCS

obtaining data from Bank of America, Freeman's bank, concerning transactions where paper paychecks from Freeman's account were cashed in California and check cashing fees were assessed. Class Counsel produced documents requested by Freeman; defended Freeman's deposition of Plaintiff; and met and conferred extensively with counsel for Freeman and Bank of America over the scope of the Parties' informal information exchange, both via e-mail and over the phone.

35.  Prior to mediation, Freeman, based on the data provided by Bank of America in Paragraph 34, provided Plaintiff with detailed information regarding the size of the Class, and the number of paper paychecks issued to PAGA Members, in addition to other relevant information.

36.  On June 22, 2021, the Parties participated in a day-long private mediation with the assistance of mediator Deborah Saxe, Esq., in Los Angeles, California, as a result of which the Parties reached an agreement regarding a resolution of the Action, which is memorialized herein.

## **TERMS OF AGREEMENT**

Plaintiff, on behalf of herself and the Class, and Freeman agree as follows:

37.  <u>Conditional Stipulation to Class Certification</u>.  Solely for purposes of implementing this Settlement Agreement and effectuating settlement, the Parties hereby conditionally stipulate to class certification.  Should this Settlement not be approved by the Court, or the Parties proceed to litigation for any reason, Freeman reserves the right to object to and oppose certification of any class and this Settlement Agreement may not be used as evidence in support of class certification.

38.  <u>Funding of the Gross Settlement Amount</u>.  Within thirty (30) days of the Effective Date, or by January 1, 2022, whichever is later, Freeman will make a one-time deposit of the Gross Settlement Amount into a qualified settlement account to be established by the Settlement Administrator.  After the Effective Date, the Gross Settlement Amount will be used to satisfy all of Freeman's liabilities arising from this Settlement, including interest; Individual Settlement

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 10 -

CASE NO. 3:19−cv−07573−JCS

Payments; the Incentive Awards to Plaintiff; the LWDA Payment; Attorneys' Fees and Costs; and Settlement Administration Costs.

39.    <u>Attorneys' Fees and Costs</u>.  Freeman agrees not to oppose or impede any application or motion for Attorneys' Fees and Costs in the amounts set forth in Paragraph 2 above, which will be paid from the Gross Settlement Amount, subject to approval by the Court.  The Parties agree that the Court's approval of an award of fees in an amount less than $166,666.67 shall not permit or be grounds for Plaintiff or Plaintiff's Counsel to cancel, void, back out, or otherwise revoke their acceptance of this Settlement and the Parties shall proceed with the Settlement notwithstanding.

40.    <u>Incentive Awards to Plaintiff</u>.  Subject to Court Approval, an Incentive Award will be paid to Plaintiff of not more than Ten Thousand Dollars ($10,000.00).  The Incentive Award to Plaintiff will be paid from the Gross Settlement Amount.

41.    <u>Settlement Administration Costs</u>.  The Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Class Settlement Amount, which the Settlement Administrator agrees will be capped at Twenty-Five Thousand Dollars ($25,000.00).

42.    <u>Payment and Notice to LWDA</u>.  In consideration of claims made in the Action pursuant to the PAGA, Class Counsel will request that the Court approve an allocation of Seventy-Five Thousand Dollars ($75,000.00) of the Gross Settlement Amount to these claims.  Seventy-five percent (75%) of this amount – Fifty-Six Thousand Two Hundred Fifty Dollar ($56,250.00) – will be paid by the Settlement Administrator to the LWDA (*i.e.*, the LWDA Payment) from the Gross Settlement Amount and the remaining twenty-five percent (25%) – Eighteen Thousand Seven Hundred Fifty Dollars ($18,750.00) – will be distributed from the Total Net Settlement Amount to PAGA Members.  The Court's adjustment, if any, of the

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 11 -                CASE NO. 3:19−cv−07573−JCS

1   amount allocated to Plaintiff's PAGA claim, will not invalidate this Settlement

2   Agreement.  In accordance with section 2699(l)(2) of the California Labor Code, a

3   copy of this Settlement Agreement shall be provided to the LWDA on the same day

4   that Plaintiff files her motion for preliminary approval of this Settlement with the

5   Court.

6       43.    Total Net Settlement Amount.  The entire Total Net Settlement

7   Amount will be distributed to Participating Class Members and PAGA Members

8   pursuant to paragraph 44 of this Settlement Agreement.  No portion of the Total

9   Net Settlement Amount will revert to or be retained by Freeman.

10      44.    Individual Settlement Payment Calculations.  Individual Settlement

11  Payments will be calculated and apportioned from the Total Net Settlement Amount

12  as follows:

13          a.    Individual Settlement Payments to Participating Class Members.

14  The Total Net Settlement Amount, less $18,750.00 of the amount allocated to

15  Plaintiff's PAGA claim, will be distributed to Participating Class Members equally;

16  this amount will be disbursed to all Class Members who do not submit timely and

17  valid Requests for Exclusion.

18          b.    Individual Settlement Payments to PAGA Members.  The

19  portion of the Total Net Settlement amount that will be distributed to PAGA

20  Members ($18,750.00) will be distributed to PAGA Members equally.

21      45.    No Credit Toward Benefit Plans.  The Individual Settlement Payments

22  made to PAGA Members and Participating Class Members under this Settlement,

23  as well as any other payments made pursuant to this Settlement, will not be utilized

24  to calculate any additional benefits under any benefit plans to which any Class

25  Members or PAGA Members may be eligible, including, but not limited to:  profit-

26  sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick

27  leave plans, PTO plans, and any other benefit plan.  Rather, it is the Parties'

28  intention that this Settlement Agreement will not affect any rights, contributions, or

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 12 -

CASE NO. 3:19−cv−07573−JCS

1    amounts to which any Class Members or PAGA Members may be entitled under

2    any benefit plans.

3         46.    Administration Process.  The Parties agree to cooperate in the

4    administration of the Settlement and to make all reasonable efforts to control and

5    minimize the costs and expenses incurred in administration of the Settlement.

6         47.    Delivery of the Class and PAGA Lists.  Within fifteen (15) business

7    days after Preliminary Approval of this Settlement, Freeman will provide the Class

8    and PAGA Lists to the Settlement Administrator.

9         48.    Notice by First-Class U.S. Mail.  Within fourteen (14) calendar days

10   after receiving the Class List from Freeman, the Settlement Administrator will mail

11   a Notice Packet to all Class Members via regular First-Class U.S. Mail, using the

12   most current, known mailing addresses identified in the Class List.

13        49.    Confirmation of Contact Information in the Class List.  Prior to

14   mailing the Notice Packets, the Settlement Administrator will perform a search

15   based on the National Change of Address Database in order to update and correct

16   any addresses that may have changed.  Any Notice Packets returned to the

17   Settlement Administrator as non-deliverable with a forwarding address on or before

18   the Response Deadline will be sent promptly via regular First-Class U.S. Mail to

19   the forwarding address affixed thereto and the Settlement Administrator will

20   indicate the date of such re-mailing on the Notice Packet.  If no forwarding address

21   is provided, the Settlement Administrator will promptly attempt to determine the

22   correct address using a skip-trace, or other search using the name, address, and/or

23   Social Security number of the Class Member involved, and will then perform a

24   single re-mailing.  In the event the procedures in this Paragraph are followed and

25   the intended recipient of a Notice Packet still does not receive the Notice Packet,

26   the Class Member shall be bound by all terms of the Settlement and any Judgment

27   entered by the Court if the Settlement is approved by the Court.  The Settlement

28   Administrator shall at all times protect the privacy rights of Class Members.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 13 -

CASE NO. 3:19–cv–07573–JCS

50.  <u>Notice Packets</u>.  All Class Members will be mailed a Notice Packet. Each Notice Packet will provide:  (i) information regarding the nature of the Action; (ii) a summary of the Settlement's principal terms; (iii) the Class Member definitions; (iv) the PAGA Member definitions; (v) the Class Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments; (vi) the PAGA Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments (if applicable); (vi) the dates which comprise the Class Period; (vii) the dates which comprise the PAGA Period; (viii) instructions on how to submit Requests for Exclusion and/or Notices of Objection; (ix) the Response Deadline; and (x) the claims to be released pursuant to the Settlement of the Action.  The Response Deadline shall be the later of the following:  (a) sixty (60) calendar days from the date the Settlement Administrator initially mails the Notice Packet to the Class Member; or (b) fifteen (15) calendar days after the Settlement Administrator re-mails the Notice Packet to the Class Member; if the 60- or 15-day deadline falls on a Sunday or federal holiday, the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.

51.  <u>Request for Exclusion Procedures</u>.  Any Class Member wishing to opt-out from the Settlement Agreement must sign and postmark a written Request for Exclusion to the Settlement Administrator by the Response Deadline.  In the case of Requests for Exclusion that are mailed to the Settlement Administrator, the postmark date will be the exclusive means to determine whether a Request for Exclusion has been timely submitted.  At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to opt-out from the Settlement.

52.  <u>Defective Submissions</u>.  If a Class Member's Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s).  The Settlement Administrator will mail the Class

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 14 -

CASE NO. 3:19–CV–07573–JCS

1    Member a cure letter within three (3) business days of receiving the defective

2    submission to advise the Class Member that his or her submission is defective and

3    that the defect must be cured to render the Request for Exclusion valid.  The Class

4    Member will have until the later of (i) the Response Deadline or (ii) fifteen (15)

5    calendar days from the date of the cure letter to postmark a revised Request for

6    Exclusion.  If the revised Request for Exclusion is not postmarked within that

7    period, it will be deemed untimely.

8        53.    <u>Settlement Terms Bind The LWDA With Respect To The PAGA</u>

9    <u>claims, and All Class Members Who Do Not Opt-Out</u>.  The LWDA will be bound

10    by the terms of the Settlement pertaining to the claim for PAGA penalties for

11    violations alleged to have been suffered by the PAGA Members, including those

12    pertaining to the Released Claims, as well as any Final Judgment that may be

13    entered by the Court if it grants final approval of the Settlement.  In addition, any

14    Class Member who does not affirmatively opt-out of the Settlement by submitting a

15    timely and valid Request for Exclusion, will be bound by all of its terms, including

16    those pertaining to the Released Claims, as well as any Final Judgment that may be

17    entered by the Court if it grants final approval of the Settlement.

18        54.    <u>Objection Procedures</u>.  To object to the Settlement, or any term of it,

19    the person making the objection must not submit a Request for Exclusion (*i.e.*, must

20    not opt-out), and must send the Court a Notice of Objection by the Response

21    Deadline by U.S. Mail.  The Notice of Objection must be signed by the Class

22    Member and contain all information required by this Settlement Agreement.  The

23    date of transmission of the postmark date of the mailing will be deemed the

24    exclusive means for determining whether a written Notice of Objection is timely.

25    The date of the initial mailing of the Notice Packet, and the date the signed Notice

26    of Objection was postmarked, shall be conclusively determined according to the

27    records of the Court.    In addition or as an alternative to a written Notice of

28    Objection, Class Members may appear at the Final Approval/Settlement Fairness

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 15 -

CASE NO. 3:19–CV–07573–JCS

Hearing to raise any objections; the Court retains final authority with respect to the consideration and admissibility of any Class Member Notice of Objection and any in-person objections by Class Members at the Final Approval/Settlement Fairness Hearing. Class Members who fail to object in writing in accordance with the above requirements or in person at the Final Approval/Settlement Fairness Hearing by the date the Court issues an order granting final approval of the Settlement will be deemed to have waived all objections to the Settlement and will be foreclosed from making any objections, whether by appeal or otherwise, to the Settlement. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Judgment. To the extent a timely Notice of Objection is withdrawn before final approval, such an objection shall be treated as though no objection has been made.

55. <u>Certification Reports Regarding Individual Settlement Payment Calculations</u>. The Settlement Administrator will provide counsel for Freeman and Class Counsel a weekly report that: (i) certifies the number of Class Members who have submitted valid Requests for Exclusion and the number of Notices of Objection to the Settlement it has received to date; and (ii) states whether any Class Member has submitted a challenge to any information contained in their Notice Packet. Additionally, the Settlement Administrator will provide to Class Counsel and Freeman's counsel any updated reports regarding the administration of the Settlement Agreement as needed or requested.

56. <u>Access to Information</u>. The Settlement Administrator will maintain all Requests for Exclusion received from Class Members. The Claims Administrator will provide copies to the Parties of all documents, including, but not limited to the Requests for Exclusion returned by any Class Member upon reasonable request, or as otherwise set forth herein. To protect the privacy of the Class Members, the Claims Administrator shall redact the private personal information of the Class Members prior to providing such copies. Private personal information includes:

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 16 -

CASE NO. 3:19−cv−07573−JCS

birthdates, addresses, social security numbers, email addresses, and phone numbers.

57.    <u>Distribution Timing of Individual Settlement Payments</u>.  Within fourteen (14) calendar days after Freeman deposits the funds comprising the Gross Settlement Amount into the account, per Paragraph 38 above, the Settlement Administrator will issue payments to: (i) Participating Class Members (including the Incentive Award to Plaintiff ); (ii) PAGA Members; (iii) the LWDA; and (iv) Plaintiff's Counsel.  The Settlement Administrator will mail the PAGA Settlement Cover Letter in the form attached hereto as "Exhibit C" to each PAGA Member, together with a check for that PAGA Member's Individual Settlement Payment, using the mailing address information provided in the PAGA List and will follow the procedure outlined in paragraph 49 for confirming that contact information before doing so.

a.    Within thirty (30) calendar days of Freeman depositing the funds comprising the Gross Settlement Amount per paragraph 38, above, The Settlement Administrator will also issue a payment to itself for Court-approved services performed in connection with the Settlement.  Also by that date, the Settlement Administrator shall provide to Freeman, for filing with the Court, a declaration verifying, under oath, that it has mailed payments to each Participating Class Member.

58.    <u>Un-cashed Settlement Checks</u>.  The Settlement Administrator will perform a skip trace on any Individual Settlement Payment checks returned as undeliverable. Funds represented by Individual Settlement Payment checks returned as undeliverable and Individual Settlement Payment checks remaining un-cashed for more than ninety (90) calendar days after issuance of a check to any updated address due to a skip trace shall be distributed within fifteen (15) business days of the expiration of the 90-day check-cashing period by the Settlement Administrator to the *cy pres* beneficiary approved by the Court.  The Parties propose The Impact

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 17 -

CASE NO. 3:19−CV−07573−JCS

Fund as *cy pres* beneficiary..

59.    <u>Certification of Completion</u>.  No later than twenty-five (25) calendar days prior to the Final Approval/Settlement Fairness Hearing, the Settlement Administrator will provide a written declaration under oath to: (i) certify completion of administration of the Notice Packets to the Court and counsel for all Parties; and (ii) provide all Settlement-related data, including the number of Class Members who submitted valid Requests for Exclusion and/or Notices of Objection to the Settlement.  Within twenty-one (21) days after the distribution of the settlement funds and payment of attorneys' fees, the Parties will file a Post-Distribution Accounting, which provides the following information:

    a.   The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

Within 21 days after the distribution of the settlement funds and award of attorneys' fees, the Settlement Administrator will post the Post-Distribution Accounting on the settlement website on which the other documents related to this Settlement are made available.

60.    <u>Tax Treatment of Individual Settlement Payments</u>.  All Individual Settlement Payments will be allocated as follows:

    a.   <u>For Individual Settlement Payments to Participating Class</u>

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 18 -

CASE NO. 3:19−cv−07573−JCS

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>Members:</u> (i) ten (10) percent as payment for alleged unpaid wages, for which IRS Forms W-2 will be issued and (ii) ninety (90) percent as payment for alleged civil and statutory penalties, liquidated damages, and interest, for which IRS Forms 1099-MISC will be issued.

b. <u>For Individual Settlement Payments to PAGA Members:</u>  one hundred (100) percent as payment for alleged civil and statutory penalties, liquidated damages, and interest, for which IRS Forms 1099-MISC will be issued.

61.    <u>Administration of Taxes by the Settlement Administrator</u>.  The Settlement Administrator will be responsible for issuing to Plaintiff, Participating Class Members, PAGA Members, and Plaintiff's Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement.

62.    <u>Tax Liability</u>.  Freeman makes no representation as to the tax treatment or legal effect of the payments called for hereunder, and Plaintiff, Participating Class Members, PAGA Members, and Class Counsel are not relying on any statement, representation, or calculation by Freeman or by the Settlement Administrator in this regard.  Plaintiff, Participating Class Members, PAGA Members, and Class Counsel understand and agree that they will be solely responsible for the payment of any taxes and penalties assessed on the payments described herein.

63.    <u>Circular 230 Disclaimer</u>.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 19 -

CASE NO. 3:19−CV−07573−JCS

1   THE PARTIES OR THEIR ATTORNEYS OR OTHER ADVISERS, IS OR WAS

2   INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR

3   DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON

4   AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES

5   TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS

6   AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED

7   EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL

8   AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN

9   CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO

10   THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY

11   OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER

12   PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY

13   COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER

14   TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE

15   IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY

16   OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION

17   THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S

18   OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH

19   LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE

20   ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX

21   STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION

22   CONTEMPLATED BY THIS AGREEMENT.

23        64.   <u>California Labor Code Section 206.5</u>.  In consideration of Freeman's

24   payment of the sums provided herein, each and every Participating Class Member

25   will be deemed to have also acknowledged and agreed that California Labor Code

26   section 206.5 is not applicable to any Participating Class Member because there is a

27   good faith dispute as to whether any wages are due at all to any such Participating

28   Class Member.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 20 -

CASE NO. 3:19−cv−07573−JCS

65.  <u>No Prior Assignments</u>.  The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

66.  <u>Nullification of Settlement Agreement</u>.  In the event that (a) the Court does not finally approve the Settlement as provided herein or (b) the Settlement does not become final for any other reason, then this Settlement Agreement, and any documents generated to bring it into effect, will be null and void.  Any order or Judgment entered by the Court in furtherance of this Settlement Agreement will likewise be treated as void from the beginning. In the event Final Approval is not granted, Defendant will be responsible for paying any fees incurred by the Settlement Administrator.

