HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
TERESA LANDUCCI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LANDUCCI, on behalf of herself and others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>FREEMAN EXPOSITIONS, LLC and DOES 1 to 100, inclusive,<br><br>          Defendants. | Case No.  3:19−cv−07573−JCS<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**NOTICE AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:       August 26, 2022<br>Time:      9:30 a.m. (via zoom)<br>Judge:    Chief Magistrate Judge<br>              Joseph C. Spero |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 26. 2022, at 9:30 a.m. in Courtroom F before Chief Magistrate Judge Joseph C. Spero of the United States District Court, Northern District of California, Plaintiff TERESA LANDUCCI ("Plaintiff") in the above-entitled action moves the Court for final approval of the "AMENDED JOINT STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT" (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the Declaration of Ryan L. Hicks, filed concurrently herewith), which was already preliminarily approved by this Court on April 6, 2022. (Dkt. # 80.) In particular, Plaintiff moves for an order:

1.  granting final approval of the Settlement Agreement;

2.  certifying the Class;

1

3.  finally approving Hoyer & Hicks as Class Counsel;

2

4.  finally approving the Named Plaintiff as Class Representative;

3

5.  finally approving payment of $18,000.00 to Simpluris, Inc. as Settlement

4

Administrator from the Settlement as compensation for administering the

5

Settlement;[1]

6

6.  finally approving the implementation schedule preliminarily approved on April 6,

7

2022; and

8

7.  entering a final judgment with the terms of the Settlement.

9

This Motion is based on this notice, the following attached Memorandum of Points and

10

Authorities, the Declaration of Ryan L. Hicks ("Hicks Dec."), the Declaration of Christina

11

Fowler on behalf of the Settlement Administrator (Dkt. # 86), and all other records, pleadings,

12

and papers on file in this action and such other evidence or argument as may be presented

13

to the Court at the hearing on this Motion. Accompanying this Motion is also Plaintiff's

14

Proposed Order Granting Final Approval of Class Settlement and Judgment. On June 6,

15

2022, Plaintiff separately filed a Motion Regarding Attorneys' Fees and Costs, and Class

16

Representative Award as directed in the Court's Preliminary Approval Order (Dkt. # 80 at p.

17

6).

18

19

20

21

22

23

24

25

26

27

28

---

[1] As discussed below, Plaintiff's counsel will pay the additional $500 in administration costs incurred due to the error in the original notice.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. PROCEDURAL HISTORY .............................................................................. 2

    A.    Plaintiff's Claims ...................................................................................... 2

    B.    Discovery ................................................................................................. 4

    C.    Damages Analysis ................................................................................... 4

    D.    Mediation ................................................................................................. 5

    E.    Preliminary Approval of Settlement and Settlement Administration ....... 5

    F.    Final Approval of the Settlement ............................................................. 7

IV. TERMS OF THE SETTLEMENT ..................................................................... 7

    A.    Basic Terms ............................................................................................ 7

    B.    Class Definition ....................................................................................... 8

    C.    Allocation and Awards ............................................................................ 8

    D.    Scope of Release and Final Judgment ................................................... 8

V. ARGUMENT ..................................................................................................... 9

    A.    The Court Should Finally Approve the Settlement as to the Class. ........... 9

        1.    The best practicable notice was provided to the Class in accordance with the process approved by the Court. ................................................................ 11

        2.    The terms of the Settlement are fair, reasonable, and adequate. ......................... 12

        3.    The Parties Have Agreed to Distribute Settlement Proceeds Tailored to the Class and their Respective Claims. ......................................................................... 13

        4.    The sufficient informal discovery exchange between the parties enabled them to make informed decisions regarding settlement. .............................................. 14

        5.    Litigating this Action not only would Delay Recovery, but would be Expensive, Time Consuming, and Involve Substantial Risk. ............................................ 14

        6.    The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ................................................... 15

        7.    Class Counsel are Experienced Class Action Litigators. .................................... 16

        8.    Class Members Approve the Settlement. ......................................................... 16

    B.    The Class Representative Service Award is Reasonable. ....................... 17

    C.    The Requested Attorneys' Fees and Costs are Reasonable. ................. 18

VI. CONCLUSION ................................................................................................ 19

**Federal Cases**

*AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 2011 WL 2204584 (N.D.Ill.2011) ................................................................................. 13

*Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015) ............................................................................................. 16

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) ................................. 14

*Carter v. Anderson Merchandisers, LP,* 2010 WL 1946784 (C.D.Cal. May 11, 2010) ........ 16

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................... 10

*Cody v. Hillard*, 88 F.Supp.2d 1049 (D.S.D. 2000) .................................... 17