67.  <u>Preliminary Approval</u>.  Within thirty (30) days after execution of this Settlement Agreement by all Parties, Class Counsel shall file (and set for hearing at the earliest available date) a motion for an order: (a) preliminarily approving this Settlement; (b) concluding that the Settlement Class meets the prerequisites for class certification for settlement purposes only; (c) approving the Notice Packet to be provided to the Settlement Class; (d) establishing a procedure for the Settlement Class to request exclusion or object; (e) setting a date for a Final Approval/Settlement Fairness Hearing; and (f) enjoining Class Members from filing, initiating, or continuing to prosecute any actions, claims, complaints, or proceedings in Court, with the LWDA or with any other entity or in any other forum regarding the Released Claims.  In conjunction with the Preliminary Approval hearing, Plaintiff will submit this Settlement Agreement, which sets forth the terms of this Settlement, and will include the proposed Notice Packet, which will include both the proposed Notice of Class Action Settlement document and the proposed Mailing Envelope, attached as Exhibits A1 or A2 (whichever is

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 21 -

CASE NO. 3:19−CV−07573−JCS

1  appropriate) and Exhibit B, respectively, as well as the proposed PAGA Settlement

2  Cover Letter, attached as Exhibit C.  Prior to moving for Preliminary Approval,

3  Class Counsel shall share the draft motion with Freeman's counsel and provide

4  Freeman ten (10) days to review and propose revisions.

5       68.  <u>Final Settlement Approval Hearing and Entry of Judgment</u>.  Upon

6  expiration of the deadlines to postmark Requests for Exclusion and/or Notices of

7  Objection to the Settlement, and with the Court's permission, a Final

8  Approval/Settlement Fairness Hearing will be conducted to determine the final

9  approval of the Settlement along with the amounts properly payable for:  (i)

10  Individual Settlement Payments; (ii) the Incentive Award to Plaintiff; (iii)

11  Attorneys' Fees and Costs; (iv) the LWDA Payment; and (v) all Settlement

12  Administration Costs.  The Final Approval/Settlement Fairness Hearing will not be

13  held any earlier than thirty (30) calendar days after the Response Deadline.  Class

14  Counsel will be responsible for drafting all documents necessary to obtain final

15  approval.  Class Counsel will also be responsible for drafting the attorneys' fees

16  and costs application to be heard at the Final Approval/Settlement Fairness

17  Hearing. The Motion for Final Approval must be filed after the parties have

18  received the Settlement Administrator's report and the Response Deadline has

19  passed, but no later than fourteen (14) calendar days prior to the Final

20  Approval/Settlement Fairness Hearing.  Per the Court's instruction, any motion for

21  Attorneys' Fees and Costs must be filed at least thirty-five (35) days before the

22  Response Deadline.

23       69.  <u>Final Judgment and Continued Jurisdiction</u>.  At the Final

24  Approval/Settlement Fairness Hearing, Class Counsel shall petition the Court to

25  enter an order in the Action, which shall include a dismissal of the Action by

26  Plaintiff and Participating Class Members, with prejudice, and declare that Plaintiff,

27  all Participating Class Members and the LWDA (with respect to the claims for

28  PAGA penalties asserted in the Complaint for violations suffered by the PAGA

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 22 -

CASE NO. 3:19−CV−07573−JCS

1    Members) are bound by the release of claims described in the Notice Packet and

2    herein.  Prior to petitioning the Court, Class Counsel shall share the draft order with

3    Freeman' counsel and provide Freeman ten (10) business days to review and

4    propose revisions.  After entry of Judgment, the Court will have continuing

5    jurisdiction solely for purposes of addressing:  (i) the interpretation and

6    enforcement of the terms of the Settlement, (ii) Settlement administration matters,

7    and (iii) such post-Judgment matters as may be appropriate under court rules, the

8    Code of Civil Procedure, and/or as set forth in this Settlement Agreement.

9        70.    Releases by Plaintiff and by Participating Class Members.  Upon the

10   Effective Date: (i)  Plaintiff, all Participating Class Members, and the LWDA (with

11   respect to the claims for PAGA penalties for Labor Code and Wage Order

12   violations suffered by the PAGA Members as alleged in the Complaint) will be

13   deemed to have expressly waived and relinquished, to the fullest extent permitted

14   by law, any and all of the Released Claims against any and all of the Released

15   Parties; and (ii) Plaintiff will be deemed to have expressly waived and relinquished,

16   to the fullest extent permitted by law, the provisions, rights, and benefits of Section

17   1542 of the California Civil Code, which provides:

18            A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

19            THAT THE CREDITOR OR RELEASING PARTY DOES

20            NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

21            FAVOR AT THE TIME OF EXECUTING THE RELEASE

22            AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

23            MATERIALLY AFFECTED HIS OR HER SETTLEMENT

24            WITH THE DEBTOR OR RELEASED PARTY.

25       Plaintiff agrees not to sue or otherwise make a claim against any of the

26   Released Parties for the Released Claims after the Effective Date.  In addition, as to

27   Plaintiff only, the Released Claims shall also include any and all claims, known and

28   unknown, under any local, state, or federal law, in tort, common law, or contract,

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 23 -

CASE NO. 3:19–CV–07573–JCS

1   whether pleaded in the Complaints or not, except any pending Workers'

2   Compensation claims and any other claims that cannot be released as a matter of

3   law ("Plaintiff's General Release").

4        71.   Exhibits Incorporated by Reference.   The terms of this Settlement

5   Agreement include the terms set forth in any attached Exhibits, which are

6   incorporated by this reference as though fully set forth herein.   Any Exhibits to this

7   Settlement Agreement are an integral part of the Settlement.

8        72.   Headings.   The descriptive headings of any paragraphs or sections of

9   the Settlement Agreement are inserted for convenience of reference only and do not

10   constitute a part of this Agreement.

11        73.   Entire Agreement.   This Settlement Agreement and any attached

12   Exhibits constitute the entirety of the Parties' settlement terms.   No other prior or

13   contemporaneous written or oral agreements may be deemed binding on the Parties.

14   The Parties expressly recognize California Civil Code Section 1625 and California

15   Code of Civil Procedure Section 1856(a), which provide that a written agreement is

16   to be construed according to its terms and may not be varied or contradicted by

17   extrinsic evidence, and the Parties agree that no such extrinsic oral or written

18   representations or terms will modify, vary, or contradict the terms of this Settlement

19   Agreement.

20        74.   Amendment or Modification.   No amendment, change, or modification

21   to this Settlement Agreement will be valid unless in writing and signed, either by

22   the Parties or their counsel.

23        75.   Authorization to Enter Into Settlement Agreement.   Counsel for all

24   Parties warrant and represent they are expressly authorized by the Parties whom

25   they represent to negotiate this Settlement Agreement and to take all appropriate

26   actions required or permitted to be taken by such Parties pursuant to this Settlement

27   Agreement to effectuate its terms and to execute any other documents required to

28   effectuate the terms of this Settlement.   The Parties and their counsel will cooperate

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 24 -

CASE NO. 3:19–CV–07573–JCS

1  with each other and use their best efforts to effect the implementation of the

2  Settlement and to promote and encourage 100% participation among the Class

3  Members.  If the Parties are unable to reach agreement on the form or content of

4  any document needed to implement the Settlement, or on any supplemental

5  provisions that may become necessary to effectuate the terms of this Settlement, the

6  Parties may seek the assistance of the Court to resolve such disagreement.

7      76.   Binding on Successors and Assigns.  This Settlement Agreement will

8  be binding upon, and inure to the benefit of, the successors or assigns of the Parties

9  hereto, as previously defined.

10      77.   California Law Governs.  All terms of this Settlement Agreement will

11  be governed by and interpreted according to the laws of the State of California,

12  without regard to choice of law principles, and/or, with respect to procedural

13  matters, federal law.

14      78.   Execution in Counterparts.  This Settlement Agreement is subject only

15  to the execution of all Parties.  However, the Settlement Agreement may be

16  executed in one or more counterparts, including via electronic signature via

17  DocuSign, Adobe Sign, and/or other similar e-signature services.  All executed

18  counterparts and each of them, including facsimile and scanned portable document

19  format ("PDF") copies of the signature page, will be deemed to be one and the

20  same instrument.  A facsimile or PDF copy shall be considered an original for all

21  purposes.

22      79.   Acknowledgement that the Settlement is Fair and Reasonable.  The

23  Parties and their respective counsel believe this Settlement is a fair, adequate, and

24  reasonable settlement of the Action and have arrived at this Settlement after arm's-

25  length negotiations and in the context of adversarial litigation, taking into account

26  all relevant factors, present and potential.

27      80.   Invalidity of Any Provision.  Before declaring any provision of this

28  Settlement Agreement invalid, the Court will first attempt to construe the provision

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 25 -

CASE NO. 3:19–CV–07573–JCS

1    as valid to the fullest extent possible consistent with applicable precedents so as to

2    define all provisions of this Settlement Agreement valid and enforceable.

3        81.    Waiver of Certain Appeals.  The Parties agree to waive appeals;

4    except, however, that Plaintiff or Class Counsel may appeal any reduction to the

5    Attorneys' Fees and Costs below the amount they request from the Court, and

6    either party may appeal any court order that materially alters the Settlement

7    Agreement's terms.

8        82.    Interim Stay of Proceedings.  The Parties agree that all proceedings in

9    the Action shall be stayed, except such proceedings necessary to implement and

10   complete the Settlement, pending completion of the hearings referenced herein.

11       83.    Notice To Counsel.  All notices, requests, demands, and other

12   communications required or permitted to be given pursuant to this Settlement

13   Agreement shall be in writing and shall be delivered (i) personally or (ii) mailed,

14   postage prepaid, by first-class U.S. Mail with a concurrent copy by email, to the

15   undersigned persons at their respective addresses as set forth herein:

16   Class Counsel                          Counsel for Freeman

17                                          Cheryl D. Orr, Esq.
     Richard A. Hoyer, Esq.
18   Ryan L. Hicks, Esq.                    Faegre Drinker Biddle & Reath LLP
     Hoyer & Hicks                         Four Embarcadero Center
19   Four Embarcadero Center               27th Floor
     Suite 1400                            San Francisco, CA  94111
20   San Francisco, CA  94111              Telephone: (415) 591-7500
     rhoyer@hoyerlaw.com
21   rhicks@hoyerlaw.com                   Facsimile: (415) 591-7510

22                                          Cheryl.Orr@dbr.com

23       84.    Non-Admission of Liability.  The Parties enter into this Settlement to

24   resolve the dispute that has arisen between them and to avoid the burden, expense,

25   and risk of continued litigation.  In entering into this Settlement, Freeman does not

26   admit – and in fact specifically denies – that it violated any federal, state, or local

27   law; violated any common law; violated any regulations or guidelines promulgated

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01                          - 26 -          CASE NO. 3:19–CV–07573–JCS

1    pursuant to any statute or any other applicable laws, regulations, or legal

2    requirements; breached any contract; violated or breached any duty; engaged in any

3    misrepresentation or deception; or engaged in any other unlawful conduct with

4    respect to its employees.  Neither this Settlement Agreement, nor any of its terms or

5    provisions, nor any of the negotiations connected with it, will be construed as an

6    admission or concession by Freeman of any such violations or failures to comply

7    with any applicable law.  Except as necessary in a proceeding to enforce the terms

8    of this Settlement, this Settlement Agreement and its terms and provisions will not

9    be offered or received as evidence in any action or proceeding to establish any

10   liability or admission on the part of Freeman or to establish the existence of any

11   condition constituting a violation of, or non-compliance with, federal, state, local,

12   or other applicable law.

13          85.    <u>Option to Rescind the Settlement Agreement</u>.  Freeman may elect to

14   rescind the Settlement if ten percent (10%) or more of the Class Members submit

15   timely Requests for Exclusion and do not rescind them by the Response Deadline.

16   If Freeman wishes to exercise its conditional right to rescind, it must do so by

17   written communication to Class Counsel that is received by Class Counsel within

18   seventeen (17) calendar days of the Response Deadline.  In the event that Freeman

19   exercises this conditional right to rescind, the Parties will be restored to their

20   litigation positions as of June 22, 2021, except that all deadlines and/or hearings

21   pending as of June 22, 2021 will be rescheduled to afford the Parties sufficient time

22   to resume litigation.  Furthermore, in the event that Freeman exercises its

23   conditional right to rescind, Freeman will be responsible for all Settlement

24   Administration Costs incurred up to the date of rescission.

25          86.    <u>Excluded Class Members</u>.  Any Class Member who, through a

26   settlement agreement with Freeman or any of the Released Parties that was

27   executed prior to the date of Preliminary Approval, released the claims at issue in

28   the Action for the entire Class Period will: (i) not be included in the Class; (ii) be

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 27 -

CASE NO. 3:19−CV−07573−JCS

excluded from the settlement payment calculations discussed herein; and (iii) not be entitled to notice (including a Notice Packet) as provided herein.  Any release that does not encompass the entire Class Period requires the claims of such individuals to be limited to the time which is unaffected by the prior settlement(s).

87.  <u>No Publicity</u>.  Except as provided herein or ordered by the Court, the Parties and their counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry, or have any communication with the press about the fact, amount, or terms of the Settlement.; Class Counsel shall do nothing to publicize this Settlement or use it for marketing purposes, including on websites or on the Internet.

88.  <u>Waiver</u>.  No waiver of any condition or covenant contained in this Settlement Agreement or failure to exercise a right or remedy by any of the Parties hereto will be considered to imply or constitute a further waiver by such party of the same or any other condition, covenant, right, or remedy.

89.  <u>Enforcement Actions</u>.  In the event that one or more of the Parties institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties will be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees, incurred in connection with any enforcement actions.

90.  <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Settlement Agreement.  Accordingly, this Settlement Agreement will not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arm's-length negotiations between the Parties, all Parties have contributed to the preparation of this Settlement Agreement.

91.  <u>Representation By Counsel</u>.  The Parties acknowledge that they have

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 28 -

CASE NO. 3:19−cv−07573−JCS

been represented by counsel throughout all negotiations that preceded the execution of this Settlement Agreement, and that this Settlement Agreement has been executed with the consent, recommendation, and advice of counsel.  Further, Plaintiff and Class Counsel warrant and represent that there are no liens on the Settlement Agreement.

92.    <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement Agreement will be subject to final Court approval.

93.    <u>Cooperation and Execution of Necessary Documents</u>.  All Parties will cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Settlement Agreement.

94.    <u>Binding Agreement</u>.  The Parties warrant that they understand and have full authority to enter into this Settlement Agreement, and further intend that this Settlement Agreement will be fully enforceable and binding on all Parties, and agree that it will be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.  Plaintiff agrees that, by signing this Settlement Agreement, they are bound by the terms herein stated and further agree not to request to be excluded from the Settlement and further warrant and represent that they have no objection to any of the terms of this Settlement.  Any attempt by Plaintiff to opt-out of the Settlement or otherwise not comply with this Settlement Agreement shall be deemed void and of no force or effect. Any such request for exclusion shall therefore be void and of no force or effect.

**[remainder of page intentionally left blank]**

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 29 -

CASE NO. 3:19–CV–07573–JCS

1

## READ CAREFULLY BEFORE SIGNING

2

3

    The Parties hereby agree to and execute this Joint Stipulation of Class and
Representative Action Settlement.

4

                                        **PLAINTIFF**

5

6

Dated: ___Mar 31, 2022___                Teresa Landucci (Mar 31, 2022 22:02 PDT)
                                        _____
                                        Teresa Landucci

7

8

                                        **Freeman Expositions, LLC**

9

10

Dated: _____                _____
                                        Name: _____

11                                       Title: _____

12

## APPROVED AS TO FORM

13

14

                                        **HOYER & HICKS**

15

16

Dated: ___April 1, 2022___              By: _____
                                        Richard A. Hoyer

17                                       Ryan L. Hicks
                                        Attorney for Teresa Landucci

18

19

                                        **FAEGRE DRINKER BIDDLE &**

20                                       **REATH LLP**

21

22

Dated: _____                By: _____
                                        Cheryl D. Orr, Esq.

23                                       Attorney for Freeman Expositions, LLC

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01                     - 30 -                  CASE NO. 3:19−cv−07573−JCS

# READ CAREFULLY BEFORE SIGNING

The Parties hereby agree to and execute this Joint Stipulation of Class and Representative Action Settlement.

## PLAINTIFF

Dated: _____

Teresa Landucci

**Freeman Expositions, LLC**

Dated: April 4, 2022

Name: Stephanie J Hart
Title: Sup - Deputy General Counsel

## APPROVED AS TO FORM

### HOYER & HICKS

Dated: _____

By:_____
    Richard A. Hoyer
    Ryan L. Hicks
    Attorney for Teresa Landucci

### FAEGRE DRINKER BIDDLE & REATH LLP

Dated: _____

By:_____
    Cheryl D. Orr, Esq.
    Attorney for Freeman Expositions, LLC

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 30 -

CASE NO. 3:19-cv-07573-JCS

1

## READ CAREFULLY BEFORE SIGNING

2

3

The Parties hereby agree to and execute this Joint Stipulation of Class and Representative Action Settlement.

4

**PLAINTIFF**

5

6

Dated: _____    _____

7    Teresa Landucci

8    **Freeman Expositions, LLC**

9

10

Dated: _____    _____

11    Name: _____

Title:_____

12

## APPROVED AS TO FORM

13

14

**HOYER & HICKS**

15

16

Dated: _____    By:_____

17    Richard A. Hoyer

Ryan L. Hicks

Attorney for Teresa Landucci

18

19

**FAEGRE DRINKER BIDDLE &**

20    **REATH LLP**

21

22    Dated: _____    By:_____

Cheryl D. Orr, Esq.

23    Attorney for Freeman Expositions, LLC

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 30 -

CASE NO. 3:19−CV−07573−JCS

EXHIBIT A1

## NOTICE OF CLASS ACTION SETTLEMENT
*A court authorized this Notice. This is not a solicitation by a lawyer. You are not being sued.*

### Why should you read this Notice?

A proposed settlement (the "Settlement") has been reached in the class action lawsuit entitled *Teresa Landucci v. Freeman Expositions, LLC*, United States District Court for the Northern District of California, Case No. 19-07573-JCS (the "Action"). The purpose of this Notice of Class Action Settlement ("Notice") is to briefly describe the case, and to inform you of your rights and options in connection with the Action and the proposed Settlement. The proposed Settlement will resolve all claims in the Action.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | If you do nothing, you will be considered part of the Settlement Class and will receive settlement benefits. You will also give up your rights to pursue a separate legal action against Freeman Expositions, LLC ("Defendant") for the claims released under the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may have the option to pursue separate legal action against Defendant about the claims in this lawsuit. If you choose to do so, you must exclude yourself, in writing, from the Settlement. However, if you do so, you will not receive any payment under the Settlement. |
| **OBJECT** | To object to the Settlement, you must write to the Settlement Administrator about why you don't like the Settlement or appear at the Final Approval Hearing. This option is available only if you do not exclude yourself from the Settlement. |

### Who is affected by this proposed Settlement?

The Court has certified, for settlement purposes only, the following Class:

> All non-exempt employees of Defendant who received paper paychecks from Defendant and against whom Bank of America assessed a non-customer check cashing fee when cashing at least one such paper paycheck during the time period of November 18, 2015 through _____.