*Ellmore v. Ditech Funding Corp.* (C.D. Cal., No. SAVC 01-0093, Sept. 12, 2002) ............. 19

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .............................. 10

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ....................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), ............................. 9, 10

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir.1983) ....................... 13

*In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418 (S.D.N.Y. 2001) .................. 16

*In re Art Materials Antitrust Litig.*, 100 F.R.D. 367 (N.D. Ohio 1983) ................... 17

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935 (N.D.Ill.2011) ....................................................................... 13

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ... 17

*In re Mego Fin. Corp. Sec. Litig.,*213 F.3d 454 (9th Cir.2000) ........................ 12

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989) ................................... 11

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ......................................................................... 14

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832 (9th Cir. 1976) ................. 11, 16

*Miskell v. Automobile Club of Southern California* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) ............................................................. 19

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ................... 14

*Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) ................... 18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615 (9th Cir. 1982) .............. 9, 10, 12

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ........................................................................ 19

*Sconce/Lamb Cremation Cases* (Los Angeles Super. Ct., JCC Proceeding No. 2085, March 24, 1992) ......................................................................................................................... 19

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ............................................... 9, 11, 17

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ..................................... 11

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ............................ 18

**State Cases**

*Castellanos v. The Pepsi Bottling Group*, No. RG07332684 (Alameda Super. Ct., Mar. 11, 2010) ............................................................................................................................. 18

*Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) ............................................................................................................................. 18

*Entin v. Barg*, 412 F.Supp. 508 (E.D. Pa. 1976) ............................................................ 12

*Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) ........... 18

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla.1972) ............................ 12

*In Re Sunrise Secs. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990) ............................................ 12

*Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Cnty. Super. Ct. Sept. 19, 2003) ......................................................................................................................................... 18

*Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Cnty. Super. Ct., Sept. 22, 2009) ......................................................................................................................... 18

**Statutes**

Business and Professions Code §§ 17200 ........................................................................ 3

Cal. Lab. Code §2699(l)(2) ............................................................................................. 7

**Rules**

FED.R.CIV.P. 23(e) ......................................................................................................... 9

FED.R.CIV.P. 23(e)(2) ..................................................................................................... 9

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004) ............................................................................... 9

# I. INTRODUCTION

This is a class action on behalf of all current and former non-exempt employees of Defendant FREEMAN EXPOSITIONS, LLC, ("Defendant" or "Freeman") who received paper paychecks and against whom third-party Bank of America assessed check cashing fees when those employees cashed those paychecks in California during the Class Period. Plaintiff also asserts a collective claim for PAGA Penalties on behalf of the Labor Workforce and Development Agencies related to violations suffered by the Aggrieved Employees, all non-exempt employees of Defendant who received paper paychecks during the PAGA Period. Following informal discovery, including lengthy negotiations with third-party Bank of America, which assessed the fees, an unsuccessful mediation, and extensive arm's-length negotiations between counsel thereafter, the Parties reached a settlement of this dispute. Following preliminary approval of the settlement and notice being disseminated to the putative class members, Plaintiffs now seek final approval of the Settlement as to the Class Members ("CMs"). The Parties are resolving class claims and a PAGA claim unlikely to have been prosecuted as individual actions or by the State, and in doing so provide substantial benefit to the Class. Specifically, the Parties have resolved the claims of approximately 1,009 class members and a PAGA claim involving approximately 5,547 aggrieved employees,[2] for a total settlement of $500,000.[3] This favorable Settlement is fair, reasonable, and adequate in all respects.

The Court granted preliminary approval of this Settlement on April 6, 2022 (Dkt. # 80). Following the Court's approval, notice of the Settlement was sent to the Class on May 11, 2022 (Declaration of Simpluris representative Christina Fowler ("Fowler Dec." Dkt. # 86) filed August 1, 2022.) at ¶ 7. A corrected notice was subsequently approved by the Court and mailed on May 27, 2022. *Id.* at ¶ 9. The exclusion and objection period elapsed on July 11, 2022. (Dkt. # 80 at p. 6). To date, CMs have responded favorably. Not a single objection has been filed, and not a single CM has opted out of the Settlement. Fowler Dec. at ¶¶ 13-16.

---

[2] 587 Class Members are also PAGA Members.

[3] The Settlement Agreement ("Settlement") is attached as Exhibit 1 to the Declaration of Ryan L. Hicks ISO Preliminary Approval ("Hicks Dec.").