According to Defendant's and Third-Party Bank of America's records, you are a member of the Class (a "Class Member").

### What is this case about?

In the Action, Plaintiff alleges on behalf of herself and the Class the following claims against Defendant: (1) unlawfully withheld wages in violation of California Labor Code § 212, in the form of check cashing fees; (2) waiting time penalties pursuant to California Labor Code §§ 201-203 stemming from the unlawfully withheld wages in the form of check cashing fees; (3) Unfair business practices (Cal. Bus. and Profs. Code § 17200, *et seq.*); and (4) violation of California Private Attorneys' General Act ("PAGA") ("PAGA claim"), California Labor Code § 2699 *et seq.*, predicated on the violations of the California Labor Code alleged in the Second Amended Complaint and operative complaint ("Complaint").

Defendant denies any and all wrongdoing and liability, and maintains that it has complied with all laws alleged to have been violated in the Complaint. Defendant notes that this Settlement was established specifically to avoid the cost of proceeding with litigation and does not constitute an admission of liability

by Defendant. The Court has not ruled on the merits of Plaintiff's claims or Defendant's defenses; however, the Court has granted preliminary approval of this Settlement.

This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiff and Defendant (the "Parties"), through their attorneys. Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable. Plaintiff and Class Counsel believe this Settlement is in the best interests of the Class.

## *Who are the attorneys in this Lawsuit?*

**Class Counsel**

**HOYER & HICKS**
Richard A. Hoyer
Ryan L. Hicks
Four Embarcadero Center
Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3539

**Defendant's Counsel**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Cheryl D. Orr
Four Embarcadero Center
27th Floor
San Francisco, California 94111
Telephone: (415) 591-7500

## *What will I receive under the Settlement?*

Subject to final Court approval, Defendant will pay $500,000 (the "Gross Settlement Amount"). It is estimated that, subject to Court approval, after deducting the attorney's fees and costs, a service award to Plaintiff, payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, and settlement administration costs from Gross Settlement Amount, there will be a Net Settlement Amount of at least $--------.

From this Net Settlement Amount, Individual Settlement Payments will be paid to (1) each Class Member who does not opt out of the Settlement Class ("Participating Class Member") and (2) each non-exempt employee of Defendant who received paper paychecks from Defendant at any time between November 18, 2018 and _____ ("PAGA Member"). All PAGA Members make up the "PAGA Collective."

According to Defendant's and Bank of America's records, during the period from November 18, 2015 through _____, you were assessed a non-customer check cashing fee on at least one occasion when cashing a paper paycheck issued by Defendant at a Bank of America branch in California as a non-exempt employee. You are therefore a Class Member.

Based on the size of the Class, your settlement payment as a Participating Class Member is estimated to be $_____.

Your settlement payment is only an estimate. Your actual settlement payment may be higher or lower than estimated.

## *When and how will I receive payment?*

If the Court grants final approval of the Settlement, and only after the Effective Date of the Settlement defined below, the Settlement Administrator will send you a settlement check. The settlement approval process takes time so please be patient.

Any and all settlement checks mailed to you under the Settlement shall remain negotiable for 90 days. If you do not negotiate (e.g. cash or deposit) a settlement check within this time period, you will be unable to receive those funds, but you will remain bound by the terms of the Settlement. The funds from any uncashed checks will be distributed to The Impact Fund (www.impactfund.org), a non-profit organization approved by the Court.

The settlement payment check issued to you will be allocated as 10% for unpaid wages and 90% for penalties and interest. None of the Parties or attorneys make any representations concerning the tax implications of this payment. Participating Class Members may wish to consult with their own tax advisors concerning the tax consequences of the Settlement.

### How will the lawyers be paid and how will other funds under the Settlement be distributed?

Class Counsel will ask the Court to award attorneys' fees up to $166,666.67 (1/3 of the Gross Settlement Amount) and reimbursement of reasonable litigation costs they advanced. In addition, Class Counsel will ask the Court to authorize a Class Representative Incentive Award payment of up to $10,000.00 to Plaintiff for her efforts in representing the Class. The cost of administering the Settlement will not exceed $25,000.00. A payment in the amount of $56,250.00 will also be made to the LWDA for PAGA penalties. Any of these amounts not awarded by the Court will be included in the Net Settlement Amount and will be distributed to Participating Class Members equally, less $18,750.00, which will be distributed to PAGA Members equally.

### What claims are being released by the proposed Settlement?

As of the Effective Date, Participating Class Members shall fully and finally release and discharge Released Parties, from November 18, 2015 through _____, from any and all claims, rights, demands, liabilities, and causes of action which accrued from November 18, 2015 through _____, and which were or could have been alleged based on the same facts alleged in the Complaint regarding the imposition of check cashing fees, whether known or unknown, contingent or accrued, including but not limited to (i) claims for failure to timely pay wages upon termination of employment (California Labor Code §§ 201-203); (ii) claims for unpaid wages as a result of check cashing fees derived from California Labor Code § 212, and (iii) claims for violations of California Business & Professions Code § 17200, *et seq*. based on the facts alleged in the Complaint.

Also, if the proposed settlement is finally approved by the Court the LWDA will release its right to recover civil penalties from Defendant for Labor Code or Wage Order violations suffered by any of the PAGA Members during the PAGA Period (regardless of whether they opt-out of the class action settlement) and which are premised upon the facts and allegations in the Complaint.

The Effective Date is the date on which the District Court's Final Approval Order and Judgment becomes final. The District Court's Final Approval Order and Judgment "becomes final" upon the latter of: (1) the date of final affirmance on an appeal of the Judgment; (2) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (3) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.

### What are my options?

You have two options under this Settlement. You may: (A) remain in the Class and receive payment under the Settlement; or (B) exclude yourself from the Settlement. If you choose option (A), you may also object to the Settlement.

**OPTION A.  Remain in the Class.**  If you remain in the Class, you will be represented by Class Counsel. If you wish to remain in the Class and be eligible to receive a payment under the Settlement, you do *not* need to take any action. By remaining in the Class and receiving settlement monies, you consent to the release of the Released Claims as described above.

**OPTION B.  If You Do Not Want To Be Bound By The Settlement.**  If you do not want to be part of the Settlement, you must mail a Request for Exclusion to the Settlement Administrator at _____. In order to be valid, your Request for Exclusion must: (1) contain your full name, address, and telephone number, the last four digits of your Social Security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; and (3) contain a clear statement that you are electing to be excluded from this Settlement or wish to opt-out from this Settlement. In order to be timely, your Request for Exclusion must be postmarked on or before

. If you do not submit a valid and timely Request for Exclusion, your Request for Exclusion will be rejected, you will be deemed a member of the Settlement Class, and you will be bound by the release of Released Claims as described above. If you submit a valid and timely Request for Exclusion, you will not be entitled to any benefit as a result of the Settlement, but you will preserve all of the legal claims asserted in this Action against Defendant.

**Objecting to the Settlement**:  If you believe the proposed Settlement is not fair, reasonable or adequate in any way, you may object to it. To object, you must mail to the Court at                         , a written notice of objection. In order to be valid, the Objection must: (1) contain your full name, date of birth, address, and telephone number, the last four digits of your social security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; (3) contain a written statement of all grounds for the objection accompanied by any legal support for such objection (if any); (4) contain copies of any papers, briefs, or other documents upon which the objection is based (if any); and (5) state whether you intend to appear at the final approval/settlement fairness hearing. In order to be timely, the Objection must be postmarked on or before            . You can also hire an attorney at your own expense to represent you in your Objection. Even if you do not submit a written objection you may appear and make an objection at the Final Approval Hearing.

<b>You cannot object to the Settlement if you request exclusion from the Settlement.</b>

## What is the next step in the approval of the Settlement?

The Court will hold a final approval hearing regarding the fairness, reasonableness and adequacy of the proposed Settlement and the plan of distribution of the payments described herein, on            in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102. The final approval hearing will be held via Zoom, and information as to how to appear via zoom can be found at https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/ on the Court's website. The final approval hearing may be continued without further notice to Class Members. You are not required to attend the Final Approval Hearing in order to receive payment under the Settlement.

## How can I get additional information?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www.                .com, by contacting class counsel at 415.766.3536, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

# EXHIBIT A2

## NOTICE OF CLASS ACTION SETTLEMENT

*A court authorized this Notice. This is not a solicitation by a lawyer. You are not being sued.*

### Why should you read this Notice?

A proposed settlement (the "Settlement") has been reached in the class action lawsuit entitled *Teresa Landucci v. Freeman Expositions, LLC*, United States District Court for the Northern District of California, Case No. 19-07573-JCS (the "Action"). The purpose of this Notice of Class Action Settlement ("Notice") is to briefly describe the case, and to inform you of your rights and options in connection with the Action and the proposed Settlement. The proposed Settlement will resolve all claims in the Action.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | If you do nothing, you will be considered part of the Settlement Class and will receive settlement benefits. You will also give up your rights to pursue a separate legal action against Freeman Expositions, LLC ("Defendant") for the claims released under the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may have the option to pursue separate legal action against Defendant about the claims in this lawsuit. If you choose to do so, you must exclude yourself, in writing, from the Settlement. However, if you do so, you will not receive any payment under the Settlement, except for the payment related to the resolution of the PAGA claim (see below). |
| **OBJECT** | To object to the Settlement, you must write to the Settlement Administrator about why you don't like the Settlement or appear at the Final Approval Hearing. This option is available only if you do not exclude yourself from the Settlement. |

### Who is affected by this proposed Settlement?

The Court has certified, for settlement purposes only, the following Class:

> All non-exempt employees of Defendant who received paper paychecks from Defendant and against whom Bank of America assessed a non-customer check cashing fee when cashing at least one such paper paycheck during the time period of November 18, 2015 through _____.

According to Defendant's and Third-Party Bank of America's records, you are a member of the Class (a "Class Member").

### What is this case about?

In the Action, Plaintiff alleges on behalf of herself and the Class the following claims against Defendant: (1) unlawfully withheld wages in violation of California Labor Code § 212, in the form of check cashing fees; (2) waiting time penalties pursuant to California Labor Code §§ 201-203 stemming from the unlawfully withheld wages in the form of check cashing fees; (3) Unfair business practices (Cal. Bus. and Profs. Code § 17200, *et seq.*); and (4) violation of California Private Attorneys' General Act ("PAGA") ("PAGA claim"), California Labor Code § 2699 *et seq.*, predicated on the violations of the California Labor Code alleged in the Second Amended Complaint and operative complaint ("Complaint").

Defendant denies any and all wrongdoing and liability, and maintains that it has complied with all laws alleged to have been violated in the Complaint. Defendant notes that this Settlement was established specifically to avoid the cost of proceeding with litigation and does not constitute an admission of liability

by Defendant. The Court has not ruled on the merits of Plaintiff's claims or Defendant's defenses; however, the Court has granted preliminary approval of this Settlement.

This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiff and Defendant (the "Parties"), through their attorneys. Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable. Plaintiff and Class Counsel believe this Settlement is in the best interests of the Class.

## *Who are the attorneys in this Lawsuit?*

| **Class Counsel** | **Defendant's Counsel** |
| --- | --- |
| **HOYER & HICKS** | **FAEGRE DRINKER BIDDLE & REATH LLP** |
| Richard A. Hoyer | |
| Ryan L. Hicks | Cheryl D. Orr |
| Four Embarcadero Center | Four Embarcadero Center |
| Suite 1400 | 27th Floor |
| San Francisco, California 94111 | San Francisco, California 94111 |
| Telephone: (415) 766-3539 | Telephone: (415) 591-7500 |

## *What will I receive under the Settlement?*

Subject to final Court approval, Defendant will pay $500,000 (the "Gross Settlement Amount"). It is estimated that, subject to Court approval, after deducting the attorney's fees and costs, a service award to Plaintiff, payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, and settlement administration costs from Gross Settlement Amount, there will be a Net Settlement Amount of at least $--------.

From this Net Settlement Amount, Individual Settlement Payments will be paid to (1) each Class Member who does not opt out of the Settlement Class ("Participating Class Member") and (2) each non-exempt employee of Defendant who received paper paychecks from Defendant at any time between November 18, 2018 and _____ ("PAGA Member"). All PAGA Members make up the "PAGA Collective."

According to Defendant's and Bank of America's records, during the period from November 18, 2015 through _____, you were assessed a non-customer check cashing fee on at least one occasion when cashing a paper paycheck issued by Defendant at a Bank of America branch in California as a non-exempt employee. You are therefore a Class Member.

According to Defendant's records, during the period from November 18, 2018 and _____, you received a paper paycheck from Defendant on at least one occasion. You are therefore also a PAGA Member.

Based on the size of the Class, your settlement payment as a Participating Class Member is estimated to be $_____. Based on the size of the PAGA Collective, your settlement payment as a PAGA Member is estimated to be $_____ ("PAGA Payment").

Your settlement payment is only an estimate. Your actual settlement payment may be higher or lower than estimated.

## *When and how will I receive payment?*

If the Court grants final approval of the Settlement, and only after the Effective Date of the Settlement defined below, the Settlement Administrator will send you a settlement check. The settlement approval process takes time so please be patient.

Any and all settlement checks mailed to you under the Settlement shall remain negotiable for 90 days. If you do not negotiate (e.g. cash or deposit) a settlement check within this time period, you will be unable to receive those funds, but you will remain bound by the terms of the Settlement. The funds from any uncashed checks will be distributed to The Impact Fund (www.impactfund.org), a non-profit organization approved by the Court.

The settlement payment check issued to you will be allocated as 10% for unpaid wages and 90% for penalties and interest. None of the Parties or attorneys make any representations concerning the tax implications of this payment. Participating Class Members may wish to consult with their own tax advisors concerning the tax consequences of the Settlement.

### How will the lawyers be paid and how will other funds under the Settlement be distributed?

Class Counsel will ask the Court to award attorneys' fees up to $166,666.67 (1/3 of the Gross Settlement Amount) and reimbursement of reasonable litigation costs they advanced. In addition, Class Counsel will ask the Court to authorize a Class Representative Incentive Award payment of up to $10,000.00 to Plaintiff for her efforts in representing the Class. The cost of administering the Settlement will not exceed $25,000.00. A payment in the amount of $56,250.00 will also be made to the LWDA for PAGA penalties. Any of these amounts not awarded by the Court will be included in the Net Settlement Amount and will be distributed to Participating Class Members equally, less $18,750.00, which will be distributed to PAGA Members equally.

### What claims are being released by the proposed Settlement?

As of the Effective Date, Participating Class Members shall fully and finally release and discharge Released Parties, from November 18, 2015 through _____, from any and all claims, rights, demands, liabilities, and causes of action which accrued from November 18, 2015 through _____, and which were or could have been alleged based on the same facts alleged in the Complaint regarding the imposition of check cashing fees, whether known or unknown, contingent or accrued, including but not limited to (i) claims for failure to timely pay wages upon termination of employment (California Labor Code §§ 201-203); (ii) claims for unpaid wages as a result of check cashing fees derived from California Labor Code § 212, and (iii) claims for violations of California Business & Professions Code § 17200, *et seq.* based on the facts alleged in the Complaint.

Also, if the proposed settlement is finally approved by the Court the LWDA will release its right to recover civil penalties from Defendant for Labor Code or Wage Order violations suffered by any of the PAGA Members during the PAGA Period (regardless of whether they opt-out of the class action settlement) and which are premised upon the facts and allegations in the Complaint.

The Effective Date is the date on which the District Court's Final Approval Order and Judgment becomes final. The District Court's Final Approval Order and Judgment "becomes final" upon the latter of: (1) the date of final affirmance on an appeal of the Judgment; (2) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (3) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.

### What are my options?

You have two options under this Settlement. You may: (A) remain in the Class and receive payment under the Settlement; or (B) exclude yourself from the Settlement. If you choose option (A), you may also object to the Settlement.

**OPTION A.  Remain in the Class.**  If you remain in the Class, you will be represented by Class Counsel. If you wish to remain in the Class and be eligible to receive a payment under the Settlement, you do *not* need to take any action. By remaining in the Class and receiving settlement monies, you consent to the release of the Released Claims as described above.

**OPTION B.  If You Do Not Want To Be Bound By The Settlement.**  If you do not want to be part of the Settlement, you must mail a Request for Exclusion to the Settlement Administrator at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  In order to be valid, your Request for Exclusion must: (1) contain your full name, address, and telephone number, the last four digits of your Social Security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; and (3) contain a clear statement that you are electing to be excluded from this Settlement or wish to opt-out from this Settlement.  In order to be timely, your Request for Exclusion must be postmarked on or before ▓▓▓▓▓.  If you do not submit a valid and timely Request for Exclusion, your Request for Exclusion will be rejected, you will be deemed a member of the Settlement Class, and you will be bound by the release of Released Claims as described above.  If you submit a valid and timely Request for Exclusion, you will not be entitled to any benefit as a result of the Settlement, but you will preserve all of the legal claims asserted in this Action against Defendant.  However, regardless of whether you timely return a properly completed Request for Exclusion (as described above), you will still receive the PAGA Payment, as you have been deemed a PAGA Member.

**Objecting to the Settlement**:  If you believe the proposed Settlement is not fair, reasonable or adequate in any way, you may object to it.  To object, you must mail to the Court at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, a written notice of objection.  In order to be valid, the Objection must: (1) contain your full name, date of birth, address, and telephone number, the last four digits of your social security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; (3) contain a written statement of all grounds for the objection accompanied by any legal support for such objection (if any); (4) contain copies of any papers, briefs, or other documents upon which the objection is based (if any); and (5) state whether you intend to appear at the final approval/settlement fairness hearing.  In order to be timely, the Objection must be postmarked on or before ▓▓▓▓▓.  You can also hire an attorney at your own expense to represent you in your Objection.  Even if you do not submit a written objection you may appear and make an objection at the Final Approval Hearing.

**You cannot object to the Settlement if you request exclusion from the Settlement.**

## What is the next step in the approval of the Settlement?

The Court will hold a final approval hearing regarding the fairness, reasonableness and adequacy of the proposed Settlement and the plan of distribution of the payments described herein, on ▓▓▓▓ in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102.  The final approval hearing will be held via Zoom, and information as to how to appear via zoom can be found at https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/ on the Court's website.  The final approval hearing may be continued without further notice to Class Members.  You are not required to attend the Final Approval Hearing in order to receive payment under the Settlement.