Assuming the Court grants the requested attorneys' fees, costs, service award, and administrative costs, the average settlement share per class member will be more than $217. *Id.* At ¶12. Accordingly, for the reasons set forth herein, the Court should grant final approval of the Settlement as to the Class.[4]

## II. FACTUAL BACKGROUND

Defendant is a nationwide trade show, exhibit, and event company based in Dallas, TX. Plaintiff and the Class Members (collectively, "CMs") are former and current non-exempt employees who worked in California during the applicable limitations period, and against whom check cashing fees of $5 or $8 were assessed when the CM attempted to cash a paper paycheck. Plaintiff alleges that the check cashing fees violate the Labor Code and also give rise to Waiting Time Penalties. On behalf of the State, Plaintiff also asserts a claim for PAGA Penalties on behalf of all employees who were issued physical paychecks as check cashing fees could have been assessed when the PAGA Member cashed the check. Defendant has at all times denied these allegations.

## III. PROCEDURAL HISTORY

### A.    Plaintiff's Claims

On November 18, 2019, Plaintiff filed a complaint alleging class wage and hour violations[5] in the United States District Court for the Northern District of California (Dkt. # 1). That same day, Plaintiff submitted a PAGA notice to the Labor and Workforce Development Agency ("LWDA"). (Hicks Dec. at ¶ 10). On January 16, 2020, Plaintiff filed her First Amended Complaint. (Dkt. # 16). With the Court's permission, Plaintiff filed the operative Second Amended Complaint on November 2, 2020 (Dkt. # 46). The parties exchanged their initial disclosures, and Plaintiff propounded a full set of discovery requests, and Defendant took Plaintiff's deposition. (Hicks Dec. at ¶ 10). Ultimately, the Parties agreed to mediate the case.

---

[4] In a separate motion filed on June 6, 2022, Plaintiff seeks approval of an award of attorneys' fees, costs, and a service award for the Named Plaintiff. This brief does not repeat that request and corresponding background information set forth in the fee, cost, and service award motion.

[5] Plaintiff also asserted individual claims of sex discrimination, sexual harassment, and retaliation in violation of the Fair Employment and Housing Act and Labor Code § 1102.5. The individual claims were the subject of a separate settlement agreement.

*Id.* at ¶¶ 11-12. In addition to the informal discovery, Plaintiff issued a PMK subpoena to third-party Bank of America ("BOFA"), the bank through which the paychecks to CMs and PAGA Members were issued, and which charged the check cashing fees at issue in the case, to identify and ascertain the check cashing fees assessed against CMs during the class period. *Id.* at ¶ 12. The Parties worked for many months thereafter with BOFA to determine the extent of the check cashing fees. *Id.* The Parties agreed to stay all formal proceedings pending the mediation. *Id.*

In addition to the extensive pre-certification, voluntary exchange of information, the Parties each conducted independent investigations and fact-finding. *Id.* at ¶ 13. Plaintiff's counsel interviewed some CMs, none of whom were willing to provide written statements or declarations. *Id.* at ¶ 13.

On June 22, 2021, the Parties participated in an exhaustive full-day mediation session via Zoom before Deborah Crandall Saxe, Esq., a highly-respected, neutral mediator out of the Los Angeles area, who specializes in wage-and-hour mediations. *Id.* at ¶ 14. Plaintiff submitted a mediation brief summarizing the evidence that counsel had marshalled and synthesized, the state of the applicable law, and potential individual and class-wide exposure. *Id*. Defendant submitted its own brief arguing that no class could be certified and that they would also prevail on the merits against the individual Plaintiff and any other PCMs. *Id*. Although resolution was not achieved at the June 22 session, with Mediator Saxe's assistance thereafter, the Parties agreed, subject to approval by this Court, to a Settlement of the Actions.[6] *Id*. The Parties executed the Settlement Agreement on December 16, 2021. *Id.;* Ex. 1.

The November 2, 2020 operative Complaint asserts three causes of action on behalf of the class for (1) unlawfully withheld wages resulting from the check cashing fees in violation of California Labor Code § 212; (2) resulting Waiting Time Penalties; and (3) unfair business practices in violation of the Unfair Competition Law, Bus. and Profs. Code §§ 17200, *et seq.*

---

[6] As discussed above, the individual claims were resolved in a separate agreement after the class and representative claims were resolved in principle. Hicks Dec. at ¶ 15. Plaintiff provided supplemental information at preliminary approval regarding her appropriateness as class representative. (Dkt. # 77 at ¶¶ 3-10).

("UCL"). Plaintiff also asserts a claim for PAGA Penalties on behalf of the LWDA for violations of Labor Code § 212. The remaining causes of action were asserted on an individual basis by Plaintiff and have been resolved. (Dkt. # 46).