## How can I get additional information?

This notice summarizes the proposed settlement.  For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at 415.766.3536, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

EXHIBIT B

**Case Name**
P.O. Box 26170
Santa Ana, CA 92799-9834



SIMD-<SIMD>
«Barcode_Encoded_
112782»

«IMbFullBarcodeEncoded»

«FirstName» «LastName»
«Address1» «Address2»
«City», «State»  «Zip»-«ZipDPC3»

PRESORTED
FIRST-CLASS MAIL
US POSTAGE
PAID
SIMPLURIS INC

Space below the
dashed line is fixed
for postal markings.

# EXHIBIT C

[PROPOSED PAGA SETTLEMENT COVER LETTER]

To: [First Name] [Last Name]                                          Date: [                    ]
Address
City, State Zip

Re:     Settlement Payment from *Teresa Landucci v. Freeman Expositions, LLC*
        US District Court for the Northern District of California; Case No. 19-07573-JCS

Dear [First Name] [Last Name]:

Please find enclosed a check in the amount of [amount of payment] ("Settlement Share"). This check is your payment from the settlement of a lawsuit entitled *Landucci v. Freeman Expositions, LLC*, Case No. 19-07573-JCS ("Action"), pending in the United States District Court for the Northern District of California ("Court").  The lawsuit was commenced by Teresa Landucci ("Plaintiff"), a former employee of Freeman Expositions, LLC ("Freeman") in California, for herself and on behalf of the State of California, Labor & Workforce Development Agency ("LWDA") for violations allegedly suffered by other alleged aggrieved employees, pursuant to the California Private Attorneys General Act of 2004, California Labor Code § 2698, et seq. ("PAGA"). On November 2, 2020, Plaintiff filed the Second Amended Complaint and operative complaint in the Action ("Complaint"), alleging that Freeman violated California Labor Code Section 212, and, as a result, sections 201-203 from November 18, 2018 to [approval date] ("Covered Period"). Freeman denies these allegations and denies that it owes any penalties to the government or to you. The other aggrieved employees on whose behalf PAGA penalties are sought on behalf of the LWDA are: all current and former non-exempt employees who received a paper paycheck from Freeman at any time during the Covered Period ("PAGA Members"). You have been identified as a PAGA Member.

On [approval date], the settlement was approved by the Court with a portion to be paid to the State of California and a portion to be paid to the PAGA Members, as required by law. You are receiving a portion of the settlement (your "Settlement Share") based on an even distribution to all PAGA Members. The Settlement Share is for civil penalties recoverable by the LWDA under PAGA. You are responsible for paying any and all taxes that may be due as a result of any payment issued to you under the settlement, and should consult a tax advisor regarding the tax consequences of such payment.

As a result of the settlement, the LWDA (with respect to the Labor Code and Wage Order violations suffered by Plaintiff and PAGA Members) is hereby deemed to release and discharge any and all claims or causes of action for civil penalties under PAGA, whether known or unknown, that it had, now has, has asserted, or may hereafter assert against Freeman or any of its present or former parent and affiliated companies, subsidiaries, partners, agents, insurers and each of their respective officers, directors, shareholders, representatives, successors and assigns, that are based upon the factual allegations in the Complaint, for the Covered Period, including but not limited to and all claims for attorneys' fees and costs and statutory interest associated with the aforementioned claims. Plaintiff and the LWDA shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they otherwise may have had related to these claims.

Do **not** call or write the Court or Office of the Clerk of the Court to ask questions about the settlement. If you have any questions, you may call the Settlement Administrator: [telephone number].

1 of 2

EXHIBIT 2

1  CHERYL D. ORR (SBN 143196)
   Cheryl.Orr@faegredrinker.com
2  FAEGRE DRINKER BIDDLE & REATH LLP
   Four Embarcadero Center, 27th Floor
3  San Francisco, California  94111
   Telephone:  415-591-7500
4  Facsimile:  415-591-7510

5  KATRINA W. FORSYTH (SBN 287299)
6  Katrina.Forsyth@faegredrinker.com
   FAEGRE DRINKER BIDDLE & REATH LLP
7  1800 Century Park East, Suite 1500
   Los Angeles, California  90067
8  Telephone:  310-203-4000
   Facsimile:  310-229-1285
9
   Attorneys for Defendant
10 FREEMAN EXPOSITIONS, LLC

   RICHARD A. HOYER (SBN 151931)
   rhoyer@hoyerlaw.com
   RYAN L. HICKS (SBN 260284)
   rhicks@hoyerlaw.com
   HOYER & HICKS
   Four Embarcadero Center, Suite 1400
   San Francisco, CA 94111
   Telephone:  415-766-3539
   Facsimile:   310-593-2520

   Attorneys for Plaintiff TERESA
   LANDUCCI, individually and on behalf
   of all others similarly situated

11

12            UNITED STATES DISTRICT COURT

13          NORTHERN DISTRICT OF CALIFORNIA

14 TERESA LANDUCCI, on behalf of
   herself and others similarly situated,
15
                  Plaintiff ,
16       v.
17 FREEMAN EXPOSITIONS, LLC and
   DOES 1 to 100, inclusive,
18
                  Defendants.
19
20
21

   Case No.  3:19−cv−07573−JCS

   **CLASS ACTION**
   **AMENDED JOINT STIPULATION**
   **OF CLASS AND**
   **REPRESENTATIVE ACTION**
   **SETTLEMENT**

   Second Amended Complaint Filed:
   November 2, 2020

22
23
24
25
26
27
28

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

CASE NO. 3:19−cv−07573−JCS

1
2      This Joint Stipulation of Class and Representative Action Settlement
3  ("Settlement" or "Settlement Agreement") is made and entered into by and between
4  Plaintiff Teresa Landucci ("Plaintiff"), individually, and on behalf of all others
5  similarly situated and the Labor & Workforce Development Agency ("LWDA"),
6  and Defendant Freeman Expositions, LLC ("Defendant" or "Freeman")
7  (collectively, Plaintiff and Freeman are referred to herein as the "Parties").

## DEFINITIONS

8      The following definitions are applicable to this Settlement Agreement;
9  definitions contained elsewhere in this Settlement Agreement will also be effective:
10     1.     "Action" means the action entitled *Landucci v. Freeman Expositions,*
11  *LLC*, Case No. 3:19-cv-07573-JCS, currently pending in the U.S. District Court for
12  the Northern District of California.
13     2.     "Attorneys' Fees and Costs" means attorneys' fees agreed upon by the
14  Parties and approved by the Court for Plaintiff's Counsel's litigation and resolution
15  of the Action, as well as all costs incurred and to be incurred by Plaintiff's Counsel
16  in the Action and approved by the Court, including but not limited to, costs
17  associated with documenting the Settlement, providing any notices required as part
18  of the Settlement or Court order, securing the Court's approval of the Settlement,
19  administering the Settlement, and obtaining entry of the Dismissal terminating the
20  Action.  In connection with the settlement of the Action, Plaintiff's Counsel will
21  request attorneys' fees not in excess of thirty-three (33%) of the Gross Settlement
22  Amount, or One Hundred Sixty-Six Thousand Six Hundred Sixty-Six Dollars and
23  Sixty-Seven Cents ($166,666.67) plus actual reasonable costs incurred.  Freeman
24  has agreed not to oppose Plaintiff's Counsel's request for fees and reimbursement
25  of costs as set forth above.  However, a ruling by the Court to award Plaintiff's
26  Counsel amounts less than the amounts stated above shall not be a basis for
27  Plaintiff or Plaintiff's Counsel to rescind or withdraw from this Settlement, and any

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 2 -

CASE NO. 3:19-CV-07573-JCS

such difference will remain in the Gross Settlement Amount and will be available to the Class Members.

3.    "Class Counsel" and/or "Plaintiff's Counsel" means Richard A. Hoyer and Ryan L. Hicks of Hoyer & Hicks.

4.    "Class List" means a complete list of all Class Members that Freeman will diligently and in good faith compile from its records, based on data produced in this Action by Third-Party Bank of America, and provide to the Settlement Administrator within fifteen (15) business days after Preliminary Approval of this Settlement Agreement by the Court. The Class List will be formatted in Microsoft Office Excel, encrypted, and password protected, and will include: (i) each Class Member's full name; (ii) last known mailing address and telephone number; and (iii) Social Security number. At no time during the Settlement process will any Class Member's address, Social Security number, or telephone number be filed with the Court, except under seal as may be ordered.

5.    "Class Member(s)" or "Class" means all individuals who were employed by Freeman in California as non-exempt/hourly employees and who received paper paychecks from Freeman and against whom Bank of America assessed a non-customer check cashing fee when cashing at least one such paper paycheck at any time between November 18, 2015 and the date of Preliminary Approval of this Settlement Agreement by the Court.

6.    "Class Period" means the period between November 18, 2015 through the date of Preliminary Approval of this Settlement Agreement by the Court, inclusive.

7.    "PAGA Member(s)" or "PAGA Class" means all individuals who were employed by Freeman in California as non-exempt/hourly employees and who received paper paychecks from Freeman at any time between November 18, 2018 and the date of Preliminary Approval of this Settlement by the Court.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 3 -

CASE NO. 3:19−cv−07573−JCS

8.    "PAGA Period" means the period between November 18, 2018 and the date of Preliminary Approval of this Settlement by the Court, inclusive.

9.    "PAGA List" means a complete list of all PAGA Members that Freeman will diligently and in good faith compile from its records and provide to the Settlement Administrator within fifteen (15) business days after Preliminary Approval of this Settlement Agreement by the Court. The PAGA List will be formatted in Microsoft Office Excel, encrypted, and password protected, and will include:  (i) each PAGA Member's full name; (ii) last known mailing address and telephone number; and (iii) Social Security number.  At no time during the Settlement process will any PAGA Member's address, Social Security number, or telephone number be filed with the Court, except under seal as may be ordered.

10.    "Complaint" means Plaintiff's Second Amended Complaint, filed on or about November 2, 2020.

11.    "Court" means Judge Joseph C. Spero and/or the U.S. District Court for the Northern District of California or any other court exercising jurisdiction over the Settlement.

12.    "Effective Date" means the date on which the Judgment becomes a Final Judgment.

13.    "Final Approval/Settlement Fairness Hearing" means the hearing at which the Court considers whether to approve the Settlement and to enter Judgment.

14.    "Final Judgment" means the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.   The Parties intend that the final approval order will encompass and constitute an order entering judgment.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 4 -

CASE NO. 3:19–CV–07573–JCS

15.    "Gross Settlement Amount" means Five Hundred Thousand Dollars ($500,000.00), to be paid by Freeman in full satisfaction of all claims arising from the Action which includes Individual Settlement Payments to Participating Class Members and PAGA Members; the Incentive Award to Plaintiff; Attorneys' Fees and Costs to Class Counsel as described above at Paragraph 2; the LWDA Payment; interest; and Settlement Administration Costs to the Settlement Administrator.  This Gross Settlement Amount has been agreed to by Plaintiff and Freeman based on the aggregation of the agreed-upon settlement value of individual claims.  In no event will Freeman be liable for more than the Gross Settlement Amount; however, Freeman shall pay all employer-side payroll taxes with funds outside of the Gross Settlement Amount.  There will be no reversion of the Gross Settlement Amount to Freeman.

16.    "Incentive Award to Plaintiff" means the amount to be paid from the Gross Settlement Amount to Plaintiff in exchange for executing a general release, agreeing not to seek reemployment, and in recognition of her efforts in prosecuting this Action on behalf of the Class and the State of California as a private attorney general, pursuant to the California Labor Code Private Attorneys General Act ("PAGA").  Plaintiff will request, and Freeman will not oppose, an award of up to Ten Thousand Dollars ($10,000.00) as an Incentive Award.  A ruling by the Court to award Plaintiff an amount less than the requested amount stated above shall not be a basis for Plaintiff or Plaintiff's Counsel to rescind or withdraw from this Settlement and any such difference will remain in the Gross Settlement Fund and available to the Class.

17.    "Individual Settlement Payment" means each Participating Class Member and PAGA Member's respective share of the Total Net Settlement Amount.

18.    "Judgment" means the judgment to be rendered by the Court pursuant to this Settlement Agreement.

Drinker Biddle & Reath LLP
Attorneys at Law
San Francisco

Amended Joint Stipulation of Class and Representative Action Settlement
ACTIVE.134253109.01

- 5 -

Case No. 3:19−cv−07573−JCS

19.    "LWDA Payment" means the Fifty-Six Thousand Two Hundred Fifty

Dollar ($56,250.00) payment from the Gross Settlement Amount allocated to the

LWDA's seventy-five percent (75%) share of the portion of the Gross Settlement

Amount allocated by the Parties to Plaintiff's claim pursuant to the PAGA.

20.    "Notice of Objection" means a Class Member's valid and timely

written objection to the Settlement (and/or the terms embodied therein).  A written

Notice of Objection must include: (i) the objector's full name, date of birth,

address, and telephone number, the last four digits of the objector's Social Security

number, and the objector's signature; (ii) the case name and case number; and (iii) a

written statement of all grounds for the objection accompanied by any legal support

for such objection (if any); and (iv) copies of any papers, briefs, or other documents

upon which the objection is based (if any).

21.    "Notice Packet" means the Notice of Class Action Settlement,

substantially in the forms attached as **Exhibit A1** (for individuals who are Class

Members only) or **Exhibit A2** (for individuals who are both Class Members and

PAGA Members), and Mailing Envelope, substantially in the form attached as

**Exhibit B** hereto.  The Notice Packet will be prepared per the instruction of and

approval by the Court.

22.    "PAGA Settlement Cover Letter" means the settlement cover letter to

PAGA Members, substantially in the form attached as **Exhibit C** hereto, subject to

the Court's approval.

23.    "Participating Class Members" means all Class Members who do not

submit timely and valid Requests for Exclusion.

24.    "Preliminary Approval" means the Court order granting preliminary

approval of the Settlement.

25.    "Released Claims" means all claims, rights, demands, liabilities, and

causes of action of Class Members which accrued during the Class Period, which

were or could have been alleged based on the facts alleged in the Complaint

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 6 -

CASE NO. 3:19−cv−07573−JCS

1  regarding the imposition of check cashing fees, whether known or unknown,

2  contingent or accrued, including but not limited to:  (i) claims for failure to timely

3  pay wages upon termination of employment (Cal. Lab. Code §§ 201-203); (ii)

4  claims for unpaid wages as a result of check cashing fees derived from Lab. Code §

5  212; (iii) claims for violations of California Business & Professions Code,  Section

6  17200, *et seq*. based on the facts alleged in the Complaint regarding the imposition

7  of check cashing fees; and (iv) claims of the LWDA pursuant to the PAGA (Cal.

8  Lab. Code §§ 2698 *et seq.*) for PAGA penalties against the Released Parties for

9  Labor Code or Wage Order violations suffered by PAGA Members which accrued

10  during the PAGA Period and are based on the facts alleged in the Complaint.

11  regarding the imposition of check cashing fees.

12      26.    "Released Parties" means Freeman and its successors and predecessors

13  in interest, subsidiaries, affiliates, trusts, brother-sister or otherwise related

14  companies, and parents, as well as all of their past or present officers, managing

15  members, directors, owners, members, shareholders, employees, agents, principals,

16  heirs, representatives, accountants, auditors, consultants, partners, joint venturers,

17  trustees, insurers, reinsurers, and all of their successors and predecessors in interest;

18  and any attorney or law firms representing Freeman and/or the other

19  aforementioned Released Parties with regard to Plaintiff's asserted claims against

20  Freeman.

21      27.    "Request for Exclusion" means a timely letter submitted by a Class

22  Member to the Settlement Administrator pursuant to the terms set forth herein

23  indicating a request to be excluded from the Settlement.  To be valid, a Request for

24  Exclusion must:  (i) set forth the full name, address, telephone number, and last

25  four digits of the Social Security number of the Class Member requesting

26  exclusion; (ii) be signed by the Class Member; (iii) contain the case name and case

27  number; (iv) be returned to the Settlement Administrator; (v) contain a clear

28  statement that you are either electing to be excluded from this Settlement or wish to

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 7 -

CASE NO. 3:19−cv−07573−JCS

opt-out from this Settlement; and (vi) be postmarked on or before the Response Deadline.

28.    "Response Deadline" means the deadline by which Class Members must postmark to the Settlement Administrator Requests for Exclusion, as set forth in Paragraph 51 below, or postmark to the Court Notices of Objection to the Settlement, as set forth in Paragraph 54 below.

29.    "Settlement Administration Costs" means all costs incurred by the Settlement Administrator in administering the Settlement, including, but not limited to, all costs, expenses and fees associated with preparing, issuing and mailing any and all notices, computing, processing, reviewing and mailing Individual Settlement Payments, generating Individual Settlement Payment checks and related tax reporting forms, preparing any tax returns and other filings required by any governmental authority or agency, preparing any other checks, notices, reports or filings, administering the process set forth in this Agreement regarding unclaimed checks, administering disbursements from the Net Settlement Amount, generating checks to Class Counsel for attorneys' fees and costs, to Plaintiff for her Incentive Awards, and to the LWDA for the LWDA Payment.  The Settlement Administration Costs shall be paid from the Gross Settlement Amount.  The Settlement Administrator shall agree to a not-to-exceed cost of Twenty-Five Thousand Dollars ($25,000.00).

30.    "Settlement Administrator" means Simpluris, the third-party class action settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering this Settlement.  The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

31.    "Total Net Settlement Amount" means the portion of the Gross Settlement Amount remaining after deducting the Attorneys' Fees and Costs, the

Drinker Biddle &
Reath LLP
Attorneys at Law
San Francisco

Amended Joint Stipulation of Class and
Representative Action Settlement
ACTIVE.134253109.01

- 8 -

Case No. 3:19‑cv‑07573‑JCS

1   LWDA Payment, Settlement Administration Costs, and the Incentive Award to

2   Plaintiff.  The Total Net Settlement Amount will be distributed to Participating

3   Class Members and PAGA Members by the Settlement Administrator; there will be

4   no reversion of the Net Settlement Amount to Freeman.

5   <u>**LITIGATION BACKGROUND**</u>

6       32.    On November 2, 2020, Plaintiff filed her Complaint against Freeman,

7   pleading claims for unlawfully withheld wages in violation of California Labor

8   Code Section 212, in the form of check cashing fees; waiting time penalties

9   pursuant to California Labor Code Sections 201-203 stemming from the unlawfully

10  withheld wages in the form of check cashing fees; unfair business practices

11  (California Bus. and Profs. Code Section 17200, *et seq.*); and violation of the

12  PAGA.  Plaintiff sought relief for herself and all current and/or former non-exempt

13  drivers that worked for Freeman in California within four years prior to the filing of

14  her original complaint in this action, dated November 18, 2019.  Plaintiff's original

15  complaint, subsequent First Amended Complaint, and Complaint also alleged

16  individual claims under the Fair Employment and Housing Act and California

17  Labor Code, as well as a claim for constructive discharge in violation of public

18  policy.  The Parties have entered into a separate settlement agreement to resolve

19  Plaintiff's individual claims.

20      33.    Freeman timely answered Plaintiff's Complaint.  At all times, Freeman

21  disputed that it had violated California wage and hour law and, further, maintained

22  that Plaintiff's claims were not appropriate for class or representative adjudication

23  for numerous reasons.