**B.    Discovery**

As a condition of the mediation, Plaintiff required Defendant to provide some informal discovery regarding the number of total paper paychecks issued during the PAGA Period. The parties also determined that the most vital piece of information was the check cashing fees provided by BOFA from its own information systems. Hicks Dec. at ¶¶ 11, 17. Plaintiff's counsel then calculated the damages for the class based on the data provided by Defendant and BOFA. *Id.* at ¶¶ 17-18. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant. *Id.*

**C.    Damages Analysis**

Class Counsel based their damages analysis and settlement negotiations on the informal discovery and data provided and the information obtained from BOFA and Defendant prior to the mediation. *Id.* at ¶ 17. Because of the data production, and the simple nature of the claim (either a fee was assessed by BOFA to a CM, or it was not), Plaintiff's Counsel was required to make only a few assumptions regarding the exposure. *Id.*

Using these assumptions and further assuming that Plaintiff and the CMs would certify all of their claims and prevail at trial on all claims for the absolute maximum "perfect world" exposure, Plaintiff's Counsel calculated total damages, including all penalties, through the mediation[7] to be $9,626,919 for the class claims (the actual fees charged to CMs were approximately $31,000, and the rest of the damages were for Waiting Time Penalties), and approximately $3,484,652 for the PAGA claim. *Id.* at ¶ 18.

The net amount being disbursed to CMs, assuming the Court approves all deductions, is $219,457.21, which is approximately 2% of the total non-PAGA damages and penalties estimated by Plaintiff (all but $30,759 is attributable to waiting time penalties claims), but is

---

[7] The information regarding the total amount of check cashing fees assessed was updated following the mediation prior to the execution of the Settlement Agreement. *Id.* at ¶ 14.

notably over _720% of the $30,759.00 in check cashing fees that were actually assessed against the class members_. _Id_. at ¶¶ 19, 21; Ex. 2 (BOFA Declaration re: Fees Assessed).[8] The settlement amount is fair, reasonable, and adequate. _Id_. at ¶ 20. The settlement amount takes into account the substantial risks inherent in any wage-and-hour class action, the status of the litigation, the evidence that Defendant discussed at the mediation, and the specific defenses as to certification and on the merits asserted by Defendant. _Id_.

### D. **Mediation**

The Parties mediated this dispute on June 22, 2021 before Deborah Crandall Saxe, Esq., a respected and experienced wage-and-hour mediator, engaging in arm's-length negotiations, and the Parties only reached a settlement after negotiations continued for months after the unsuccessful mediation. _Id_. at ¶ 22. Thereafter, counsel for the Parties worked to finalize the settlement for the CMs and the proposed class notice, subject to the Court's approval. _Id._ The Settlement Agreement was fully executed on December 16, 2021. _Id_.; Ex. 1.

### E. **Preliminary Approval of Settlement and Settlement Administration**

On December 27, 2022, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Settlement. (Dkt. # 70.) On February 4, 2022, the Court held the preliminary approval hearing, and raised a number of concerns with the Proposed Settlement Agreement. (Dkt. # 73, 77). Thereafter, Plaintiff submitted a supplemental declaration and amended notices. Ultimately, on April 6, 2022, the Court issued an Order granting the motion for preliminary approval. (Dkt. # 80.)

The Court found that the settlement agreement falls within the range of possible approval, granted conditional certification of the settlement class, conditionally appointed Hoyer & Hicks ("HH") as counsel for the class; conditionally appointed Plaintiff as Class Representative; approved the Class Notice; approved the settlement produced for the Class; and preliminarily approved Class Counsel's request for attorneys' fees and reasonable costs

---

[8] The declaration from BOFA was submitted to the Court at preliminary approval but is re-submitted here for the Court's ease of reference.

incurred. *Id.* The Court also appointed Simpluris as the Settlement Administrator for the purpose of the Settlement. *Id.*

Simpluris, Inc. ("Simpluris") is responsible for distributing the Class Notice, calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class Members, the Class Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs. Hicks Dec. at ¶ 25. Simpluris is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. *Id.* Simpluris also established a mailing address and toll-free telephone number to direct inquiries regarding the Notices and determination of individual settlement payments. *Id.*

In order to mail notices to Class Members, Simpluris first analyzed the CM list from Defendant, and processed the mailing addresses utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Fowler Dec. at ¶¶ 5-7. Simpluris sent 1,009 court-approved Settlement Notices to the Class Members on May 11, 2022, and corrected notices on May 27, 2022. *Id.* at ¶¶ 7-9. The Notice (as corrected) informed the Class of: the Settlement terms; their expected share; the July 11, 2022 deadline to submit objections, requests for exclusions, or disputes; the August 26, 2022 final approval hearing; and that Plaintiff would seek attorneys' fees, costs, and service awards and the corresponding amounts. (A true and correct copy of the final corrected notices are attached as Exhibits C and D to the Fowler Dec.) *Id.* Likewise, contact information for Class Counsel in the case was provided. *Id.* The Settlement Administrator successfully mailed notice packets to all Class Members though 75 notices were ultimately deemed undeliverable following reasonable attempts to locate a forwarding address. *Id.* at ¶ 10.