24      34.    Since the filing of the Action and through execution of this Settlement

25  Agreement, Class Counsel has conducted a thorough investigation into the facts

26  underlying the claims asserted in the Complaint.  Class Counsel has also engaged in

27  extensive informal and formal discovery, including, obtaining Freeman's relevant

28  written wage and hour policies and procedures in effect during the Class Period and

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 9 -

CASE NO. 3:19–cv–07573–JCS

obtaining data from Bank of America, Freeman's bank, concerning transactions where paper paychecks from Freeman's account were cashed in California and check cashing fees were assessed.  Class Counsel produced documents requested by Freeman; defended Freeman's deposition of Plaintiff; and met and conferred extensively with counsel for Freeman and Bank of America over the scope of the Parties' informal information exchange, both via e-mail and over the phone.

35.     Prior to mediation, Freeman, based on the data provided by Bank of America in Paragraph 34, provided Plaintiff with detailed information regarding the size of the Class, and the number of paper paychecks issued to PAGA Members, in addition to other relevant information.

36.     On June 22, 2021, the Parties participated in a day-long private mediation with the assistance of mediator Deborah Saxe, Esq., in Los Angeles, California, as a result of which the Parties reached an agreement regarding a resolution of the Action, which is memorialized herein.

## **TERMS OF AGREEMENT**

Plaintiff, on behalf of herself and the Class, and Freeman agree as follows:

37.     <u>Conditional Stipulation to Class Certification</u>.  Solely for purposes of implementing this Settlement Agreement and effectuating settlement, the Parties hereby conditionally stipulate to class certification.  Should this Settlement not be approved by the Court, or the Parties proceed to litigation for any reason, Freeman reserves the right to object to and oppose certification of any class and this Settlement Agreement may not be used as evidence in support of class certification.

38.     <u>Funding of the Gross Settlement Amount</u>.  Within thirty (30) days of the Effective Date, or by January 1, 2022, whichever is later, Freeman will make a one-time deposit of the Gross Settlement Amount into a qualified settlement account to be established by the Settlement Administrator.  After the Effective Date, the Gross Settlement Amount will be used to satisfy all of Freeman's liabilities arising from this Settlement, including interest; Individual Settlement

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 10 -

CASE NO. 3:19−cv−07573−JCS

Payments; the Incentive Awards to Plaintiff; the LWDA Payment; Attorneys' Fees and Costs; and Settlement Administration Costs.

39.    <u>Attorneys' Fees and Costs</u>.  Freeman agrees not to oppose or impede any application or motion for Attorneys' Fees and Costs in the amounts set forth in Paragraph 2 above, which will be paid from the Gross Settlement Amount, subject to approval by the Court.  The Parties agree that the Court's approval of an award of fees in an amount less than $166,666.67 shall not permit or be grounds for Plaintiff or Plaintiff's Counsel to cancel, void, back out, or otherwise revoke their acceptance of this Settlement and the Parties shall proceed with the Settlement notwithstanding.

40.    <u>Incentive Awards to Plaintiff</u>.  Subject to Court Approval, an Incentive Award will be paid to Plaintiff of not more than Ten Thousand Dollars ($10,000.00).  The Incentive Award to Plaintiff will be paid from the Gross Settlement Amount.

41.    <u>Settlement Administration Costs</u>.  The Settlement Administrator will be paid for the reasonable costs of administration of the Settlement and distribution of payments from the Class Settlement Amount, which the Settlement Administrator agrees will be capped at Twenty-Five Thousand Dollars ($25,000.00).

42.    <u>Payment and Notice to LWDA</u>.  In consideration of claims made in the Action pursuant to the PAGA, Class Counsel will request that the Court approve an allocation of Seventy-Five Thousand Dollars ($75,000.00) of the Gross Settlement Amount to these claims.  Seventy-five percent (75%) of this amount – Fifty-Six Thousand Two Hundred Fifty Dollar ($56,250.00) – will be paid by the Settlement Administrator to the LWDA (*i.e.*, the LWDA Payment) from the Gross Settlement Amount and the remaining twenty-five percent (25%) – Eighteen Thousand Seven Hundred Fifty Dollars ($18,750.00) – will be distributed from the Total Net Settlement Amount to PAGA Members.  The Court's adjustment, if any, of the

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 11 -

CASE NO. 3:19-cv-07573-JCS

amount allocated to Plaintiff's PAGA claim, will not invalidate this Settlement Agreement.  In accordance with section 2699(l)(2) of the California Labor Code, a copy of this Settlement Agreement shall be provided to the LWDA on the same day that Plaintiff files her motion for preliminary approval of this Settlement with the Court.

43.    <u>Total Net Settlement Amount</u>.  The entire Total Net Settlement Amount will be distributed to Participating Class Members and PAGA Members pursuant to paragraph 44 of this Settlement Agreement.  No portion of the Total Net Settlement Amount will revert to or be retained by Freeman.

44.    <u>Individual Settlement Payment Calculations</u>.  Individual Settlement Payments will be calculated and apportioned from the Total Net Settlement Amount as follows:

a.    <u>Individual Settlement Payments to Participating Class Members</u>. The Total Net Settlement Amount, less $18,750.00 of the amount allocated to Plaintiff's PAGA claim, will be distributed to Participating Class Members equally; this amount will be disbursed to all Class Members who do not submit timely and valid Requests for Exclusion.

b.    <u>Individual Settlement Payments to PAGA Members.</u>  The portion of the Total Net Settlement amount that will be distributed to PAGA Members ($18,750.00) will be distributed to PAGA Members equally.

45.    <u>No Credit Toward Benefit Plans</u>.  The Individual Settlement Payments made to PAGA Members and Participating Class Members under this Settlement, as well as any other payments made pursuant to this Settlement, will not be utilized to calculate any additional benefits under any benefit plans to which any Class Members or PAGA Members may be eligible, including, but not limited to:  profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan.  Rather, it is the Parties' intention that this Settlement Agreement will not affect any rights, contributions, or

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 12 -

CASE NO. 3:19–CV–07573–JCS

amounts to which any Class Members or PAGA Members may be entitled under any benefit plans.

46.    <u>Administration Process</u>.  The Parties agree to cooperate in the administration of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

47.    <u>Delivery of the Class and PAGA Lists</u>.  Within fifteen (15) business days after Preliminary Approval of this Settlement, Freeman will provide the Class and PAGA Lists to the Settlement Administrator.

48.    <u>Notice by First-Class U.S. Mail</u>.  Within fourteen (14) calendar days after receiving the Class List from Freeman, the Settlement Administrator will mail a Notice Packet to all Class Members via regular First-Class U.S. Mail, using the most current, known mailing addresses identified in the Class List.

49.    <u>Confirmation of Contact Information in the Class List</u>.  Prior to mailing the Notice Packets, the Settlement Administrator will perform a search based on the National Change of Address Database in order to update and correct any addresses that may have changed.  Any Notice Packets returned to the Settlement Administrator as non-deliverable with a forwarding address on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Settlement Administrator will indicate the date of such re-mailing on the Notice Packet.  If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address, and/or Social Security number of the Class Member involved, and will then perform a single re-mailing.  In the event the procedures in this Paragraph are followed and the intended recipient of a Notice Packet still does not receive the Notice Packet, the Class Member shall be bound by all terms of the Settlement and any Judgment entered by the Court if the Settlement is approved by the Court.  The Settlement Administrator shall at all times protect the privacy rights of Class Members.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 13 -

CASE NO. 3:19−cv−07573−JCS

50.    Notice Packets.  All Class Members will be mailed a Notice Packet. Each Notice Packet will provide:  (i) information regarding the nature of the Action; (ii) a summary of the Settlement's principal terms; (iii) the Class Member definitions; (iv) the PAGA Member definitions; (v) the Class Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments; (vi) the PAGA Member's estimated Individual Settlement Payment and the formula for calculating Individual Settlement Payments (if applicable); (vi) the dates which comprise the Class Period; (vii) the dates which comprise the PAGA Period; (viii) instructions on how to submit Requests for Exclusion and/or Notices of Objection; (ix) the Response Deadline; and (x) the claims to be released pursuant to the Settlement of the Action.  The Response Deadline shall be the later of the following:  (a) forty-five (45sixty (60) calendar days from the date the Settlement Administrator initially mails the Notice Packet to the Class Member; or (b) fifteen (15) calendar days after the Settlement Administrator re-mails the Notice Packet to the Class Member; if the 4560- or 15-day deadline falls on a Sunday or federal holiday, the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.

51.    Request for Exclusion Procedures.  Any Class Member wishing to opt-out from the Settlement Agreement must sign and postmark a written Request for Exclusion to the Settlement Administrator by the Response Deadline.  In the case of Requests for Exclusion that are mailed to the Settlement Administrator, the postmark date will be the exclusive means to determine whether a Request for Exclusion has been timely submitted.  At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to opt-out from the Settlement.

52.    Defective Submissions.  If a Class Member's Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s).  The Settlement Administrator will mail the Class

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 14 -

CASE NO. 3:19−cv−07573−JCS

1   Member a cure letter within three (3) business days of receiving the defective

2   submission to advise the Class Member that his or her submission is defective and

3   that the defect must be cured to render the Request for Exclusion valid. The Class

4   Member will have until the later of (i) the Response Deadline or (ii) fifteen (15)

5   calendar days from the date of the cure letter to postmark a revised Request for

6   Exclusion. If the revised Request for Exclusion is not postmarked within that

7   period, it will be deemed untimely.

8       53.   Settlement Terms Bind The LWDA With Respect To The PAGA

9   claims, and All Class Members Who Do Not Opt-Out. The LWDA will be bound

10  by the terms of the Settlement pertaining to the claim for PAGA penalties for

11  violations alleged to have been suffered by the PAGA Members, including those

12  pertaining to the Released Claims, as well as any Final Judgment that may be

13  entered by the Court if it grants final approval of the Settlement. In addition, any

14  Class Member who does not affirmatively opt-out of the Settlement by submitting a

15  timely and valid Request for Exclusion, will be bound by all of its terms, including

16  those pertaining to the Released Claims, as well as any Final Judgment that may be

17  entered by the Court if it grants final approval of the Settlement.

18      54.   Objection Procedures. To object to the Settlement, or any term of it,

19  the person making the objection must not submit a Request for Exclusion (*i.e.*, must

20  not opt-out), and must send the ~~Settlement Administrator~~Court a Notice of

21  Objection by the Response Deadline by U.S. Mail. The Notice of Objection must

22  be signed by the Class Member and contain all information required by this

23  Settlement Agreement. The date of transmission of the postmark date of the

24  mailing will be deemed the exclusive means for determining whether a written

25  Notice of Objection is timely. The date of the initial mailing of the Notice Packet,

26  and the date the signed Notice of Objection was postmarked, shall be conclusively

27  determined according to the records of the ~~Settlement Administrator. The~~

28  ~~Settlement Administrator shall deliver any Notice of Objections it receives to Class~~

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 15 -

CASE NO. 3:19–CV–07573–JCS

1    ~~Counsel and counsel for Freeman within five (5) calendar days of receipt.  Counsel~~

2    ~~for the Parties shall file with the Court the objections submitted by objecting Class~~

3    ~~Members, and any responses thereto at least ten (10) court days before the date of~~

4    ~~the Final Approval/Settlement Fairness Hearing.~~Court.   In addition or as an

5    alternative to a written Notice of Objection, Class Members may appear at the Final

6    Approval/Settlement Fairness Hearing to raise any objections; the Court retains

7    final authority with respect to the consideration and admissibility of any Class

8    Member Notice of Objection and any in-person objections by Class Members at the

9    Final Approval/Settlement Fairness Hearing.  Class Members who fail to object in

10   writing in accordance with the above requirements or in person at the Final

11   Approval/Settlement Fairness Hearing by the date the Court issues an order

12   granting final approval of the Settlement will be deemed to have waived all

13   objections to the Settlement and will be foreclosed from making any objections,

14   whether by appeal or otherwise, to the Settlement.  At no time will any of the

15   Parties or their counsel seek to solicit or otherwise encourage Class Members to

16   submit written objections to the Settlement or appeal from the Judgment.  To the

17   extent a timely Notice of Objection is withdrawn before final approval, such an

18   objection shall be treated as though no objection has been made.

19        55.    <u>Certification Reports Regarding Individual Settlement Payment</u>

20   <u>Calculations</u>.  The Settlement Administrator will provide counsel for Freeman and

21   Class Counsel a weekly report that: (i) certifies the number of Class Members who

22   have submitted valid Requests for Exclusion and the number of Notices of

23   Objection to the Settlement it has received to date; and (ii) states whether any Class

24   Member has submitted a challenge to any information contained in their Notice

25   Packet.  Additionally, the Settlement Administrator will provide to Class Counsel

26   and Freeman's counsel any updated reports regarding the administration of the

27   Settlement Agreement as needed or requested.

28        56.    <u>Access to Information</u>.  The Settlement Administrator will maintain all

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>AMENDED</u> JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 16 -

CASE NO. 3:19–CV–07573–JCS

1   Requests for Exclusion ~~and Notices of Objection~~ received from Class Members.

2   The Claims Administrator will provide copies to the Parties of all documents,

3   including, but not limited to the Requests for Exclusion returned by any Class

4   Member upon reasonable request, or as otherwise set forth herein.  To protect the

5   privacy of the Class Members, the Claims Administrator shall redact the private

6   personal information of the Class Members prior to providing such copies.  Private

7   personal information includes: birthdates, addresses, social security numbers, email

8   addresses, and phone numbers.

9       57.    <u>Distribution Timing of Individual Settlement Payments</u>.  Within

10  fourteen (14) calendar days after Freeman deposits the funds comprising the Gross

11  Settlement Amount into the account, per Paragraph 38 above, the Settlement

12  Administrator will issue payments to: (i) Participating Class Members (including

13  the Incentive Award to Plaintiff ); (ii) PAGA Members; (iii) the LWDA; and (iv)

14  Plaintiff's Counsel.  The Settlement Administrator will mail the PAGA Settlement

15  Cover Letter in the form attached hereto as "Exhibit C" to each PAGA Member,

16  together with a check for that PAGA Member's Individual Settlement Payment,

17  using the mailing address information provided in the PAGA List and will follow

18  the procedure outlined in paragraph 49 for confirming that contact information

19  before doing so.

20      a.   Within thirty (30) calendar days of ~~the Effective Date~~<u>Freeman</u>

21  <u>depositing the funds comprising the Gross Settlement Amount per paragraph 38,</u>

22  <u>above</u>, The Settlement Administrator will also issue a payment to itself for Court-

23  approved services performed in connection with the Settlement.  ~~Also within thirty~~

24  ~~(30) calendar days of the Effective Date~~<u>Also by that date</u>, the Settlement

25  Administrator shall provide to Freeman, for filing with the Court, a declaration

26  verifying, under oath, that it has mailed payments to each Participating Class

27  Member.

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

<u>AMENDED</u> JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01
- 17 -    CASE NO. 3:19–cv–07573–JCS

58. <u>Un-cashed Settlement Checks</u>.  The Settlement Administrator will perform a skip trace on any Individual Settlement Payment checks returned as undeliverable. Funds represented by Individual Settlement Payment checks returned as undeliverable and Individual Settlement Payment checks remaining un-cashed for more than ninety (90) calendar days after issuance of a check to any updated address due to a skip trace shall be distributed within fifteen (15) business days of the expiration of the 90-day check-cashing period by the Settlement Administrator ~~in accordance with the requirements of section 384 of the California Code of Civil Procedure.~~to the *cy pres* beneficiary approved by the Court.  The Parties propose The Impact Fund as *cy pres* beneficiary..

59. <u>Certification of Completion</u>.  No later than twenty-~~one (21~~five (25) calendar days prior to the Final Approval/Settlement Fairness Hearing, the Settlement Administrator will provide a written declaration under oath to: (i) certify completion of administration of the Notice Packets to the Court and counsel for all Parties; and (ii) provide all Settlement-related data, including the number of Class Members who submitted valid Requests for Exclusion and/or Notices of Objection to the Settlement.  Within twenty-one (21) days after the distribution of the settlement funds and payment of attorneys' fees, the Parties will file a Post-Distribution Accounting, which provides the following information:

       a.  The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees

Drinker Biddle &
Reath LLP
Attorneys at Law
San Francisco

Amended Joint Stipulation of Class and Representative Action Settlement
ACTIVE.134253109.01

- 18 -

Case No. 3:19−cv−07573−JCS

1    and costs, the attorneys' fees in terms of percentage of the settlement

2    fund, and the multiplier, if any.

3    ~~59.~~    Within 21 days after the distribution of the settlement funds and award of

4    attorneys' fees, the Settlement Administrator will post the Post-Distribution

5    Accounting on the settlement website on which the other documents related to this

6    Settlement are made available.

7        60.    Tax Treatment of Individual Settlement Payments.  All Individual

8    Settlement Payments will be allocated as follows:

9            a.    For Individual Settlement Payments to Participating Class

10               Members: (i) ten (10) percent as payment for alleged unpaid

11               wages, for which IRS Forms W-2 will be issued and (ii) ninety

12               (90) percent as payment for alleged civil and statutory penalties,

13               liquidated damages, and interest, for which IRS Forms 1099-

14               MISC will be issued.

15           b.    For Individual Settlement Payments to PAGA Members:  one

16               hundred (100) percent as payment for alleged civil and statutory

17               penalties, liquidated damages, and interest, for which IRS Forms

18               1099-MISC will be issued.

19       61.    Administration of Taxes by the Settlement Administrator.  The

20    Settlement Administrator will be responsible for issuing to Plaintiff, Participating

21    Class Members, PAGA Members, and Plaintiff's Counsel any W-2, 1099, or other

22    tax forms as may be required by law for all amounts paid pursuant to this

23    Settlement.

24       62.    Tax Liability.  Freeman makes no representation as to the tax

25    treatment or legal effect of the payments called for hereunder, and Plaintiff,

26    Participating Class Members, PAGA Members, and Class Counsel are not relying

27    on any statement, representation, or calculation by Freeman or by the Settlement

28    Administrator in this regard.  Plaintiff, Participating Class Members, PAGA

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 19 -

CASE NO. 3:19−CV−07573−JCS

1    Members, and Class Counsel understand and agree that they will be solely

2    responsible for the payment of any taxes and penalties assessed on the payments

3    described herein.