The deadline for Class Members to opt-out, object, and dispute their awards expired July 11, 2022. To date, not a single objection has been filed, and not a single Class Member has opted out of the Settlement. Fowler Dec. at ¶¶ 13-16; Ex. F.

**F.    Final Approval of the Settlement**

The Final Approval Hearing for the Court to approve the Settlement as to the Class is currently scheduled for August 26, 2022. With this motion, Plaintiff asks the Court to grant final approval of this settlement as to the Class. Hicks Dec. at ¶ 28. Following an order by the Court on this motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating CMs and PAGA Members for their Settlement award. *Id.*

## IV. TERMS OF THE SETTLEMENT

**A.    Basic Terms**

Defendants have agreed to pay a total of $500,000 to settle all aspects of the class and collective claims. Settlement at ¶ 16 (Gross Settlement Amount). The "Total Net Settlement Amount," which is the amount available to pay settlement awards to the CMs, is defined as the Settlement Fund less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Maximum Settlement Amount, $166,666.67, plus actual reasonable costs incurred (currently estimated as $10,000 and will be updated at Final Approval), any enhancement payment awarded to the Class Representative (up to $10,000), the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($56,250)[9], the amount to be disbursed to the PAGA Members ($18,750)[10], and the Settlement Administrator's fees and costs (which are $18,500[11]). *Id.*

Assuming the Court approves all of the requested attorneys' fees, costs, administration costs, and the requested class representative award, a fund of $219,457.21 will be distributed to the CMs, with an average class payment of $217.50. Fowler Dec. at ¶ 11.

---

[9] Plaintiff will submit a copy of the Settlement Agreement and these papers to the LWDA, per Cal. Lab. Code §2699(l)(2). Hicks Dec. at ¶ 60. $75,000 of this Settlement is allocated to settle the PAGA claims. *Id.* The Settlement Administrator shall pay $56,250 of this amount to the LWDA, and allocate the remaining 25% of the payments to PAGA Members. Settlement ¶ 19 (LWDA Payment), 7 (PAGA Members).
[10] Settlement Agreement at ¶ 42.
[11] The administrator's fee quote increased by $500 as a result of the mailing of the corrected notice. *See* Dkt. # 77 at ¶ 25. Plaintiff's counsel will pay these additional administration fees.

## B.    Class Definition

An individual is a member of the proposed settlement Class if they received a physical paycheck in California and were assessed a check cashing fee by BOFA when attempting to cash the paycheck from Defendant at any time during the period from November 18, 2015 through the end of the Class Period, which is the date of preliminary approval of the Settlement. Settlement at ¶¶ 5 (Class Members), 6 (Class Period).

## C.    Allocation and Awards

The Total Net Settlement Fund to be paid to CMs is estimated to be $219,457.21. Fowler Dec. at ¶ 11. All CMs who did not opt-out of the Settlement will receive a payment. Each CM's settlement share will be determined by dividing the Total Net Settlement Fund equally among Class Members, as the lion's share of the damages are based on the alleged Waiting Time Penalties claims, which are far larger per class member than any number of individual check cashing fees assessed. Settlement at ¶ 44(a). All eligibility and Class Settlement Award determinations shall be based on employee information that the Settlement Administrator determines based on Defendant's data provided to the Settlement Administrator and check cashing fee data provided by BOFA. *Id.* at ¶¶ 4, 34-35. For any CM that does not timely opt out of the Settlement and receives a payment, but does not timely cash his or her settlement check within 90 days, the Settlement Administrator will immediately stop payment on the check and such funds, plus any accrued interest, will be tendered to a *cy pres* beneficiary to be approved by the Court.[12]

## D.    Scope of Release and Final Judgment

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit, all violations asserted in any notice sent to the LWDA, as well as all predicate claims based on the facts and legal theories alleged in the complaint (i.e. "claims which were or could have been alleged based on the facts alleged in the Complaint regarding the imposition of check cashing fees."), from the beginning of any applicable statute of

---

[12] Settlement at ¶ 58. The parties have proposed The Impact Fund as the *cy pres* beneficiary of this settlement. (Dkt. # 77 at ¶¶ 29-30).

limitations period through the end of the Class Period. Settlement at ¶¶ 25-26. Only CMs who do not opt out will release their Class Claims, however, all claims under PAGA regarding alleged violations allegedly suffered by PAGA Members will be released by the LWDA, and the PAGA Members will receive a payment regardless of whether they opt out.[13] *Id.* at ¶ 53.