4        63.    Circular 230 Disclaimer. EACH PARTY TO THIS AGREEMENT

5    (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY"

6    AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE

7    ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES

8    AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO

9    WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG

10   THE PARTIES OR THEIR ATTORNEYS OR OTHER ADVISERS, IS OR WAS

11   INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR

12   DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON

13   AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES

14   TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS

15   AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED

16   EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL

17   AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN

18   CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO

19   THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY

20   OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER

21   PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY

22   COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER

23   TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE

24   IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY

25   OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION

26   THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S

27   OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH

28   LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 20 -

CASE NO. 3:19−cv−07573−JCS

1  ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX

2  STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION

3  CONTEMPLATED BY THIS AGREEMENT.

4       64.   California Labor Code Section 206.5.  In consideration of Freeman's

5  payment of the sums provided herein, each and every Participating Class Member

6  will be deemed to have also acknowledged and agreed that California Labor Code

7  section 206.5 is not applicable to any Participating Class Member because there is a

8  good faith dispute as to whether any wages are due at all to any such Participating

9  Class Member.

10       65.   No Prior Assignments.  The Parties and their counsel represent,

11  covenant, and warrant that they have not directly or indirectly assigned, transferred,

12  encumbered, or purported to assign, transfer, or encumber to any person or entity

13  any portion of any liability, claim, demand, action, cause of action or right herein

14  released and discharged.

15       66.   Nullification of Settlement Agreement.  In the event that (a) the Court

16  does not finally approve the Settlement as provided herein or (b) the Settlement

17  does not become final for any other reason, then this Settlement Agreement, and

18  any documents generated to bring it into effect, will be null and void.  Any order or

19  Judgment entered by the Court in furtherance of this Settlement Agreement will

20  likewise be treated as void from the beginning. In the event Final Approval is not

21  granted, Defendant will be responsible for paying any fees incurred by the

22  Settlement Administrator.

23       67.   Preliminary Approval.  Within thirty (30) days after execution of this

24  Settlement Agreement by all Parties, Class Counsel shall file (and set for hearing at

25  the earliest available date) a motion for an order: (a) preliminarily approving this

26  Settlement; (b) concluding that the Settlement Class meets the prerequisites for

27  class certification for settlement purposes only; (c) approving the Notice Packet to

28  be provided to the Settlement Class; (d) establishing a procedure for the Settlement

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 21 -

CASE NO. 3:19−cv−07573−JCS

1  Class to request exclusion or object; (e) setting a date for a Final

2  Approval/Settlement Fairness Hearing; and (f) enjoining Class Members from

3  filing, initiating, or continuing to prosecute any actions, claims, complaints, or

4  proceedings in Court, with the LWDA or with any other entity or in any other

5  forum regarding the Released Claims.  In conjunction with the Preliminary

6  Approval hearing, Plaintiff will submit this Settlement Agreement, which sets forth

7  the terms of this Settlement, and will include the proposed Notice Packet, which

8  will include both the proposed Notice of Class Action Settlement document and the

9  proposed Mailing Envelope, attached as Exhibits A1 or A2 (whichever is

10  appropriate) and Exhibit B, respectively, as well as the proposed PAGA Settlement

11  Cover Letter, attached as Exhibit C.  Prior to moving for Preliminary Approval,

12  Class Counsel shall share the draft motion with Freeman's counsel and provide

13  Freeman ten (10) days to review and propose revisions.

14        68.  <u>Final Settlement Approval Hearing and Entry of Judgment</u>.  Upon

15  expiration of the deadlines to postmark Requests for Exclusion and/or Notices of

16  Objection to the Settlement, and with the Court's permission, a Final

17  Approval/Settlement Fairness Hearing will be conducted to determine the final

18  approval of the Settlement along with the amounts properly payable for:  (i)

19  Individual Settlement Payments; (ii) the Incentive Award to Plaintiff; (iii)

20  Attorneys' Fees and Costs; (iv) the LWDA Payment; and (v) all Settlement

21  Administration Costs.  The Final Approval/Settlement Fairness Hearing will not be

22  held any earlier than thirty (30) calendar days after the Response Deadline.  Class

23  Counsel will be responsible for drafting all documents necessary to obtain final

24  approval.  Class Counsel will also be responsible for drafting the attorneys' fees

25  and costs application to be heard at the Final Approval/Settlement Fairness

26  Hearing. <u>The Motion for Final Approval must be filed after the parties have</u>

27  <u>received the Settlement Administrator's report and the Response Deadline has</u>

28  <u>passed, but no later than fourteen (14) calendar days prior to the Final</u>

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 22 -

CASE NO. 3:19–cv–07573–JCS

1    Approval/Settlement Fairness Hearing.  Per the Court's instruction, any motion for

2    Attorneys' Fees and Costs must be filed at least thirty-five (35) days before the

3    Response Deadline.

4         69.   Final Judgment and Continued Jurisdiction.  At the Final

5    Approval/Settlement Fairness Hearing, Class Counsel shall petition the Court to

6    enter an order in the Action, which shall include a dismissal of the Action by

7    Plaintiff and Participating Class Members, with prejudice, and declare that Plaintiff,

8    all Participating Class Members and the LWDA (with respect to the claims for

9    PAGA penalties asserted in the Complaint for violations suffered by the PAGA

10   Members) are bound by the release of claims described in the Notice Packet and

11   herein.  Prior to petitioning the Court, Class Counsel shall share the draft order with

12   Freeman' counsel and provide Freeman ten (10) business days to review and

13   propose revisions.  After entry of Judgment, the Court will have continuing

14   jurisdiction solely for purposes of addressing:  (i) the interpretation and

15   enforcement of the terms of the Settlement, (ii) Settlement administration matters,

16   and (iii) such post-Judgment matters as may be appropriate under court rules, the

17   Code of Civil Procedure, and/or as set forth in this Settlement Agreement.

18        70.   Releases by Plaintiff and by Participating Class Members.  Upon the

19   Effective Date: (i)  Plaintiff, all Participating Class Members, and the LWDA (with

20   respect to the claims for PAGA penalties for Labor Code and Wage Order

21   violations suffered by the PAGA Members as alleged in the Complaint) will be

22   deemed to have expressly waived and relinquished, to the fullest extent permitted

23   by law, any and all of the Released Claims against any and all of the Released

24   Parties; and (ii) Plaintiff will be deemed to have expressly waived and relinquished,

25   to the fullest extent permitted by law, the provisions, rights, and benefits of Section

26   1542 of the California Civil Code, which provides:

27            A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

28             THAT THE CREDITOR OR RELEASING PARTY DOES

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 23 -

CASE NO. 3:19−cv−07573−JCS

1   NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

2   FAVOR AT THE TIME OF EXECUTING THE RELEASE

3   AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE

4   MATERIALLY AFFECTED HIS OR HER SETTLEMENT

5   WITH THE DEBTOR OR RELEASED PARTY.

6       Plaintiff agrees not to sue or otherwise make a claim against any of the

7   Released Parties for the Released Claims after the Effective Date.  In addition, as to

8   Plaintiff only, the Released Claims shall also include any and all claims, known and

9   unknown, under any local, state, or federal law, in tort, common law, or contract,

10  whether pleaded in the Complaints or not, except any pending Workers'

11  Compensation claims and any other claims that cannot be released as a matter of

12  law ("Plaintiff's General Release").

13      71.   <u>Exhibits Incorporated by Reference</u>.  The terms of this Settlement

14  Agreement include the terms set forth in any attached Exhibits, which are

15  incorporated by this reference as though fully set forth herein.  Any Exhibits to this

16  Settlement Agreement are an integral part of the Settlement.

17      72.   <u>Headings</u>.  The descriptive headings of any paragraphs or sections of

18  the Settlement Agreement are inserted for convenience of reference only and do not

19  constitute a part of this Agreement.

20      73.   <u>Entire Agreement</u>.  This Settlement Agreement and any attached

21  Exhibits constitute the entirety of the Parties' settlement terms.  No other prior or

22  contemporaneous written or oral agreements may be deemed binding on the Parties.

23  The Parties expressly recognize California Civil Code Section 1625 and California

24  Code of Civil Procedure Section 1856(a), which provide that a written agreement is

25  to be construed according to its terms and may not be varied or contradicted by

26  extrinsic evidence, and the Parties agree that no such extrinsic oral or written

27  representations or terms will modify, vary, or contradict the terms of this Settlement

28  Agreement.

Drinker Biddle &
Reath LLP
Attorneys at Law
San Francisco

Amended Joint Stipulation of Class and
Representative Action Settlement
ACTIVE.134253109.01

- 24 -

Case No. 3:19-cv-07573-JCS

1    74.    <u>Amendment or Modification</u>.  No amendment, change, or modification

2    to this Settlement Agreement will be valid unless in writing and signed, either by

3    the Parties or their counsel.

4    75.    <u>Authorization to Enter Into Settlement Agreement</u>.  Counsel for all

5    Parties warrant and represent they are expressly authorized by the Parties whom

6    they represent to negotiate this Settlement Agreement and to take all appropriate

7    actions required or permitted to be taken by such Parties pursuant to this Settlement

8    Agreement to effectuate its terms and to execute any other documents required to

9    effectuate the terms of this Settlement.  The Parties and their counsel will cooperate

10   with each other and use their best efforts to effect the implementation of the

11   Settlement and to promote and encourage 100% participation among the Class

12   Members.  If the Parties are unable to reach agreement on the form or content of

13   any document needed to implement the Settlement, or on any supplemental

14   provisions that may become necessary to effectuate the terms of this Settlement, the

15   Parties may seek the assistance of the Court to resolve such disagreement.

16   76.    <u>Binding on Successors and Assigns</u>.  This Settlement Agreement will

17   be binding upon, and inure to the benefit of, the successors or assigns of the Parties

18   hereto, as previously defined.

19   77.    <u>California Law Governs</u>.  All terms of this Settlement Agreement will

20   be governed by and interpreted according to the laws of the State of California,

21   without regard to choice of law principles, and/or, with respect to procedural

22   matters, federal law.

23   78.    <u>Execution in Counterparts</u>.  This Settlement Agreement is subject only

24   to the execution of all Parties.  However, the Settlement Agreement may be

25   executed in one or more counterparts, including via electronic signature via

26   DocuSign, Adobe Sign, and/or other similar e-signature services.  All executed

27   counterparts and each of them, including facsimile and scanned portable document

28   format ("PDF") copies of the signature page, will be deemed to be one and the

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 25 -

CASE NO. 3:19−cv−07573−JCS

same instrument.  A facsimile or PDF copy shall be considered an original for all purposes.

79.  <u>Acknowledgement that the Settlement is Fair and Reasonable</u>.  The Parties and their respective counsel believe this Settlement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential.

80.  <u>Invalidity of Any Provision</u>.  Before declaring any provision of this Settlement Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement Agreement valid and enforceable.

81.  <u>Waiver of Certain Appeals</u>.  The Parties agree to waive appeals; except, however, that Plaintiff or Class Counsel may appeal any reduction to the Attorneys' Fees and Costs below the amount they request from the Court, and either party may appeal any court order that materially alters the Settlement Agreement's terms.

82.  <u>Interim Stay of Proceedings</u>.  The Parties agree that all proceedings in the Action shall be stayed, except such proceedings necessary to implement and complete the Settlement, pending completion of the hearings referenced herein.

83.  <u>Notice To Counsel</u>.  All notices, requests, demands, and other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered (i) personally or (ii) mailed, postage prepaid, by first-class U.S. Mail with a concurrent copy by email, to the undersigned persons at their respective addresses as set forth herein:

| <u>Class Counsel</u> | <u>Counsel for Freeman</u> |
|---|---|
| Richard A. Hoyer, Esq. | Cheryl D. Orr, Esq. |
| Ryan L. Hicks, Esq. | Faegre Drinker Biddle & Reath LLP |
| Hoyer & Hicks | Four Embarcadero Center |
| Four Embarcadero Center | |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 26 -

CASE NO. 3:19-cv-07573-JCS

Suite 1400
San Francisco, CA  94111
rhoyer@hoyerlaw.com
rhicks@hoyerlaw.com

27th Floor
San Francisco, CA  94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
Cheryl.Orr@dbr.com

84.   Non-Admission of Liability.  The Parties enter into this Settlement to resolve the dispute that has arisen between them and to avoid the burden, expense, and risk of continued litigation.  In entering into this Settlement, Freeman does not admit – and in fact specifically denies – that it violated any federal, state, or local law; violated any common law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations, or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to its employees.  Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, will be construed as an admission or concession by Freeman of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Settlement, this Settlement Agreement and its terms and provisions will not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Freeman or to establish the existence of any condition constituting a violation of, or non-compliance with, federal, state, local, or other applicable law.

85.   Option to Rescind the Settlement Agreement.  Freeman may elect to rescind the Settlement if ten percent (10%) or more of the Class Members submit timely Requests for Exclusion and do not rescind them by the Response Deadline.  If Freeman wishes to exercise its conditional right to rescind, it must do so by written communication to Class Counsel that is received by Class Counsel within seventeen (17) calendar days of the Response Deadline.  In the event that Freeman

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 27 -

CASE NO. 3:19−cv−07573−JCS

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

exercises this conditional right to rescind, the Parties will be restored to their litigation positions as of June 22, 2021, except that all deadlines and/or hearings pending as of June 22, 2021 will be rescheduled to afford the Parties sufficient time to resume litigation.  Furthermore, in the event that Freeman exercises its conditional right to rescind, Freeman will be responsible for all Settlement Administration Costs incurred up to the date of rescission.

86.    Excluded Class Members.  Any Class Member who, through a settlement agreement with Freeman or any of the Released Parties that was executed prior to the date of Preliminary Approval, released the claims at issue in the Action for the entire Class Period will: (i) not be included in the Class; (ii) be excluded from the settlement payment calculations discussed herein; and (iii) not be entitled to notice (including a Notice Packet) as provided herein.  Any release that does not encompass the entire Class Period requires the claims of such individuals to be limited to the time which is unaffected by the prior settlement(s).

87.    No Publicity.  Except as provided herein or ordered by the Court, the Parties and their counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry, or have any communication with the press about the fact, amount, or terms of the Settlement.; Class Counsel shall do nothing to publicize this Settlement or use it for marketing purposes, including on websites or on the Internet.

88.    Waiver.  No waiver of any condition or covenant contained in this Settlement Agreement or failure to exercise a right or remedy by any of the Parties hereto will be considered to imply or constitute a further waiver by such party of the same or any other condition, covenant, right, or remedy.

89.    Enforcement Actions.  In the event that one or more of the Parties institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties will be entitled to recover

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01                              - 28 -              CASE NO. 3:19-CV-07573-JCS

1  from the unsuccessful Party or Parties reasonable attorneys' fees and costs,

2  including expert witness fees, incurred in connection with any enforcement actions.

3       90.    Mutual Preparation.  The Parties have had a full opportunity to

4  negotiate the terms and conditions of this Settlement Agreement.  Accordingly, this

5  Settlement Agreement will not be construed more strictly against one party than

6  another merely by virtue of the fact that it may have been prepared by counsel for

7  one of the Parties, it being recognized that, because of the arm's-length negotiations

8  between the Parties, all Parties have contributed to the preparation of this

9  Settlement Agreement.

10      91.    Representation By Counsel.  The Parties acknowledge that they have

11 been represented by counsel throughout all negotiations that preceded the execution

12 of this Settlement Agreement, and that this Settlement Agreement has been

13 executed with the consent, recommendation, and advice of counsel.  Further,

14 Plaintiff and Class Counsel warrant and represent that there are no liens on the

15 Settlement Agreement.

16      92.    All Terms Subject to Final Court Approval.  All amounts and

17 procedures described in this Settlement Agreement will be subject to final Court

18 approval.

19      93.    Cooperation and Execution of Necessary Documents.  All Parties will

20 cooperate in good faith and execute all documents to the extent reasonably

21 necessary to effectuate the terms of this Settlement Agreement.

22      94.    Binding Agreement.  The Parties warrant that they understand and

23 have full authority to enter into this Settlement Agreement, and further intend that

24 this Settlement Agreement will be fully enforceable and binding on all Parties, and

25 agree that it will be admissible and subject to disclosure in any proceeding to

26 enforce its terms, notwithstanding any mediation confidentiality provisions that

27 otherwise might apply under federal or state law.  Plaintiff agrees that, by signing

28 this Settlement Agreement, they are bound by the terms herein stated and further

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01                      - 29 -        CASE NO. 3:19‑CV‑07573–JCS

1    agree not to request to be excluded from the Settlement and further warrant and

2    represent that they have no objection to any of the terms of this Settlement.  Any

3    attempt by Plaintiff to opt-out of the Settlement or otherwise not comply with this

4    Settlement Agreement shall be deemed void and of no force or effect. Any such

5    request for exclusion shall therefore be void and of no force or effect.

6                **[remainder of page intentionally left blank]**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 30 -

CASE NO. 3:19–CV–07573–JCS

1

## <u>READ CAREFULLY BEFORE SIGNING</u>

2

3
The Parties hereby agree to and execute this Joint Stipulation of Class and Representative Action Settlement.

4
**PLAINTIFF**

5

6
Dated: _____        _____
Teresa Landucci

7

8
**Freeman Expositions, LLC**

9

10
Dated: _____        _____
Name: _____

11
Title:_____

12

## <u>APPROVED AS TO FORM</u>

13

14
**HOYER & HICKS**

15

16
Dated: _____        By:_____
Richard A. Hoyer

17
Ryan L. Hicks
Attorney for Teresa Landucci

18

19

20
**FAEGRE DRINKER BIDDLE & REATH LLP**

21

22
Dated: _____        By:_____
Cheryl D. Orr, Esq.

23
Attorney for Freeman Expositions, LLC

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED JOINT STIPULATION OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT
ACTIVE.134253109.01

- 31 -

CASE NO. 3:19−CV−07573−JCS

# EXHIBIT A1

## NOTICE OF CLASS ACTION SETTLEMENT
*A court authorized this Notice. This is not a solicitation by a lawyer. You are not being sued.*

### Why should you read this Notice?

A proposed settlement (the "Settlement") has been reached in the class action lawsuit entitled *Teresa Landucci v. Freeman Expositions, LLC*, United States District Court for the Northern District of California, Case No. 19-07573-JCS (the "Action"). The purpose of this Notice of Class Action Settlement ("Notice") is to briefly describe the case, and to inform you of your rights and options in connection with the Action and the proposed Settlement. The proposed Settlement will resolve all claims in the Action.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | If you do nothing, you will be considered part of the Settlement Class and will receive settlement benefits. You will also give up your rights to pursue a separate legal action against Freeman Expositions, LLC ("Defendant") for the claims released under the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may have the option to pursue separate legal action against Defendant about the claims in this lawsuit. If you choose to do so, you must exclude yourself, in writing, from the Settlement. However, if you do so, you will not receive any payment under the Settlement. |
| **OBJECT** | To object to the Settlement, you must write to the Settlement Administrator about why you don't like the Settlement, or appear at the Final Approval Hearing. This option is available only if you do not exclude yourself from the Settlement. |

### Who is affected by this proposed Settlement?

The Court has certified, for settlement purposes only, the following Class:

> All non-exempt employees of Defendant who received paper paychecks from Defendant and against whom Bank of America assessed a non-customer check cashing fee when cashing at least one such paper paycheck during the time period of November 18, 2015 through _____.