## V. ARGUMENT

### A. The Court Should Finally Approve the Settlement as to the Class.

A class action may not be settled without Court approval. *See* FED.R.CIV.P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval; (2) notice to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In determining whether a settlement is fair, reasonable and adequate, the court must "balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv.*

---

[13] An Aggrieved Employee cannot "opt out" of a PAGA settlement. *See Arias v. Superior Court,* 46 Cal.4th 969, 985 (2009) ("[T]he judgment in a [PAGA] action is binding not only on the named employee plaintiff but also on . . . any aggrieved employee not a party to the proceeding.").

*Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").[14]

The district court must approve or reject the settlement, as a whole, after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See id*. The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id*. In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the

---

[14] The recent amendments to Rule 23(e)(2) instruct district courts to consider whether: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats Class Members equitably relative to each other. However, recognizing that each circuit has developed its own vocabulary to express these concerns, the Advisory Committee explained that it did not intend to "displace any factor [used by different circuits], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. Accordingly, the Court should apply the Rule 23(e)(2) factors through the lens of the Ninth Circuit's *Hanlon/Staton* factors and existing relevant precedent.

incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

### 1. The Best Practicable Notice was Provided to the Class in Accordance with the Process Approved by the Court.

Pursuant to the Court's April 6, 2022 order granting preliminary approval of the Settlement, Simpluris sent the Court-approved Class Notice to the Class Members in accordance with the terms of the Settlement Agreement, including the corrected notice packages approved by the Court.

Notice of a class action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). "[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement." *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989).

The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members received the Notice. Prior to mailing the notices, the Administrator ran the class list through the United States Postal Service's National Change of Address database ("NCOA"), and performed address searches using public and proprietary electronic resources which collect data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus. Ultimately, of the 1,009 notices distributed, 75 have been returned as undeliverable. *See, generally* Fowler Dec. Accordingly,

the notice process satisfies the "best practicable notice" standard. *See* Hicks Dec. at ¶¶ 37-38.

## 2. The Terms of the Settlement are Fair, Reasonable, and Adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[15]

A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Hicks Dec. at ¶ 39. The Net Settlement Fund of $219,457.21, derived from a Gross Settlement Amount of $500,000.00, will result in fair and just relief to CMs. *Id.* Payments to the Class Members are roughly 2% of the total non-PAGA damages and penalties attainable in this case (but well over 7 times the amount of check cashing fees ($30,759.00) that CMs were actually assessed, and the PAGA disbursement amount of $75,000 is roughly 2% of the PAGA damages, which are based on alleged violations suffered by employees who were issued a physical paycheck *even if they were not (but could have been) assessed any fee by BOFA for cashing the check*.[16] The result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the specific defenses asserted by Defendant, including that its Collective Bargaining Agreement with CMs means that they are

---

[15] *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

[16] The allocation for PAGA penalties falls within the range of reasonableness previously approved by courts in this Circuit. *See, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.,* No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *see also Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 ($3.9 million settlement allocating $10,000 to PAGA penalties)).

permanently employed absent an affirmative termination, since they remain able to accept a job from Freeman at any time (indeed, Defendant argued that Plaintiff could take a job with Defendant at any time even though she had not actually performed any work for them in roughly two years). *Id.*[17] *See Officers for Justice*, 688 F.2d at 623. Despite the modest settlement amount, the Settlement confers a substantial benefit on CMs who faced the significant risk of no recovery and ongoing litigation expenses if they filed their own lawsuit, if they could retain their own counsel to do so. Given that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (*citing In re Mego*, 213 F.3d at 458), this reality also supports preliminary approval.

### 3. The Distribution of Settlement Proceeds is Tailored to the Class and Their Respective Claims.

In an effort to further ensure fairness for the employees, the Parties have agreed to allocate the settlement proceeds amongst CMs equally, as the alleged waiting time penalties alleged vastly exceed the $30,759 in total check cashing fees assessed against the CMs. Hicks Dec. at ¶ 43. Similarly, the PAGA allocation will be done equally because if it is not, then some of the awards will be less than the postage required to send them, and because the PAGA Members were by and large not actually assessed any check cashing fees (which are dealt with in the Class Settlement). The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. *Id.*

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill.2011). Rather, although disparities in the treatment of class and collective members

---

[17] In her supplemental filings supporting preliminary approval, Plaintiff also noted that an order issued after this settlement was reached in the matter of *Karen Hartstein v. Hyatt Corporation, et al.*, 2:20-cv-04874-DSF-JPR (C.D. Cal, Feb. 14, 2022) seriously undermined the viability of Plaintiff's waiting time penalties claim with respect to her argument that essentially all of the class members had been terminated for the purposes of the requirements of Labor Code §§ 201-203 due to COVID-19 shutdowns. (Dkt. # 77 at ¶¶ 12-18). Plaintiff also provides an analysis of the respective claims in the Hicks Dec. at ¶¶ 45-63.

may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. Here, the only consideration is whether a CM was actually assessed a check cashing fee during the Class Period.