According to Defendant's and Third-Party Bank of America's records, you are a member of the Class (a "Class Member").

### What is this case about?

In the Action, Plaintiff alleges on behalf of herself and the Class the following claims against Defendant: (1) unlawfully withheld wages in violation of California Labor Code § 212, in the form of check cashing fees; (2) waiting time penalties pursuant to California Labor Code §§ 201-203 stemming from the unlawfully withheld wages in the form of check cashing fees; (3) Unfair business practices (Cal. Bus. and Profs. Code § 17200, *et seq.*); and (4) violation of California Private Attorneys' General Act ("PAGA") ("PAGA claim"), California Labor Code § 2699 *et seq.*, predicated on the violations of the California Labor Code alleged in the Second Amended Complaint and operative complaint ("Complaint").

Defendant denies any and all wrongdoing and liability, and maintains that it has complied with all laws alleged to have been violated in the Complaint. Defendant notes that this Settlement was established specifically to avoid the cost of proceeding with litigation and does not constitute an admission of liability

by Defendant. The Court has not ruled on the merits of Plaintiff's claims or Defendant's defenses; however, the Court has granted preliminary approval of this Settlement.

This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiff and Defendant (the "Parties"), through their attorneys. Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable. Plaintiff and Class Counsel believe this Settlement is in the best interests of the Class.

### *Who are the attorneys in this Lawsuit?*

**Class Counsel**

**HOYER & HICKS**
Richard A. Hoyer
Ryan L. Hicks
Four Embarcadero Center
Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3539

**Defendant's Counsel**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Cheryl D. Orr
Four Embarcadero Center
27th Floor
San Francisco, California 94111
Telephone: (415) 591-7500

### *What will I receive under the Settlement?*

Subject to final Court approval, Defendant will pay $500,000 (the "Gross Settlement Amount"). It is estimated that, subject to Court approval, after deducting the attorney's fees and costs, a service award to Plaintiff, payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, and settlement administration costs from Gross Settlement Amount, there will be a Net Settlement Amount of at least $--------.

From this Net Settlement Amount, Individual Settlement Payments will be paid to (1) each Class Member who does not opt out of the Settlement Class ("Participating Class Member") and (2) each non-exempt employee of Defendant who received paper paychecks from Defendant at any time between November 18, 2018 and _____ ("PAGA Member").  All PAGA Members make up the "PAGA Collective."

According to Defendant's and Bank of America's records, during the period from November 18, 2015 through _____, you were assessed a non-customer check cashing fee on at least one occasion when cashing a paper paycheck issued by Defendant at a Bank of America branch in California as a non-exempt employee.  You are therefore a Class Member.

Based on the size of the Class, your settlement payment as a Participating Class Member is estimated to be $_____.

Your settlement payment is only an estimate. Your actual settlement payment may be higher or lower than estimated.

### *When and how will I receive payment?*

If the Court grants final approval of the Settlement, and only after the Effective Date of the Settlement defined below, the Settlement Administrator will send you a settlement check. The settlement approval process takes time so please be patient.

Any and all settlement checks mailed to you under the Settlement shall remain negotiable for 90 days. If you do not negotiate (e.g. cash or deposit) a settlement check within this time period, you will be unable to receive those funds, but you will remain bound by the terms of the Settlement. The funds from any uncashed checks will be distributed to The Impact Fund (www.impactfund.org), a non-profit organization approved by the Court.

-2-

The settlement payment check issued to you will be allocated as 10% for unpaid wages and 90% for penalties and interest. None of the Parties or attorneys make any representations concerning the tax implications of this payment. Participating Class Members may wish to consult with their own tax advisors concerning the tax consequences of the Settlement.

### How will the lawyers be paid and how will other funds under the Settlement be distributed?

Class Counsel will ask the Court to award attorneys' fees up to $166,666.67 (1/3 of the Gross Settlement Amount) and reimbursement of reasonable litigation costs they advanced. In addition, Class Counsel will ask the Court to authorize a Class Representative Incentive Award payment of up to $10,000.00 to Plaintiff for her efforts in representing the Class. The cost of administering the Settlement will not exceed $25,000.00. A payment in the amount of $56,250.00 will also be made to the LWDA for PAGA penalties. Any of these amounts not awarded by the Court will be included in the Net Settlement Amount and will be distributed to Participating Class Members equally, less $18,750.00, which will be distributed to PAGA Members equally.

### What claims are being released by the proposed Settlement?

As of the Effective Date, Participating Class Members shall fully and finally release and discharge Released Parties, from November 18, 2015 through _____, from any and all claims, rights, demands, liabilities, and causes of action which accrued from November 18, 2015 through _____, and which were or could have been alleged based on the same facts alleged in the Complaint regarding the imposition of check cashing fees, whether known or unknown, contingent or accrued, including but not limited to (i) claims for failure to timely pay wages upon termination of employment (California Labor Code §§ 201-203); (ii) claims for unpaid wages as a result of check cashing fees derived from California Labor Code § 212, and (iii) claims for violations of California Business & Professions Code § 17200, *et seq.* based on the facts alleged in the Complaint.

Also, if the proposed settlement is finally approved by the Court the LWDA will release its right to recover civil penalties from Defendant for Labor Code or Wage Order violations suffered by any of the PAGA Members during the PAGA Period (regardless of whether they opt-out of the class action settlement) and which are premised upon the facts and allegations in the Complaint.

The Effective Date is the date on which the District Court's Final Approval Order and Judgment becomes final. The District Court's Final Approval Order and Judgment "becomes final" upon the latter of: (1) the date of final affirmance on an appeal of the Judgment; (2) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (3) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.

### What are my options?

You have two options under this Settlement. You may: (A) remain in the Class and receive payment under the Settlement; or (B) exclude yourself from the Settlement. If you choose option (A), you may also object to the Settlement.

**OPTION A.  Remain in the Class**.  If you remain in the Class, you will be represented by Class Counsel. If you wish to remain in the Class and be eligible to receive a payment under the Settlement, you do *not* need to take any action. By remaining in the Class and receiving settlement monies, you consent to the release of the Released Claims as described above.

**OPTION B.  If You Do Not Want To Be Bound By The Settlement.**  If you do not want to be part of the Settlement, you must mail a Request for Exclusion to the Settlement Administrator at _____. In order to be valid, your Request for Exclusion must: (1) contain your full name, address, and telephone number, the last four digits of your Social Security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; and (3) contain a clear statement that you are electing to be excluded from this Settlement or wish to opt-out from this Settlement. In order to be timely, your Request for Exclusion must be postmarked on or before

_____. If you do not submit a valid and timely Request for Exclusion, your Request for Exclusion will be rejected, you will be deemed a member of the Settlement Class, and you will be bound by the release of Released Claims as described above. If you submit a valid and timely Request for Exclusion, you will not be entitled to any benefit as a result of the Settlement, but you will preserve all of the legal claims asserted in this Action against Defendant.

**Objecting to the Settlement**: If you believe the proposed Settlement is not fair, reasonable or adequate in any way, you may object to it. To object, you must mail to the ~~Settlement Administrator~~Court at_____, a written notice of objection. In order to be valid, the Objection must: (1) contain your full name, date of birth, address, and telephone number, the last four digits of your social security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; (3) contain a written statement of all grounds for the objection accompanied by any legal support for such objection (if any); (4) contain copies of any papers, briefs, or other documents upon which the objection is based (if any); and (5) state whether you intend to appear at the final approval/settlement fairness hearing. In order to be timely, the Objection must be postmarked on or before _____. ~~Class Counsel will provide the Court with your Objection prior to the final approval hearing.~~You can also hire an attorney at your own expense to represent you in your Objection. Even if you do not submit a written objection you may appear and make an objection at the Final Approval Hearing.

**You cannot object to the Settlement if you request exclusion from the Settlement.**

### *What is the next step in the approval of the Settlement?*

The Court will hold a final approval hearing regarding the fairness, reasonableness and adequacy of the proposed Settlement and the plan of distribution of the payments described herein, on _____ in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102. The final approval hearing will be held via Zoom, and information as to how to appear via zoom can be found at https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/ on the Court's website. The final approval hearing may be continued without further notice to Class Members. You are not required to attend the Final Approval Hearing in order to receive payment under the Settlement.

### *How can I get additional information?*

This ~~Notice~~notice summarizes the ~~Action and~~ proposed settlement. For ~~the basic~~precise terms and conditions of the ~~Settlement. For more complete information,~~settlement, please see the ~~pleadings and other records~~settlement agreement available at www._____.com, by contacting class counsel at 415.766.3536, by accessing the Court docket in this ~~litigation may be examined during regular court hours at~~case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California~~.~~, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT ~~**CALL OR WRITE**~~TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS ~~**NOTICE**~~SETTLEMENT OR THE CLAIM PROCESS.

EXHIBIT A2

## NOTICE OF CLASS ACTION SETTLEMENT
*A court authorized this Notice. This is not a solicitation by a lawyer. You are not being sued.*

### Why should you read this Notice?

A proposed settlement (the "Settlement") has been reached in the class action lawsuit entitled *Teresa Landucci v. Freeman Expositions, LLC*, United States District Court for the Northern District of California, Case No. 19-07573-JCS (the "Action"). The purpose of this Notice of Class Action Settlement ("Notice") is to briefly describe the case, and to inform you of your rights and options in connection with the Action and the proposed Settlement. The proposed Settlement will resolve all claims in the Action.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | If you do nothing, you will be considered part of the Settlement Class and will receive settlement benefits. You will also give up your rights to pursue a separate legal action against Freeman Expositions, LLC ("Defendant") for the claims released under the Settlement. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may have the option to pursue separate legal action against Defendant about the claims in this lawsuit. If you choose to do so, you must exclude yourself, in writing, from the Settlement. However, if you do so, you will not receive any payment under the Settlement, except for the payment related to the resolution of the PAGA claim (see below). |
| **OBJECT** | To object to the Settlement, you must write to the Settlement Administrator about why you don't like the Settlement, or appear at the Final Approval Hearing. This option is available only if you do not exclude yourself from the Settlement. |

### Who is affected by this proposed Settlement?

The Court has certified, for settlement purposes only, the following Class:

> All non-exempt employees of Defendant who received paper paychecks from Defendant and against whom Bank of America assessed a non-customer check cashing fee when cashing at least one such paper paycheck during the time period of November 18, 2015 through _____.

According to Defendant's and Third-Party Bank of America's records, you are a member of the Class (a "Class Member").

### What is this case about?

In the Action, Plaintiff alleges on behalf of herself and the Class the following claims against Defendant: (1) unlawfully withheld wages in violation of California Labor Code § 212, in the form of check cashing fees; (2) waiting time penalties pursuant to California Labor Code §§ 201-203 stemming from the unlawfully withheld wages in the form of check cashing fees; (3) Unfair business practices (Cal. Bus. and Profs. Code § 17200, *et seq.*); and (4) violation of California Private Attorneys' General Act ("PAGA") ("PAGA claim"), California Labor Code § 2699 *et seq.*, predicated on the violations of the California Labor Code alleged in the Second Amended Complaint and operative complaint ("Complaint").

Defendant denies any and all wrongdoing and liability, and maintains that it has complied with all laws alleged to have been violated in the Complaint. Defendant notes that this Settlement was established specifically to avoid the cost of proceeding with litigation and does not constitute an admission of liability

by Defendant. The Court has not ruled on the merits of Plaintiff's claims or Defendant's defenses; however, the Court has granted preliminary approval of this Settlement.

This Settlement is a compromise reached after good faith, arm's length negotiations between Plaintiff and Defendant (the "Parties"), through their attorneys. Both sides agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate and reasonable. Plaintiff and Class Counsel believe this Settlement is in the best interests of the Class.

## *Who are the attorneys in this Lawsuit?*

**Class Counsel**

**HOYER & HICKS**
Richard A. Hoyer
Ryan L. Hicks
Four Embarcadero Center
Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3539

**Defendant's Counsel**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Cheryl D. Orr
Four Embarcadero Center
27th Floor
San Francisco, California 94111
Telephone: (415) 591-7500

## *What will I receive under the Settlement?*

Subject to final Court approval, Defendant will pay $500,000 (the "Gross Settlement Amount"). It is estimated that, subject to Court approval, after deducting the attorney's fees and costs, a service award to Plaintiff, payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, and settlement administration costs from Gross Settlement Amount, there will be a Net Settlement Amount of at least $--------.

From this Net Settlement Amount, Individual Settlement Payments will be paid to (1) each Class Member who does not opt out of the Settlement Class ("Participating Class Member") and (2) each non-exempt employee of Defendant who received paper paychecks from Defendant at any time between November 18, 2018 and _____ ("PAGA Member"). All PAGA Members make up the "PAGA Collective."

According to Defendant's and Bank of America's records, during the period from November 18, 2015 through _____, you were assessed a non-customer check cashing fee on at least one occasion when cashing a paper paycheck issued by Defendant at a Bank of America branch in California as a non-exempt employee. You are therefore a Class Member.

According to Defendant's records, during the period from November 18, 2018 and _____, you received a paper paycheck from Defendant on at least one occasion. You are therefore also a PAGA Member.

Based on the size of the Class, your settlement payment as a Participating Class Member is estimated to be $_____. Based on the size of the PAGA Collective, your settlement payment as a PAGA Member is estimated to be $_____ ("PAGA Payment").

Your settlement payment is only an estimate. Your actual settlement payment may be higher or lower than estimated.

## *When and how will I receive payment?*

If the Court grants final approval of the Settlement, and only after the Effective Date of the Settlement defined below, the Settlement Administrator will send you a settlement check. The settlement approval process takes time so please be patient.

-2-

Any and all settlement checks mailed to you under the Settlement shall remain negotiable for 90 days. If you do not negotiate (e.g. cash or deposit) a settlement check within this time period, you will be unable to receive those funds, but you will remain bound by the terms of the Settlement. The funds from any uncashed checks will be distributed to The Impact Fund (www.impactfund.org), a non-profit organization approved by the Court.

The settlement payment check issued to you will be allocated as 10% for unpaid wages and 90% for penalties and interest. None of the Parties or attorneys make any representations concerning the tax implications of this payment. Participating Class Members may wish to consult with their own tax advisors concerning the tax consequences of the Settlement.

### *How will the lawyers be paid and how will other funds under the Settlement be distributed?*

Class Counsel will ask the Court to award attorneys' fees up to $166,666.67 (1/3 of the Gross Settlement Amount) and reimbursement of reasonable litigation costs they advanced. In addition, Class Counsel will ask the Court to authorize a Class Representative Incentive Award payment of up to $10,000.00 to Plaintiff for her efforts in representing the Class. The cost of administering the Settlement will not exceed $25,000.00. A payment in the amount of $56,250.00 will also be made to the LWDA for PAGA penalties. Any of these amounts not awarded by the Court will be included in the Net Settlement Amount and will be distributed to Participating Class Members equally, less $18,750.00, which will be distributed to PAGA Members equally.

### *What claims are being released by the proposed Settlement?*

As of the Effective Date, Participating Class Members shall fully and finally release and discharge Released Parties, from November 18, 2015 through _____, from any and all claims, rights, demands, liabilities, and causes of action which accrued from November 18, 2015 through _____, and which were or could have been alleged based on the same facts alleged in the Complaint regarding the imposition of check cashing fees, whether known or unknown, contingent or accrued, including but not limited to (i) claims for failure to timely pay wages upon termination of employment (California Labor Code §§ 201-203); (ii) claims for unpaid wages as a result of check cashing fees derived from California Labor Code § 212, and (iii) claims for violations of California Business & Professions Code § 17200, *et seq.* based on the facts alleged in the Complaint.

Also, if the proposed settlement is finally approved by the Court the LWDA will release its right to recover civil penalties from Defendant for Labor Code or Wage Order violations suffered by any of the PAGA Members during the PAGA Period (regardless of whether they opt-out of the class action settlement) and which are premised upon the facts and allegations in the Complaint.

The Effective Date is the date on which the District Court's Final Approval Order and Judgment becomes final. The District Court's Final Approval Order and Judgment "becomes final" upon the latter of: (1) the date of final affirmance on an appeal of the Judgment; (2) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (3) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment.

### *What are my options?*

You have two options under this Settlement. You may: (A) remain in the Class and receive payment under the Settlement; or (B) exclude yourself from the Settlement. If you choose option (A), you may also object to the Settlement.

**OPTION A.  Remain in the Class.**  If you remain in the Class, you will be represented by Class Counsel. If you wish to remain in the Class and be eligible to receive a payment under the Settlement, you do *not* need to take any action. By remaining in the Class and receiving settlement monies, you consent to the release of the Released Claims as described above.

**OPTION B.  If You Do Not Want To Be Bound By The Settlement.**  If you do not want to be part of the Settlement, you must mail a Request for Exclusion to the Settlement Administrator at ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. In order to be valid, your Request for Exclusion must: (1) contain your full name, address, and telephone number, the last four digits of your Social Security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; and (3) contain a clear statement that you are electing to be excluded from this Settlement or wish to opt-out from this Settlement. In order to be timely, your Request for Exclusion must be postmarked on or before ⬛⬛⬛⬛. If you do not submit a valid and timely Request for Exclusion, your Request for Exclusion will be rejected, you will be deemed a member of the Settlement Class, and you will be bound by the release of Released Claims as described above. If you submit a valid and timely Request for Exclusion, you will not be entitled to any benefit as a result of the Settlement, but you will preserve all of the legal claims asserted in this Action against Defendant. However, regardless of whether you timely return a properly completed Request for Exclusion (as described above), you will still receive the PAGA Payment, as you have been deemed a PAGA Member.