### 4. The Informal Discovery Exchange Enabled the Parties to Make Informed Settlement Decisions.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). Informal discovery is a strong factor in favor of settlement approval so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in an exchange of informal discovery to enable both sides to assess the claims and potential defenses. The Parties accurately assessed the legal and factual issues that would arise if the case proceeded to trial. *Id.* at ¶ 28. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage-and-hour class and collective actions. *Id.* Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of actual check cashing fee data made available by BOFA. *Id.* Ultimately, facilitated by Mediator Saxe, the Parties used this information and discovery to fairly resolve the litigation. *Id.*

### 5. Litigating this Action not only would Delay Recovery, but would be Expensive, Time Consuming, and Involve Substantial Risk, and Likely would have had Resulted in the End of the Class Claims

**Given Subsequent Caselaw.**

The total monetary value of the proposed Settlement represents a fair compromise given risks and uncertainties posed by continued litigation. Hicks Dec. at ¶ 63. If this case were to go to trial as a class action, Class Counsel estimates that fees and costs would exceed $1,000,000.00. *Id.* Litigating the class and collective claims would require substantial additional discovery, including depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary and expert evidence. *Id.* Recovery of the full exposure previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of Defendant's arguments (and supporting caselaw issued after the settlement was reached) regarding the Waiting Time Penalties claims, including that the fees are not unpaid wages, and that its CBA requires the conclusion that absent an affirmative termination, CMs remain employed by it. *Id.* Furthermore, were this matter not to settle, Defendant would likely be able to engage in a *Pick-Up Stix* PCM release campaign for minimal consideration given the $5 or $8 check cashing fees actually assessed against the CMs. In contrast, resolving this case by means of a global settlement will yield a prompt, certain, and substantial recovery for the CMs (an average payment of approximately $218 for check cashing fees of $5 or $8—the equivalent of over 43 $5 check cashing fees and 27 $8 fees—to compensate the Class for a cumulative total actual fees assessed of under $31,000 for the entire Class). *Id.* Such a result will benefit the Parties and the court system. *Id.*

**6.      The Settlement is the Product of Informed, Non-collusive, and Arm's-length Negotiations Between Experienced Counsel.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of

fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP,*, 2010 WL 1946784 (C.D.Cal. May 11, 2010), at *8 ("Counsel's opinion is accorded considerable weight."). Here, the settlement was a product of non-collusive, arm's-length negotiations. Hicks Dec. at ¶ 64. The Parties participated in a full-day mediation and months of subsequent negotiations before Deborah Crandall Saxe, a skilled mediator. *Id.* In addition, the adversarial mediation ultimately resulted in a written memorandum of understanding that memorialized the core terms of the proposed settlement. *Id.* Subsequently, the Parties continued to negotiate the long form settlement agreement, with several rounds of correspondence related to the details of the settlement. *Id.*

### 7. <u>Class Counsel are Experienced Class Action Litigators.</u>

Where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377-JSC, 2015 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("Given counsel's experience in this field, his assertion that the settlement is fair, adequate, and reasonable support[s] final approval of the settlement."). Class Counsel are experienced and respected class action litigators. *See* Hicks Dec. at ¶¶ 3-7. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to the Class. *See* Hicks Dec. at ¶ 65.

### 8. <u>Class Members Approve the Settlement.</u>

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (internal quotation marks and citation omitted)). Courts have made clear that a relatively low percentage of objectors or opt

outs is a very strong sign of fairness that factors heavily in favor of approval. *See Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

To date, not a single Settlement Class Member has objected to the Settlement, and not a single Settlement Class Member has opted out of the Settlement.[18] *See* Hicks Dec. at ¶ 66; Fowler Dec. at ¶¶ 13-16, Ex. F. In addition, the Class Representative supports the terms of the Settlement. *See* Hicks Dec. at ¶¶ 67-68. This shows widespread support for the settlement among Class Members and gives rise to a presumption of fairness.