**Objecting to the Settlement**:  If you believe the proposed Settlement is not fair, reasonable or adequate in any way, you may object to it. To object, you must mail to the ~~Settlement Administrator~~Court at ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛, a written notice of objection. In order to be valid, the Objection must: (1) contain your full name, date of birth, address, and telephone number, the last four digits of your social security number, and be signed by you (or your legal representative if you have one); (2), contain the case name and case number; (3) contain a written statement of all grounds for the objection accompanied by any legal support for such objection (if any); (4) contain copies of any papers, briefs, or other documents upon which the objection is based (if any); and (5) state whether you intend to appear at the final approval/settlement fairness hearing. In order to be timely, the Objection must be postmarked on or before ⬛⬛⬛⬛. ~~Class Counsel will provide the Court with your Objection prior to the final approval hearing.~~ You can also hire an attorney at your own expense to represent you in your Objection. Even if you do not submit a written objection you may appear and make an objection at the Final Approval Hearing.

**You cannot object to the Settlement if you request exclusion from the Settlement.**

### What is the next step in the approval of the Settlement?

The Court will hold a final approval hearing regarding the fairness, reasonableness and adequacy of the proposed Settlement and the plan of distribution of the payments described herein, on ⬛⬛⬛⬛ in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102. The final approval hearing will be held via Zoom, and information as to how to appear via zoom can be found at https://www.cand.uscourts.gov/judges/spero-joseph-c-jcs/ on the Court's website.  The final approval hearing may be continued without further notice to Class Members. You are not required to attend the Final Approval Hearing in order to receive payment under the Settlement.

### How can I get additional information?

This ~~Notice~~notice summarizes the ~~Action and~~ proposed settlement. For ~~the basic~~precise terms and conditions of the ~~Settlement. For more complete information,~~settlement, please see the ~~pleadings and other records~~settlement agreement available at www.⬛⬛⬛⬛.com, by contacting class counsel at 415.766.3536, by accessing the Court docket in this ~~litigation may be examined during regular court hours at~~case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California~~.~~, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT ~~CALL OR WRITE~~TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS ~~NOTICE~~SETTLEMENT OR THE CLAIM PROCESS.

EXHIBIT B

**Case Name**
P.O. Box 26170
Santa Ana, CA 92799-9834

PRESORTED
FIRST-CLASS MAIL
US POSTAGE
PAID
SIMPLURIS INC

«IMbFullBarcodeEncoded»

SIMID «SIMID»
«Barcode_Encoded_112782»

«FirstName» «LastName»
«Address1» «Address2»
«City», «State»  «Zip»-«ZipDPC3»



Space below the
dashed line is fixed
for postal markings.

EXHIBIT C

[PROPOSED PAGA SETTLEMENT COVER LETTER]

To: [First Name] [Last Name]                                                    Date: [            ]
Address
City, State Zip

      Re:      Settlement Payment from *Teresa Landucci v. Freeman Expositions, LLC*
             US District Court for the Northern District of California; Case No. 19-07573-JCS

Dear [First Name] [Last Name]:

Please find enclosed a check in the amount of [amount of payment] ("Settlement Share"). This check is your payment from the settlement of a lawsuit entitled *Landucci v. Freeman Expositions, LLC*, Case No. 19-07573-JCS ("Action"), pending in the United States District Court for the Northern District of California ("Court").  The lawsuit was commenced by Teresa Landucci ("Plaintiff"), a former employee of Freeman Expositions, LLC ("Freeman") in California, for herself and on behalf of the State of California, Labor & Workforce Development Agency ("LWDA") for violations allegedly suffered by other alleged aggrieved employees, pursuant to the California Private Attorneys General Act of 2004, California Labor Code § 2698, et seq. ("PAGA"). On November 2, 2020, Plaintiff filed the Second Amended Complaint and operative complaint in the Action ("Complaint"), alleging that Freeman violated California Labor Code Section 212, and, as a result, sections 201-203 from November 18, 2018 to [approval date] ("Covered Period"). Freeman denies these allegations and denies that it owes any penalties to the government or to you. The other aggrieved employees on whose behalf PAGA penalties are sought on behalf of the LWDA are: all current and former non-exempt employees who received a paper paycheck from Freeman at any time during the Covered Period ("PAGA Members"). You have been identified as a PAGA Member.

On [approval date], the settlement was approved by the Court with a portion to be paid to the State of California and a portion to be paid to the PAGA Members, as required by law. You are receiving a portion of the settlement (your "Settlement Share") based on an even distribution to all PAGA Members. The Settlement Share is for civil penalties recoverable by the LWDA under PAGA. You are responsible for paying any and all taxes that may be due as a result of any payment issued to you under the settlement, and should consult a tax advisor regarding the tax consequences of such payment.

As a result of the settlement, the LWDA (with respect to the Labor Code and Wage Order violations suffered by Plaintiff and PAGA Members) is hereby deemed to release and discharge any and all claims or causes of action for civil penalties under PAGA, whether known or unknown, that it had, now has, has asserted, or may hereafter assert against Freeman or any of its present or former parent and affiliated companies, subsidiaries, partners, agents, insurers and each of their respective officers, directors, shareholders, representatives, successors and assigns, that are based upon the factual allegations in the Complaint, for the Covered Period, including but not limited to and all claims for attorneys' fees and costs and statutory interest associated with the aforementioned claims. Plaintiff and the LWDA shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they otherwise may have had related to these claims.

Do **not** call or write the Court or Office of the Clerk of the Court to ask questions about the settlement. If you have any questions, you may call the Settlement Administrator: [telephone number].

EXHIBIT 3



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

| Estimate #: | 13737V3 | Prepared By: | Michel Sutherland |
|---|---|---|---|
| Estimate Date: | 8/20/2021 | Direct Dial #: | 321.223.5067 |
| | | Email: | msutherland@simpluris.com |

|  | Plaintiff Attorney | | Defense Attorney |
|---|---|---|---|
| Attorney/Client: | **Ryan Hicks** | Attorney/Client: | Cheryl Orr |
| Firm: | **Hoyer & Hicks** | Firm: | Faegre Drinker |
| Email: | RHicks@hoyerlaw.com> | Email: | |

**Case Name:  Landucci v Freeman Expositions: Hybrid/PAGA Settlement**

| **Anticipated Total Cost** | **$19,233** |
|---|---|
| **Estimated Fee*** | **$18,500** |

**Terms:**
1) Capped Fees assume that Simpluris will receive data in a Single Excel file with no substantial change in class size or response rate.

| Total Possible Class Size: | 6,660 | Undeliverable Rate: | 10% |
|---|---|---|---|
| Response Rate: | 1% | Call Rate: | 5% |
| Mailing Document Language: | English | Re-distribution: | No |
| Reminder Postcard / Letter: | No | State(s): | Single |
| Unclaimed Funds | Cy Pres | Tax Years | One |

## Case Setup

| Data Compilation - Develop Case Specific Response Tracking - Error Reports | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Project Manager - Case Setup, Website posting | $125.00 | 6 | $750.00 |
| Database Manager - Initial Data Analysis | $140.00 | 6 | $840.00 |
| | | Total | $1,590.00 |

## Notification

| Notice Packet: 6/8 pg Notice  - Double Sided - English | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Mail Notice Packet | $0.70 | 1,160 | $812.00 |
| Postage | $0.53 | 1,160 | $614.80 |
| NCOA/CASS/LACS | $100.00 | 1 | $100.00 |
| Undeliverable Processing | $0.25 | 116 | $29.00 |
| Skip Trace RUM | $1.00 | 116 | $116.00 |
| Remail Notice Packet | $1.00 | 99 | $98.60 |
| Remail Postage | $0.53 | 99 | $52.26 |
| Mail Supervisor | $50.00 | 1 | $50.00 |
| | | Total | $1,872.66 |

## Call Center-Counsel will handle calls except for address updates.

| Establish Case Specific Toll Free Number | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Customer Service Reps / Call Center Support | $75.00 | 3 | $225.00 |
| 800 # Charges | $0.10 | 180 | $18.00 |
| | | Total | $243.00 |

Confidential and  Proprietary



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

## Claims Administration

### Process Mail: Claims, Opt-Outs and/or Objections

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Database Manager | $125.00 | 1 | $125.00 |
| Resolving Mismatched TIN's | $75.00 | 0 | $0.00 |
| Disputes / Deficiencies - Send One Cure Letter | $1.50 | 2 | $2.44 |
| Opt Out Processing | $1.00 | 8 | $8.12 |
| Data Entry | $50.00 | 1 | $50.00 |
| Claims Administrator | $75.00 | 1 | $75.00 |
| Project Manager | $125.00 | 1 | $125.00 |
| Weekly Reporting to Counsel | **WAIVED** | 12 Wks of Reporting | $0.00 |
| | | Total | $385.56 |

## Distribution

### Setup a Disbursement Account
### Print & Mail Checks to Class Members - W2's / 1099's - File Reports with Appropriate Federal & State Taxing Authorities
### Account Management & Reconciliation

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Disbursement Data Preparation | $140.00 | 3 | $420.00 |
| Disbursement Manager - Data Validation | $75.00 | 1 | $75.00 |
| Setup Banking Account / QSF | $300.00 | 1 | $300.00 |
| Print & Mail Checks | $1.00 | 6660 | $6,660.00 |
| Postage | $0.53 | 6660 | $3,529.80 |
| Process Returned Checks | $0.50 | 67 | $33.30 |
| Skip Trace Search Undeliverable Checks | $5.00 | 67 | $333.00 |
| Remail Checks | $4.00 | 67 | $266.40 |
| QSF Account Reconciliation | $250.00 | 1 | $250.00 |
| Individual Federal / State Tax Reporting | $250.00 | 1 | $250.00 |
| QSF Reporting / Declaration | $300.00 | 1 | $300.00 |
| QSF Annual Tax Preparation Fee | $1,000.00 | 1 | $1,000.00 |
| Reissuing Checks/Mailing | $3.00 | 100 | $299.70 |
| Reissuing W2's / 1099's | $3.00 | 100 | $299.70 |
| Responding to IRS, State, Agency Inquiries | $75.00 | 1 | $75.00 |
| Disbursement Manager | $125.00 | 6 | $750.00 |
| | | Total | $14,841.90 |



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

## Case Wrap Up

### Send Final Reports to Counsel

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Data Manager: Final Reporting | $125.00 | 1 | $125.00 |
| Clerical: Clean Up Any Misc | $50.00 | 1 | $50.00 |
| Project Manager: Wrap-up Final Issues | $125.00 | 1 | $125.00 |
| | | Total | $300.00 |

| Postage | $4,196.86 | **Total Case Costs** | **$19,233.11** |
|---|---|---|---|

Confidential and Proprietary



All administration services to be provided by Simpluris to Client, are provided subject to the following terms and conditions:

1.    **Services.** Simpluris agrees to provide Client those services set forth in the Bid (the "Services") to which these terms and conditions are attached and which has been provided to Client.  As compensation for such Services, Client agrees to pay the fees for Services outlined in the Bid. However, Client such fees for Services are estimated based on the requirements provided by Client and actual fees charged by Simpluris may be greater or less than such estimate and Client will be responsible for the payment of all such fees.

2.    **Billing and Payment**. Simpluris will invoice Client on a regular basis unless a specific timeframe is otherwise set forth in the Bid. Client shall pay all invoices within 30 days of receipt. Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law. Services are not provided on a contingency basis and Client shall remain liable to Simpluris for all fees for the Services, regardless of any court decisions, and/or actions by the parties, including disapproval or withdrawal of a settlement.

3.    **Retention of Documents**.  Unless directed otherwise in writing by the Client, Simpluris will destroy all undeliverable mail (except for undeliverable checks) on the date that it is processed and retained in Simpluris' system.  Simpluris will maintain records to establish that the subject mail is undeliverable.  Simpluris will retain undeliverable checks until the Qualified Settlement Fund is closed.  Simpluris will also retain all other class member and putative class member correspondence (including without limitation, claims forms and opt out forms) for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Lastly, Simpluris will retain bank & tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

4.    **Limitation of Liability; Disclaimer of Warranties**. Simpluris warrants that it will perform the Services diligently, with competence and reasonable care.  Simpluris' only obligation will be to correct any non-conformance with the foregoing warranty. In no event will Simpluris be liable for any lost profits/opportunities, business interruption or delay or, special, consequential , or incidental damages incurred by Client relating to the performance of the Services, regardless of whether Client's claim is for breach of contract, tort (including negligence and strict liability) or otherwise.  Under no circumstances will Simpluris be liable to Client for any claims, losses, costs, penalties, fines, judgment or damages, including court costs and reasonable attorney's fees (collectively, "Losses"), whether direct or indirect, arising out of, related to, or in connection with Services in an amount in excess of the total fees charged or chargeable to Client for the particular portion of the Services affected by Simpluris' omission or error.    THE WARRANTIES SET FORTH IN THIS SECTION ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

5.    **Force Majeure.** To the extent performance by Simpluris of any of its obligations hereunder is substantially prevented by reason of any act of God or because of any other matter beyond  Simpluris' reasonable control, then such performance shall be excused and this Agreement, at  Simpluris' option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

6.    **Rights in Data.**  Client agrees that it will not obtain, nor does Simpluris convey, any rights of ownership in the programs, system data, or materials provided or used by Simpluris in the performance of the Services.

7.    **Electronic Communications**.  During the provision of the Services the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

8.    **Notice**. Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service. Notice should be addressed to an officer or principal of Client and Simpluris, as the case may be.

9.    **Waiver.**  Failure or delay on the part of a party to exercise any right, power or privilege hereunder shall not operate as a waiver thereof or any of other subject, right, power or privilege.

10.  **Termination**. Client may terminate the Services at anytime upon 30 days prior written notice to Simpluris.  Termination of Services shall in no event relieve Client of its obligation make any payments due and payable to Simpluris in respect of Services rendered up to the effective date of Termination. Simpluris may terminate this Agreement (i) for any reason upon no less than 90 days prior written notice to the Client; or (ii) upon 15 calendar days' prior written notice, if the Client is not current in payment of fees.

11.  **Jurisdiction**. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in such Court.

12.  **Survival**.  Any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 4 - Limitation of Liability; Disclaimer of Warranties, Section 6 – Rights in Data, and Section 12- Jurisdiction, 14 -Confidentiality, and Section 15 – Indemnification.

13.  **Entire Agreement**. These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein. No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.

14. **Confidentiality**. Simpluris maintains reasonable and appropriate safeguards to protect the confidentiality and security of data provided by Client to Simpluris in connection with the Services.  If, pursuant to a court order or other proceeding, third party requests that Simpluris to disclose any confidential data provided by or for Client, Simpluris will promptly notify the Client unless prohibited by applicable law.  Client will then have the option to provide Simpluris with qualified legal representation at Client's expense to defend against such request.  If, pursuant to a court order, Simpluris is required to disclose data, produce documents, or otherwise act in contravention of the obligation to maintain confidentiality set forth in these terms and conditions, Simpluris will not be liable for breach of said obligation.

15.  **Indemnification**. Client will indemnify and hold Simpluris (and the officers, employees, affiliates and agents harmless against any Losses incurred by Simpluris, arising out of, in connection with , or related to (i)  any breach of the terms by Client; (ii) the processing and handling of any payment by Simpluris in accordance with Client's instructions, including without limitation, the imposition of any stop payment or void payment on any check or the wrongful dishonor of a check by Simpluris pursuant to Client's instructions.

16.  **Severability**. If any term or condition or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

17.  **Database Administration.** Simpluris' database administration for Client assumes that Client will provide complete data that includes all information required to send notifications and calculate and mail settlement payments.  Data must be provided in a complete, consistent, standardized electronic format. Simpluris' standardized format is Microsoft Excel, however, Simpluris may accept other formats at its discretion. Further developments or enhancements to non-standardized data will be billed to Client by Simpluris on a time and materials basis according to Simpluris' Standard Rates.

 

# Simpluris Security Summary – White Paper

Simpluris is committed to the security and overall protection of not only our data and information but our client's data and information, as well.  As a demonstration of our commitment, we maintain SOC 2 Certification which requires strict adherence to policies and procedures surrounding information security, including processing and storage of confidential customer data. Simpluris  supports a comprehensive, written Information Security Program that complies with all applicable laws and regulations (e.g. HIPAA, Gramm-Leach-Bliley Act, MA 201 CMR 17.00) and is designed to (a) ensure the security, privacy and confidentiality of Client and Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of Client or Class Member Information, and (c) protect against unauthorized access to, use, deletion, or modification of Class Member Information.  Simpluris has designated specific employees to be responsible for the administration of its Information Security Program.  Also, Simpluris regularly and routinely monitors, tests, and updates our Information Security Program.

Simpluris uses Client and Class Member Information only for the purposes for which its' clients provide it, as described in any Agreements or Court Orders governing the provision of Simpluris' services in any particular case. Simpluris maintains a process for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of Simpluris' operations. At Simpluris, we continuously evaluate the effectiveness of the safeguards for controlling these risks to data and bank accounts.  Simpluris restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.  Simpluris performs background checks of all its employees that will have access to Sensitive Personal Information, including a review of their references, employment eligibility, education, and criminal history to ensure they do not pose a risk to the security of Client or Class Member Information.

Simpluris adheres to the following industry best practices to safeguard its systems which process, store or transmit Client and Class Member Information:
•   Identity and Access Management;
•   Complex passwords are routinely and regularly changed;
•   Role-based access control systems to limit individual    employee access to network applications and systems based on their particular job role and function;
•   Data Loss Prevention and Intrusion Prevention System software at multiple layers to prevent from internal and external threats of data leaks, malicious activity, and policy violations
•   Encryption of Class Member Information if transmitted over public or wireless networks (e.g., via email, FTP, the Internet, etc.);
•   Implementation of a Secure File Transfer system (using SSL encryption) for transmitting documents back and forth to clients;
•   Encryption of servers, portable media, laptops, desktops, smartphones, mobile devices, and new technologies that store Class Member Information;
•   Complex password authentication for remote access to Company's networks;
•   Upon hire and annually after that, training of all employees with access to Class Member Information, (including any agents, and subcontractors with access to Class Member Information) about their obligations to implement the Information Security Program;
•   Strict disciplinary measures for employees who violate the Information Security Program;
•   Preventing terminated employees from accessing Class Member Information;
•   Appropriately configured and updated firewall, antivirus, and spyware software;
•   Prompt application of vendor-recommended security patches and updates to systems and other applications to avoid any adverse impact on Class Member Information;
•   Separation of Duties;
•   Infrastructure and Physical Security;
•   Business Continuity Planning;
•   Disaster Recovery Planning