**B.** **The Class Representative Service Award is Reasonable.**

As noted above, in approving the Settlement, the Court must determine whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In addition to the terms and details of the Settlement discussed above, the Settlement also establishes a service award in the amount of $10,000.00 to be paid to Plaintiff. Plaintiff submitted a declaration supporting her request for a class representative award with her motion for Attorneys' Fees and Costs, and Service Award. (See Dkt. # 85 and 85-2 filed June 6, 2022).

Named plaintiffs in class action litigation are eligible for reasonable service awards. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield*

---

[18] The online docket for this matter does not reflect the filing or other submission of any objections as of the date of this filing.

*Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). The enhancement payment of $10,000 to Plaintiff is intended to compensate Plaintiff for the critical role she played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the CMs. Hicks Dec. at ¶ 75. In agreeing to serve as Class Representative, Plaintiff formally agreed to accept the responsibilities of representing the interests of all CMs, as discussed in her declaration supporting the previously filed motion requesting attorneys' fees, costs, and service award. *Id.*; *see also* Dkt. # 85-2. Defendant does not oppose payment of up to $10,000.00 to Plaintiff as a reasonable service award. Moreover, the service awards are fair when compared to the payments approved in similar cases. *See, e.g.*, *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative).[19]

Ultimately, the Court should approve the requested service award as reasonable. Plaintiff set forth her arguments in support of the service award in her accompanying Unopposed Motion for Attorneys' Fees, Costs, and Service Award. Plaintiff does not repeat those arguments here.

## C.   The Requested Attorneys' Fees and Costs are Reasonable.

Likewise in evaluating the Settlement, the Court should evaluate Plaintiff's request for attorneys' fees and costs pursuant to the terms of the Settlement.

In the previously filed fee motion (Dkt. # 85), Class Counsel request one-third (33%) of the Gross Settlement Amount, for a total of $166,666.67, plus reimbursement of costs of $10,376.12. Hicks Dec. at ¶ 69. In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage-and-hour class actions. *See Regino Primitivo Gomez, et al. v. H&R*

---

[19] *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda. Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

*Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).[20] In this case, given the results expeditiously achieved, the effort expended litigating the case, and the difficulties attendant to litigating this case, the fee and cost award is warranted and as explained in the fee motion, will result in a negative multiplier of .88 to Class Counsel's lodestar as of June 6, 2022. Hicks Dec. at ¶¶ 69-71. Plaintiff presented her arguments in support of her fee and cost request in her Unopposed Motion for Attorneys' Fees, Costs, and Service Award filed on June 6, 2022. Plaintiff directs the Court to her fee motion for his supporting points and authorities and does not repeat those arguments here.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion for Final Approval and enter an order:

1.      Granting final approval of the settlement;

2.      Certifying the Class;

3.      Finally Approving Hoyer & Hicks as Class Counsel;

4.      Finally Approving Plaintiff Landucci as Class Representative;

5.      Finally Approving payment of $18,000.00 to Simpluris, Inc. as Settlement Administrator from the Settlement as compensation for administering the Settlement;

6.      Finally approving the implementation schedule approved on April 6, 2022:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective | April 6, 2022 |
| Simpluris to Mail the Notices | May 11, 2022 |
| Filing Deadline for Fees motion | June 6, 2022 |
| Deadline to postmark requests to opt-out, objections to Settlement, or dispute the | August 11, 2022 |

[20] *Wren*, 2011 WL 1230826 (N.D.Cal. 2011) (approving attorneys' fee award of just under 42% of common fund); *Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb.4, 2004) (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Co.,* No. BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No. 99AS01716, (Sacramento Super. Ct., Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

| information showing in Class Notice pursuant to the instructions set forth in the Class Notice | |
|---|---|
| Filing Deadline for Final Approval Motion | August 12, 2022 |
| Final Approval Hearing | August 26, 2022 |
| Effective Date | the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no Notice of Objection is filed and no objectors appear at the Final Approval/Settlement Fairness Hearing, the date of the entry of judgment. |
| Defendant to provide Maximum Settlement Amount to Simpluris | 30 Calendar days after Effective Date. |
| Fees and costs, Class Representative Award, Class awards, LWDA payment to be paid by Simpluris | No later than 14 calendar days after Defendant deposits Settlement Fund Deposit Amount into QSF. |
| Simpluris to stop payment on checks for CMs that do not timely opt-out and so receive a payment, but do not cash settlement check and transmit funds to the California State Controller's Office Unclaimed Property Fund | 90 days after issuance of awards |

and

7.    Entering a final judgment with the terms of the Settlement.

Respectfully submitted,

Date: August 11, 2022                         HOYER & HICKS

/s/ Ryan L. Hicks
_____
Ryan L. Hicks
*Attorney for Plaintiff TERESA LANDUCCI*
*And the Settlement Class*